**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SAMA ALIYEVA,<br>*on behalf of herself, FLSA Collective Plaintiff*<br>*and the Class,*<br><br>             Plaintiff,<br><br>    v.<br><br>DIAMOND BRACES,<br>an unincorporated entity, association, or<br>affiliation,<br>ORTHOCLUB, P.C.,<br>     d/b/a DIAMOND BRACES<br>JOHN DOE CORPORATIONS 1-100<br>     d/b/a DIAMOND BRACES, and<br>OLEG DRUT,<br><br>             Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION**<br>**COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff SAMA ALIYEVA (herein, "Plaintiff"), on behalf of herself and others similarly situated, by and through her undersigned attorneys, hereby files this Class and Collective action Complaint against Defendants, DIAMOND BRACES, an unincorporated entity, association, or affiliation, ORTHOCLUB, P.C. d/b/a DIAMOND BRACES, JOHN DOE CORPORATIONS 1-100 d/b/a DIAMOND BRACES ("Corporate Defendants"), and OLEG DRUT ("Individual Defendant," and together with Corporate Defendants, "Defendants"), and states as follows:

## INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that she and others similarly situated are entitled to recover from

Defendants: (1) unpaid wages, including overtime, due to time-shaving, (2) unpaid wages, including overtime, due to a policy of paying new employees at a rate lower than their agreed upon base rate, (3) liquidated damages and (4) attorneys' fees and costs.

2.      Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL") that she and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time-shaving, (2) unpaid wages, including overtime due to a policy of paying new employees at a rate lower than their agreed upon base rate, (3) compensation for late payment of wages, (4) statutory penalties, (5) liquidated damages, and (6) attorneys' fees and costs.

3.      Plaintiff further alleges that she and others similarly situated are entitled to recover from Defendants due to Defendants breach of their employment agreements.  Defendants' enticed Plaintiff and others similarly situated into accepting positions with Defendants, only to then compensate5 Plaintiff and others similarly situated at a lower than promised hourly rate for the first six-months of their employment.  Plaintiff and Class members would only discover this policy after receiving their first paychecks from Defendants.

4.      Plaintiff further alleges that, she and others similarly situated are entitled to recover for the unused paid leave earned over the course of their employment and for which Defendants are required to compensate at the time of an employee's separation pursuant to NYLL § 196-b and the terms of their employment.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

6.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

<strong><u>PARTIES</u></strong>

7.      Plaintiff SAMA ALIYEVA is a resident of Kings County, New York.

8.      Defendant DIAMOND BRACES is an unincorporated partnership, affiliation, or association that collectively operate under the common business name of "Diamond Braces" at the following locations:

a.      1411 Kings Hwy Brooklyn, NY 11229 ("Homecrest, Brooklyn" location);
b.      79 Avenue U Brooklyn, NY 11223 ("Bensonhurst, Brooklyn" location);
c.      2848 Church Ave #201b Brooklyn, NY 11226 ("Flatbush, Brooklyn" location);
d.      1122 Avenue Z Brooklyn, NY 11235 ("Sheepshead Bay, Brooklyn" location);
e.      2481 Flatbush Ave Brooklyn, NY 11234 ("Old Mill Basin, Brooklyn" location);
f.      260 Audubon Ave New York, NY 10033 ("Avenue H, Brooklyn" location);
g.      3010 Avenue H Brooklyn, NY 11210 ("Washington Heights, Manhattan" location);
h.      68 W 125th St. New York, NY 10027 ("Harlem, Manhattan");
i.      92-12 Roosevelt Ave Jackson Heights, NY 11372 ("Jackson Heights, Queens" location);
j.      22-54 31st Street Queens, NY 11105 ("31st Street, Astoria, Queens" location);
k.      37-03a 82nd Street Jackson Heights, NY 11372 ("Jackson Heights, Queens" location);
l.      31-65 Steinway Street Astoria, NY 11103 ("Astoria, Queens" location);
m.      2992 3rd Ave, The Bronx, NY 10455 ("Mott Haven, The Bronx" location);
n.      2194 White Plains Rd, The Bronx, NY 10462 ("Van Nest, The Bronx" location);
o.      1471 Dekalb Ave 3rd floor Brooklyn, NY 11237 ("Ridgewood, Brooklyn" location);
p.      97 E 4th St New York, NY 10003 ("East Village, Manhattan" location);
q.      2025 Richmond Ave Staten Island, NY 10314 ("Staten Island" location);
r.      21 Spring Valley Market Pl Spring Valley, NY 10977 ("Spring Valley, Rockland County" location);
s.      86 W 225th St, The Bronx, NY 10463 ("Riverdale, The Bronx" location);
t.      2155 86th St Brooklyn, NY 11214 ("Bensonhurst, Brooklyn 2" location);
u.      4025 Hempstead Turnpike Bethpage, NY 11714 ("Bethpage, Long Island" location);
v.      5 Westchester Square, The Bronx, NY 10461 ("Westchester Square, East Bronx" location);

w.  70-44 Austin St Forest Hills, NY 11375 ("Forest Hills, Queens" location);

x.  94-18 63rd Dr Rego Park, NY 11374, NY 11210 ("Rego Park, Queens" location);

y.  530 5th Avenue Brooklyn NY 11215 ("South Slope, Brooklyn" location);

z.  1017 Flatbush Avenue Brooklyn NY 11226 ("Flatbush Ave, Brooklyn" location);

aa.  942 Southern Blvd, The Bronx NY 10459 ("Longwood, The Bronx" location);

bb.  1552 Westchester Ave Bronx NY 10472 ("Soundview Bruckner, The Bronx" location);

cc.  33 W Fordham Rd, The Bronx, NY 10468 ("Jerome Park, The Bronx" location);

dd.  3457 Jerome Ave, The Bronx, NY 10467 ("Van Cortlandt Pk, The Bronx" location);

ee.  8515 4th Ave Brooklyn, NY 11209 ("Bay Ridge, Brooklyn" location);

ff.  166-16 Jamaica Ave 2nd Floor Jamaica, NY 11432 ("Jamaica, Queens" location);

gg.  2656 Hylan Blvd Suite 165 Staten Island, NY 10306 ("Great Kills, Staten Island" location);

hh.  72 E 170th St Bronx, NY 10452 ("Highbridge, Bronx" location);

ii.  601 Portion Rd Lake Ronkonkoma, NY 11779 ("Lake Ronkonkoma" location);

jj.  132 E Fordham Rd Bronx, NY 10468 ("Jerome Park, Bronx" location);

kk.  615 10th Ave New York, NY 10036 ("Hell's Kitchen, Manhattan" location);

ll.  144 Dyckman St New York, NY 10040 ("Washington Heights, Manhattan 2" location);

mm.  5119 5th Ave Brooklyn, NY 11220 ("Sunset Park, Brooklyn" location);

nn.  22 Graham Ave Brooklyn, NY 11206 ("Williamsburg, Brooklyn" location);

oo.  1239 Fulton St Brooklyn, NY 11216 ("Bedford Stuyvesant, Brooklyn" location);

pp.  793 Manhattan Ave Brooklyn, NY 11222 ("Greenpoint, Brooklyn" location);

qq.  4211 Broadway Ste 26 New York, NY 10033 ("Washington Heights, Manhattan 3" location); and

rr.  1376 Metropolitan Ave, The Bronx, NY 10462 ("Parkchester, The Bronx" location).
      (collectively the "Orthodontist Offices"). *See* **Exhibit A** for Defendants' websites showing each New York location.

9.     Defendants own and operate the Orthodontist Offices as a single integrated enterprise, under the common control of its owner, Individual Defendant OLEG DRUT. Specifically, the Orthodontist Offices are engaged in related activities, share common ownership and have a common business purpose:

a.  All the Orthodontist Offices are jointly advertised on Defendants' website: https://diamondbraces.com/. *See* **Exhibit A**.

b.  All the Orthodontist Offices use a central human resources department. *See* **Exhibit B** for Defendants' "Career Opportunities" page and various positions offered by Defendants at various locations throughout New York. Specifically, Defendants offer various dental and orthopedic service positions at various locations, but only offer administrative positions for one single location, their headquarters (e.g., Human Resources Manager, Talent Acquisition Manager).

c.  Supplies are interchangeable among the Orthodontist Offices locations.

d.  The Orthodontist Offices regularly share and exchange non-exempt employees, who are interchangeable among the Orthodontist Offices. Defendants require employees to work at the other Orthodontist Office location different from their primary place of employment whenever one (1) location is short-staffed. Defendants, on occasion, transfer employees between different locations based on their own business needs. Plaintiff herself was transferred among five of Defendants Orthodontist Offices.

e.  Defendants operated a single central location managing and maintaining employee payroll and time records.  Plaintiff's timesheets, Defendants' pay-practices/policies, and the employer listed on her paystubs remained the same regardless of the Orthodontist Office at which she worked.

f.  Defendants jointly settled a case with the New York State Attorney General's Office in 2019 for "allowing uncertified employees to perform orthodontic procedures and then improperly billing Medicaid for payment for such

procedures". *See* **Exhibit C**. The Attorney General's office described Defendants as a "chain of dental offices operating… in New York State, including dental offices in all five boroughs and in Nassau and Rockland Counties." *Id.*

10. Corporate Defendant, ORTHOCLUB, P.C. d/b/a DIAMOND BRACES, is a foreign professional service company organized under the laws of the State of Jersey. Defendant ORTHOCLUB, P.C. d/b/a DIAMOND BRACES operates multiple offices here in New York State at the following addresses: (i) Sheepshead Bay, Brooklyn, (ii) Avenue H, Brooklyn, (iii) Ridgewood, Brooklyn, and (iv) Staten Island. Defendant ORTHOCLUB, P.C. d/b/a DIAMOND BRACES has an address for service of process located at 79 Avenue U, Brooklyn, NY 11223.

11. Defendant JOHN DOE CORPORATIONS 1-100 are members of Defendant DIAMOND BRACES operating the individual Orthodontist Offices located throughout New York State. Defendant JOHN DOE CORPORATIONS 1-100, or the entities through which the Orthodontist Offices are operated, all have common payroll, common timekeeping, common wage policies, common human resources, implemented through Defendant DIAMOND BRACES's payroll and human resources department.

12. Individual Defendant, OLEG DRUT, is the "company founder and Chief Clinical Officer" of Defendant DIAMOND BRACES. *See* **Exhibit D**. OLEG DRUT exercised control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs, and Class Members. OLEG DRUT had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee work schedules, and (iv) otherwise affect the quality of employment of Plaintiff, FLSA Collective Plaintiffs, and Class Members. At all relevant times, employees could complain to OLEG DRUT regarding any of the terms of their

employment, and OLEG DRUT would have the authority to effect any changes to the quality and terms of their employment. OLEG DRUT ensured that employees effectively served customers and exercised functional control over the business and financial operations of Corporate Defendants. OLEG DRUT had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class Members and could reprimand employees.

13.     Plaintiff personally witnessed OLEG DRUT inspect the individual Orthodontist Offices and reprimand employees.

14.     At all relevant times, Corporate Defendants, each was and continues to be an "enterprise engaged in commerce" within the meaning of FLSA and NYLL and the Regulations thereunder.

15.     Although Plaintiff did not work at all of Defendants' Orthopedic Offices, **all** of the Orthopedic Offices are appropriately named in this Complaint through the relevant Corporate Defendants described above. Because the Orthopedic Offices share identical illegal wage and hour policies, the Orthopedic Offices and the relevant Corporate Defendants are properly named on the basis of their outstanding liability to the Class members for whom Plaintiff seeks to represent.

16.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

17.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class members were directly essential to the businesses operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

18.     Plaintiff brings claims for relief as a collective action pursuant to FLSA,29 U.S.C. § 216(b), on behalf of all non-exempt employees, (including but not limited to dental assistants,

dental hygienists, orthodontic assistants, receptionists) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

19.     At all relevant times, Plaintiff and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them the proper wages and the proper overtime premium at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek due to a policy of timeshaving and due to a policy of paying new employees at a rate lower than the agreed upon base rate,. The claims of Plaintiff stated herein are essentially the same as those of other FLSA Collective Plaintiffs. The claims of Plaintiff stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

20.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

21.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("FRCP") Rule 23, on behalf of all non-exempt employees (including but not limited to dental assistants, dental hygienists,  orthodontic assistants, receptionists), employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the

8

"Class Period").

22.     All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the title of the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under FRCP 23.

23.     Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class members were subject to Defendants' corporate practices of (i) failing to pay wages including overtime, due to time-shaving; (ii) failing to pay wages, including overtime, due to a policy of paying new employees at a rate lower than the agreed upon base rate, (iii) late payment of wages; (iv) failing to provide Class members with proper wage statements with every payment of wages; and (v) failing to properly provide wage notices to Class members, at date of hiring and dates of all wage changes, per requirements of NYLL.

24.     The Class also includes a subclass of employees who all worked for Defendants and were upon termination were not provided compensation for their paid leave, which was earned and accumulated over the course of their employment pursuant to NYLL §196(b) and the terms of subclass members employment ("PTO Subclass").  Plaintiff SAMA ALIYEVA is a member of the Commission Subclass.

25.     Pursuant to NYLL and Defendants' employment terms, PTO Subclass members earned paid-time-off ("PTO") over the course of their employment.  Defendant's paid sick leave and/or

resignation policy never specified that Plaintiff and PTO Subclass members were not entitled to a disbursement of earned PTO upon their separation from Defendants. Although Plaintiff and PTO Subclass members were entitled to recover compensation for their PTO earned, Plaintiff and PTO Subclass members were not compensated for their earned PTO upon their separation.

26.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. PTO Subclass members also total over forty (40).

27.     Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

28.     Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation, and have previously represented plaintiffs in wage and hour cases.

29.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

30.     Defendants and other employers throughout the state violate NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

31.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

        a)     Whether Defendants employed Plaintiff and the Class members within the meaning of the New York law;

b)  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiff and the Class members;

c)  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and the Class members for their work;

d)  Whether Defendant properly notified Plaintiff and the Class members of their hourly rates and overtime rates;

e)  Whether Defendants properly compensated Plaintiff and Class members the proper overtime compensation at one-and-one-half times their straight time base hourly rates for all hours worked in excess of forty (40) each workweek under the NYLL;

f)  Whether Defendants required Plaintiff and the Class members to perform unpaid off-the-clock work;

g)  Whether Defendants paid Plaintiff and Class members their lawful wages in a timely manner;

h)  Whether Defendants provided proper wage statements informing all non-exempt employees of information required to be provided on wage statements under NYLL;

i)  Whether Defendants provided proper wage notice, at date of hiring and dates of all wage changes thereafter, to all non-exempt employees per requirements of NYLL;

j)  Whether Defendants provided proper wage statements for each pay period to Plaintiff and Class members, and whether those wage statements properly stated Plaintiff's wage and overtime compensation in accordance with NYLL;

k)  Whether Defendants properly disbursed earned PTO payments to PTO Subclass members in accordance with NYLL and PTO Subclass members terms of employment; and

l)  Whether Class Members were workers required to be paid weekly pursuant to NYLL.

**STATEMENT OF FACTS**

32.  On or around February 15, 2021, Plaintiff SAMA ALIYEVA was hired by Defendants to work as a Dental Assistant for Defendants. Plaintiff is not licensed or certified as a dental assistant, and her position did not require any credential to perform.  Plaintiff's employment was terminated on or around January 2022.

33.  Throughout her employment with Defendants, Plaintiff ALIYEVA was sent to work at the following locations as needed:

- 1411 Kings Hwy, Brooklyn, NY 11229;
- 79 Avenue U, Brooklyn, NY 11223;
- 2848 Church Ave #201b, Brooklyn, NY 11226;
- 1122 Avenue Z, Brooklyn, NY 11235; and
- 2481 Flatbush Ave, Brooklyn, NY 11234.

All the Class Members were similarly required to transport between the various locations on an as needed basis. Class members were often required to move to a different location during their shifts. When working at multiple locations during single shifts, employees were not compensated for the time spent traveling between Defendants' locations.

34.  From the beginning of her employment with Defendants to in or around December 2021, Plaintiff ALIYEVA was scheduled to work from 10:30 a.m. to 7:00 p.m., for five (5) days a week, totaling of forty-two-and-one-half (42.5) hours per week. Throughout her last month of employment with Defendants, Plaintiff ALIYEVA's schedule was reduced to four (4) days a week,

from 10:30 a.m. to 7:00 p.m., totaling thirty-four (34) hours per week. Despite Plaintiff's schedule, Plaintiff always worked hours in excess of her schedule for which she was not compensate.

35.     Throughout her entire employment, Plaintiff stayed for thirty (30) minutes to an hour past her scheduled shift for four (4) days a week, for a total of two (2) to four (4) hours per week. However, Plaintiff was told by the Office Manager that if Plaintiff ever worked over past her scheduled shift, Plaintiff must clock-in late for her next shift, so as to avoid paying employees overtime.  Despite being instructed to clock-in late the next day, Plaintiff was instructed to not come into work until a later time than she was scheduled to come in. If Plaintiff were to show up later than her scheduled shift, she would be written up for her tardiness. In mandating Plaintiff clock-in late, but punishing Plaintiff for tardiness should she arrive late to work, Defendant created a system requiring off-the-clock work, which shaved Plaintiff's compensable time by two-to-four (2-4) hours per week.   Class Members suffered similar time-shaving due to Defendants' policies.

36.     Additionally, throughout her employment with Defendants, Plaintiff ALIYEVA was not compensated for all her hours worked due to an impermissible automatic meal break deduction instituted by Defendants. Plaintiff ALIYEVA was automatically deducted a thirty (30) minute meal break but was never able to take a free and clear lunch break and was required to work completely through her meal breaks two (2) times per week.  Similarly, Class Members also suffered from automatic lunch time deductions that they were forced to work through.

37.     At all relevant times, Plaintiff ALIYEVA, FLSA Collective Plaintiffs and Class members regularly worked over forty (40) hours per week, but Defendants failed to pay them the proper overtime premium rate of one-and-half times of their regular hourly rate for each hour exceeding forty (40) hours per workweek in violation of FLSA and NYLL.

38.     Additionally, Defendants would often compensate overtime hours at a straight time rate. FLSA Collective Plaintiffs and Class members regularly worked over forty (40) hours per week, but Defendants would compensate these hours at a straight time rate as well.

39.     Moreover, Plaintiff's compensation was further reduced by Defendants' policy of compensating failing to pay new hires their full agreed upon salary.  Plaintiff applied for and was hired for a position meant to be compensated at $17.00 an hour.  *See* **Exhibit E**, Posting for Plaintiff's Position.  Despite Plaintiff's base rate of pay being $17.00 an hour, Defendants' only compensated Plaintiff at a base rate of pay of $16.00 an hour for her first six (6) months.  As Defendants failed to inform Plaintiff that they do not provide full compensation to employees until after completion of the first six-months, Defendants' under-compensation was only discovered after Plaintiff received her first paystub.  FLSA Collective Plaintiffs and Class members were similarly undercompensated due to Defendants' bait and switch pay policies.

40.     Throughout her employment, Defendants regularly failed to pay Plaintiff her wages within seven (7) days of the end of the week in which Plaintiff earned them, in violation of NYLL § 191(1)(a)(i).[1] Defendants would provide Plaintiff her wages via direct deposit biweekly despite NYLL requiring employees like Plaintiff be compensated on a weekly basis.  Therefore, Plaintiff and Class Members are owed liquidated damages equal to the late payment of wages and accrued interest on the delayed payments.

41.     Under New York Labor Law, all 'manual worker(s)' must be paid on a weekly basis.  Pursuant to the New York State Department of Labor, manual workers include non-exempt employees who spend more than twenty-five percent (25%) of their working time performing physical labor.  Here, the Class members spent the majority of their day engaged in physical labor.

---

[1] *See Vega v. CM & Assoc. Constr. Mgmt., LLC*, 2019 NY Slip Op 06459, ¶¶ 1-2, 175 A.D.3d 1144, 1145-46, 107 N.Y.S.3d 286, 287-88 (App. Div. 1st Dept.)

Among other activities, Plaintiff and the Class engaged in the following: (i) cleaning the office, including the restrooms, (ii) receiving patients from the waiting room and seating patients in treatment chair; (iii) gathering dental records, and applying protective garb to the patient; (iv) gathering and preparing appropriate tools, i.e. dental instruments, materials and medicines, for use by the dentist during each specific procedure; (v) keeping the patient's oral operative area clear during dental procedures by use of suction devices, water/air sprays, cotton rolls, and retraction of tongue and cheek; (vi) when requested by the dentist, taking, developing and mounting x-rays necessary for diagnostic evaluation; (vii) ensuring adequate stock of solution and supplies; (viii) Sterilizing instruments and maintaining the sterilization area; (ix) performing periodic cleaning and maintenance of dental equipment, instruments and treatment areas on an as needed basis.

42.    Further, manual workers generally include those employees, like Plaintiff and Class members, whose labor is easily interchangeable with other able-bodied individuals.  As workers earning only slightly above minimum wage, the jobs market itself demonstrates the interchangeability of Class members.  NYLL §191 was passed to protect individuals in the types of low-wage, interchangeable jobs occupied by Plaintiff and the Class.  Plaintiff and the Class hold positions with Defendants which are easily trained and may be easily replaced by other able-bodied workers. The ease of replacement and low-wages of Plaintiff and the Class make them dependent upon their weekly earnings.  This dependance and lack of job security, places Plaintiff and the Class directly in the category of workers that NYLL intended to protect by ensuring they receive their wages on a weekly basis.

43.    That Plaintiff and the Class members were engaged in easily trained, easily replaceable positions is clearly demonstrated by their earnings.  At the start of her employment, Plaintiff earned $16.00 an hour, a figure lower than the average individual employed in New York

State as a janitor, pest control worker, tree trimmer, lawn supervisor, or waiter.[2]  Employees in those positions in New York State earned over $19.00 an hour on average.  The jobs market itself demonstrates that Plaintiff, who worked in New York City for $16.00 an hour, was not employed in a highly skilled position.  Given the low-wages of the Class and realities of the Class's daily work, Class members must be afforded the protections provided under NYLL §191.

44.     Due to Defendants' improper, untimely bi-weekly payments, Plaintiff would struggle to timely pay her own bills.  Plaintiff would be forced to pay rent and credit-card bills late as she waited for her owed compensation to become available.  Class members would similarly struggle to timely pay debts due to Defendants' untimely compensation policies.

45.     Pursuant to Defendants' PTO policies and NYLL §196(b), Plaintiff and PTO Subclass members accrued PTO over the course of their employment.  At the time Plaintiff provided her two weeks' notice, Plaintiff had earned fifty-six point four (56.4) hours of paid leave.  Upon providing her notice, Defendants immediately terminated her employment, and refused to compensate her saved, earned PTO.  Despite the employment terms explicitly providing that PTO Subclass members are to receive such pay upon separation of employment, Defendants refused to provide any Subclass member, including Plaintiff this earned compensation.

46.     Defendants failed to provide Plaintiff and the Class members with proper wage statements because they failed to accurately reflect the employees' hours worked, due to Defendants' policy of time shaving and due to a policy of paying new employees at a rate lower than the agreed upon base rate.

---

[2] https://www.bls.gov/oes/current/oes370000.htm; https://www.bls.gov/oes/current/oes353031.htm#st.

47.     Defendants failed to provide Plaintiff and the Class members with wage notices at hiring and at dates of all wage changes thereafter. Plaintiff did not receive wage notices either upon being hired or upon wage changes since the date of hiring in violation of NYLL.

48.     Defendants knowingly and willfully failed to pay Plaintiff, FLSA Collective Plaintiffs, and the Class regular and overtime wages for all hours worked due to Defendants' time-shaving practices.

49.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under NYLL.

50.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices to employees, at the beginning of employment and at dates of all wage changes thereafter, pursuant to the requirements of NYLL.

51.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members, in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

52.     Plaintiff SAMA ALIYEVA realleges and reavers all the foregoing paragraphs of this class and collective action Complaint as if fully set forth herein.

53.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a).  Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

54.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of FLSA.

55.     At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.

56.     At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff and FLSA Collective Plaintiffs for all overtime hours worked at the statutory rate of time and one-half of the agreed upon base hourly rate.

57.     Defendants failed to compensate Plaintiff and FLSA Collective Plaintiffs for all hours worked due to time-shaving, including all hours worked in excess of forty (40) each week.

58.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

59.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under FLSA.

60.     As a direct and proximate result of Defendants' willful disregard of FLSA, Plaintiff, and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

61.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff, and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime, plus an equal amount as liquidated damages.

62.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

**COUNT II**

**<u>VIOLATION OF THE NEW YORK LABOR LAW</u>**

63.     Plaintiff SAMA ALIYEVA realleges and reavers all the foregoing paragraphs of this class and collective action Complaint as if fully set forth herein.

64.     At all relevant times, Plaintiff and Class members were employed by the Defendants within the meaning of the NYLL, §§2 and 651.

65.     Defendants willfully violated Plaintiff's and Class members' rights by failing to pay them overtime compensation at the rate of not less than one and one-half times the agreed upon regular rate of pay for each hour worked in excess of forty (40) hours each workweek.

66.     Defendants willfully violated the rights of Plaintiff and Class members, by practicing a policy of time-shaving, in violation of NYLL.

67.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them their wages within seven (7) days of the end of the week in which they were earned, in violation of NYLL § 191(1)(a)(i).

68.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required by NYLL. Defendants are required to provide accurate and proper information on wage statements issued to employees in accordance with NYLL.

69.     Defendants knowingly and willfully operated their business with a policy of not providing all non-exempt employees with proper wage notices, at date of hiring and at dates of all wage changes thereafter, as required under NYLL.

20

70. Due to the Defendants' NYLL violations, Plaintiff and Class members are entitled to recover from Defendants their unpaid wages including overtime, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to NYLL.

## COUNT III

## BREACH OF CONTRACT

1. Plaintiff SAMA ALIYEVA realleges and reavers all the foregoing paragraphs of this class and collective action Complaint as if fully set forth herein.

2. The elements for a cause of action for breach of contract are: (1) formation of a contract between the parties; (2) performance by one party; (3) failure to perform by another party; and (4) resulting damage.

3. Plaintiff, and Class members, agreed upon a base rate of pay for their employment prior to commencement of their work.

4. Plaintiff and Class members performed their work as employees for Defendant in accordance with their agreements. Moreover, Plaintiff and Class members performed all conditions, covenants, and promises required by their agreed upon employment terms and have never been in breach of the same.

5. By failing to compensate the Plaintiff and Class members at their agreed upon rate of pay, Defendants failed to provide full earned compensation to Plaintiff and Class members in breach of the terms of their employment.

6. Plaintiff and Class members, who were compensated at an improperly low rate for the first six-months of their employment were damaged by Defendants' breach.

7.     As a result of said breach, Plaintiff and Class members are owed money damages from Defendants.

## COUNT IV

## **BREACH OF CONTRACT**

8.     Plaintiff SAMA ALIYEVA realleges and reavers all the foregoing paragraphs of this class and collective action Complaint as if fully set forth herein.

9.     NYLL § 196-b states in pertinent part:

> a. For employers with four or fewer employees in any calendar year, each employee shall be provided with up to forty hours of unpaid sick leave in each calendar year; provided, however, an employer that employs four or fewer employees in any calendar year and that has a net income of greater than one million dollars in the previous tax year shall provide each employee with up to forty hours of paid sick leave pursuant to this section;

> b. For employers with between five and ninety-nine employees in any calendar year, each employee shall be provided with up to forty hours of paid sick leave in each calendar year; and

> c. For employers with one hundred or more employees in any calendar year, each employee shall be provided with up to fifty-six hours of paid sick leave each calendar year.

10.     Pursuant to the above law, Defendants maintained a policy regarding PTO for all employees.

11.     Unless an employer's paid sick leave and/or resignation policy specifies, in writing, that employees lose accrued benefits upon termination of employment, earned PTO must be paid out to departing employees. *See Glenville Gage Company, Inc. v. Industrial Board of Appeals of the State of New York, Department of Labor*, 70 AD 2d 283 (3d Dept 1979).

12.     Defendants' written and/or implied paid time off policies required the disbursement of earned PTO to departing employees and/or was silent on the issue.

22

13. Defendants failed to provide PTO to the PTO Subclass upon their departure from Defendants' employment

14. Plaintiff and Subclass members have at all times performed all conditions, covenants, and promises required with their explicit and/or implicit employment terms and have never been in breach of the same.

15. By failing to compensate the PTO of Plaintiff and PTO Subclass members, Defendants failed to provide full earned compensation to Plaintiff and PTO Subclass members in breach of the terms of their employment.

16. The elements for a cause of action for breach of contract are: (1) formation of a contract between the parties; (2) performance by one party; (3) failure to perform by another party; and (4) resulting damage.

17. At the time when Plaintiff's employment was terminated, Plaintiff had accrued 56.4 hours.  Upon her termination, Defendants failed to provide all owed compensation, including her compensation from her earned PTO.  PTO Subclass members were similarly under compensated by Defendants.

18. At no point of during the employment with Defendants, were Plaintiff or PTO Subclass members explicitly informed that they would lose accrued PTO benefits when their employment with Defendants terminated.

19. As a result of said breach, Plaintiff and PTO Subclass members owed money damages for Defendants failure to provide all.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself, FLSA Collective Plaintiffs and Class members, respectfully requests that this Court grant the following relief:

    a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

    b.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

    c.  An award of unpaid wages due to Defendants' policy of compensating new employees at a reduced rate;

    d.  An award of unpaid regular and overtime compensation resulting from Defendants' policy of time-shaving, and which is due under FLSA and NYLL;

    e.  An award of liquidated damages and interest for each late payment of wages pursuant to NYLL § 191(1)(a)(i);

    f.  An award of unpaid wages, including overtime compensation, due to Defendants' policy of requiring off-the-clock work under the FLSA and NYLL;

    g.  An award of statutory penalties as a result of Defendants failure to comply with NYLL wage notice and wage statement requirements;

    h.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wage and overtime compensation, pursuant to 29 U.S.C. § 216;

i.  An award for compensation proportionate to the paid sick leave Plaintiff accrued during her employment with Defendants;

j.  An award of pre-judgment and post-judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

k.  Designation of Plaintiff as a Representative of the FLSA Collective Plaintiffs;

l.  Designation of this action as a Class Action pursuant to FRCP 23;

m.  Designation of Plaintiff as a Representative of Class; and

n.  Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: June 2, 2022

Respectfully submitted,
By:  */s/ C.K. Lee*
       C.K. Lee, Esq.

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs and the Class*