**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs
and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHELLE ISAYEVA and KAHOLY FERNANDEZ, *on behalf of themselves, FLSA Collective Plaintiff and the Class,*<br><br>                    Plaintiff,<br><br>          v.<br><br>DIAMOND BRACES,<br>an unincorporated entity, association, or affiliation,<br>ORTHOCLUB, P.C.,<br>          d/b/a DIAMOND BRACES<br>JOHN DOE CORPORATIONS 1-100<br>          d/b/a DIAMOND BRACES, and<br>OLEG DRUT,<br><br>                    Defendants. | Case No.: 22 Civ. 4575 (KPF)<br><br>**SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff MICHELLE ISAYEVA and KAHOLY FERNANDEZ (herein, "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby file this Second Amended Class and Collective action Complaint against Defendants, DIAMOND BRACES, an unincorporated entity, association, or affiliation, ORTHOCLUB, P.C. d/b/a DIAMOND BRACES, JOHN DOE CORPORATIONS 1-100 d/b/a DIAMOND BRACES ("Corporate Defendants"), and OLEG DRUT ("Individual Defendant," and together with Corporate Defendants, "Defendants"), and state as follows:

## INTRODUCTION

1.      Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that they and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time-shaving, (2) unpaid wages, including overtime, due to a policy of paying new employees at a rate lower than their agreed upon base rate, (3) liquidated damages and (4) attorneys' fees and costs.

2.      Plaintiffs further allege that, pursuant to the State wage laws of New York under New York Labor Law ("NYLL") Article 19 § 650 et seq., and Article 6 § 190 *et seq.*, that they are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time-shaving, (2) compensation for late payment of wages, (3) statutory penalties, (4) liquidated damages, and (5) attorneys' fees and costs.

3.      Plaintiff KAHOLY FERNANDEZ further alleges that, she and others similarly situated are entitled to recover for the unused paid leave earned over the course of their employment and for which Defendants are required to compensate at the time of an employee's separation pursuant to the terms of their employment. Defendants breached their contract with Plaintiffs and Class members who left Defendants' employment.

4.      Plaintiff KAHOLY FERNANDEZ, alleges an individual claim of unlawful retaliation in violation of the FLSA and NYLL §215, and thus seeks to recover from Defendants: (1) compensatory damages (including back pay); (2) punitive damages; and (3) attorney's fees and costs.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

6.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §1391. Further, Defendants have previously Answered without raising objection or making a motion disputing venue, thereby waiving objections as to venue. *See United Rentals v. Bastanzi*, 2006 U.S. Dist. LEXIS 108411, *1 (D. Conn. Feb. 17, 2006) ("The defendant did not assert the defense of improper venue in a Rule 12 motion before answering as required nor did he raise the defense in his answer. Therefore, the defendant waived its defense of improper venue.") (citing 12(h)(1))

## PARTIES

7.      Plaintiff MICHELLE ISAYEVA is a resident of Kings County, New York.

8.      Plaintiff KAHOLY FERNANDEZ is a resident of Kings County, New York.

9.      Defendant DIAMOND BRACES is an unincorporated partnership, affiliation, or association that collectively operate under the common business name of "Diamond Braces" at the following locations:

a.      1411 Kings Hwy Brooklyn, NY 11229 ("Homecrest, Brooklyn" location);
b.      79 Avenue U Brooklyn, NY 11223 ("Bensonhurst, Brooklyn" location);
c.      2848 Church Ave #201b Brooklyn, NY 11226 ("Flatbush, Brooklyn" location);
d.      1122 Avenue Z Brooklyn, NY 11235 ("Sheepshead Bay, Brooklyn" location);
e.      2481 Flatbush Ave Brooklyn, NY 11234 ("Old Mill Basin, Brooklyn" location);
f.      260 Audubon Ave New York, NY 10033 ("Avenue H, Brooklyn" location);
g.      3010 Avenue H Brooklyn, NY 11210 ("Washington Heights, Manhattan" location);
h.      68 W 125th St. New York, NY 10027 ("Harlem, Manhattan");

i.    92-12 Roosevelt Ave Jackson Heights, NY 11372 ("Jackson Heights, Queens" location);

j.    22-54 31st Street Queens, NY 11105 ("31st Street, Astoria, Queens" location);

k.    37-03a 82nd Street Jackson Heights, NY 11372 ("Jackson Heights, Queens" location);

l.    31-65 Steinway Street Astoria, NY 11103 ("Astoria, Queens" location);

m.    2992 3rd Ave, The Bronx, NY 10455 ("Mott Haven, The Bronx" location);

n.    2194 White Plains Rd, The Bronx, NY 10462 ("Van Nest, The Bronx" location);

o.    1471 Dekalb Ave 3rd floor Brooklyn, NY 11237 ("Ridgewood, Brooklyn" location);

p.    97 E 4th St New York, NY 10003 ("East Village, Manhattan" location);

q.    2025 Richmond Ave Staten Island, NY 10314 ("Staten Island" location);

r.    21 Spring Valley Market Pl Spring Valley, NY 10977 ("Spring Valley, Rockland County" location);

s.    86 W 225th St, The Bronx, NY 10463 ("Riverdale, The Bronx" location);

t.    2155 86th St Brooklyn, NY 11214 ("Bensonhurst, Brooklyn 2" location);

u.    4025 Hempstead Turnpike Bethpage, NY 11714 ("Bethpage, Long Island" location);

v.    5 Westchester Square, The Bronx, NY 10461 ("Westchester Square, East Bronx" location);

w.    70-44 Austin St Forest Hills, NY 11375 ("Forest Hills, Queens" location);

x.    94-18 63rd Dr Rego Park, NY 11374, NY 11210 ("Rego Park, Queens" location);

y.    530 5th Avenue Brooklyn NY 11215 ("South Slope, Brooklyn" location);

z.    1017 Flatbush Avenue Brooklyn NY 11226 ("Flatbush Ave, Brooklyn" location);

aa.    942 Southern Blvd, The Bronx NY 10459 ("Longwood, The Bronx" location);

bb.    1552 Westchester Ave Bronx NY 10472 ("Soundview Bruckner, The Bronx" location);

cc.    33 W Fordham Rd, The Bronx, NY 10468 ("Jerome Park, The Bronx" location);

dd.    3457 Jerome Ave, The Bronx, NY 10467 ("Van Cortlandt Pk, The Bronx" location);

ee.    8515 4th Ave Brooklyn, NY 11209 ("Bay Ridge, Brooklyn" location);

ff.    166-16 Jamaica Ave 2nd Floor Jamaica, NY 11432 ("Jamaica, Queens" location);

gg.    2656 Hylan Blvd Suite 165 Staten Island, NY 10306 ("Great Kills, Staten Island" location);

hh.    72 E 170th St Bronx, NY 10452 ("Highbridge, Bronx" location);

ii.    601 Portion Rd Lake Ronkonkoma, NY 11779 ("Lake Ronkonkoma" location);

jj.    132 E Fordham Rd Bronx NY 10468 ("Jerome Park, Bronx" location);

kk.    615 10th Ave New York, NY 10036 ("Hell's Kitchen, Manhattan" location);

4

ll.   144 Dyckman St New York, NY 10040 ("Washington Heights, Manhattan 2" location);

mm.   5119 5th Ave Brooklyn, NY 11220 ("Sunset Park, Brooklyn" location);

nn.   22 Graham Ave Brooklyn, NY 11206 ("Williamsburg, Brooklyn" location);

oo.   1239 Fulton St Brooklyn, NY 11216 ("Bedford Stuyvesant, Brooklyn" location);

pp.   793 Manhattan Ave Brooklyn, NY 11222 ("Greenpoint, Brooklyn" location);

qq.   4211 Broadway Ste 26 New York, NY 10033 ("Washington Heights, Manhattan 3" location); and

rr.   1376 Metropolitan Ave, The Bronx, NY 10462 ("Parkchester, The Bronx" location). *See* **Exhibit A** for Defendants' websites showing Defendants' locations.

10.   Defendants own and operate the Orthodontist Offices as a single integrated enterprise, under the common control of its owners, including Individual Defendant OLEG DRUT. Specifically, the Orthodontist Offices are engaged in related activities, share common ownership and have a common business purpose:

a.   All the Orthodontist Offices are jointly advertised on Defendants' website: https://diamondbraces.com/. *See* **Exhibit A**.

b.   All the Orthodontist Offices use a central human resources department. *See* **Exhibit B** for Defendants' "Career Opportunities" page and various positions offered by Defendants at various locations. Specifically, Defendants offer various dental and orthopedic service positions at various locations, but only offer administrative positions for one single location, their headquarters (e.g., Human Resources Manager, Talent Acquisition Manager).

c.   Supplies are interchangeable among the Orthodontist Offices locations.

d.   The Orthodontist Offices regularly share and exchange non-exempt employees, who are interchangeable among the Orthodontist Offices. Defendants require employees to work at the other Orthodontist Office location different from their

primary place of employment whenever one (1) location is short-staffed. Defendants, on occasion, transfer employees between different locations based on their own business needs. Plaintiffs themselves were transferred among Defendants Orthodontist Offices.  Plaintiff KAHOLY FERNANDEZ was even transferred to work at an office located in Norwalk, Connecticut for a period of time and on an as needed basis.

e.  Defendants operated a single central location managing and maintaining employee payroll and time records.  Plaintiff's timesheets, Defendants' pay-practices/policies, and the employer listed on her paystubs remained the same regardless of the Orthodontist Office at which she worked.

f.  Defendants jointly settled a case with the New York State Attorney General's Office in 2019 for "allowing uncertified employees to perform orthodontic procedures and then improperly billing Medicaid for payment for such procedures". *See* **Exhibit C**. The Attorney General's office described Defendants as a "chain of dental offices operating… in New York State, including dental offices in all five boroughs and in Nassau and Rockland Counties." *Id.*

11.  Defendants collectively are entities or individuals who form an unincorporated partnership, affiliation, or association and are listed collectively as orthodontists under a common business name of "Diamond Braces" on the website located at www.diamondbraces.com. "Diamond Braces" with an address at 260 Audubon Avenue, New York, New York 10033 and may be served through its owner and officer, Dr. Oleg Drut. The diamondbraces.com website does not provide any reference to the corporate structure or interrelationship of the entity and/or

individual Defendants other than to list the individual Defendants as orthodontists providing dental service as part of Diamond Braces' "team."  Many of the entities and individuals comprising this unincorporated partnership are domiciled and/or residents of New York State and within New York County specifically.

12.     This Court has specific personal jurisdiction over Defendants because the events giving rise to this action took place in New York.

13.     Corporate Defendant, ORTHOCLUB, P.C. d/b/a DIAMOND BRACES, is a foreign professional service company organized under the laws of the State of Jersey.  Defendant ORTHOCLUB, P.C. d/b/a DIAMOND BRACES operates multiple offices here in New York State at the following addresses: (i) Sheepshead Bay, Brooklyn, (ii) Avenue H, Brooklyn, (iii) Ridgewood, Brooklyn, and (iv) Staten Island.  Defendant ORTHOCLUB, P.C. d/b/a DIAMOND BRACES has an address for service of process located at 79 Avenue U, Brooklyn, NY 11223.

14.     Defendant JOHN DOE CORPORATIONS 1-100 are members of Defendant DIAMOND BRACES operating the individual Orthodontist Offices located throughout New York State.  Defendant JOHN DOE CORPORATIONS 1-100, or the entities through which the Orthodontist Offices are operated, all have common payroll, common timekeeping, common wage policies, common human resources, implemented through Defendant DIAMOND BRACES's payroll and human resources department.

15.     Individual Defendant, OLEG DRUT, is the "company founder and Chief Clinical Officer" of Defendant DIAMOND BRACES. *See* **Exhibit D**. OLEG DRUT exercised control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs, and Class Members. OLEG DRUT had and exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee work schedules, and (iv) otherwise affect

the quality of employment of Plaintiff, FLSA Collective Plaintiffs, and Class Members. At all relevant times, employees could complain to OLEG DRUT regarding any of the terms of their employment, and OLEG DRUT would have the authority to effect any changes to the quality and terms of their employment. OLEG DRUT ensured that employees effectively served customers and exercised functional control over the business and financial operations of Corporate Defendants. OLEG DRUT had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class Members and could reprimand employees.

16.    Plaintiffs personally witnessed OLEG DRUT inspect the individual Orthodontist Offices and reprimand employees.

17.    At all relevant times, Corporate Defendants, each was and continues to be an "enterprise engaged in commerce" within the meaning of FLSA and NYLL and the Regulations thereunder.

18.    Although Plaintiffs did not work at all of Defendants' Orthopedic Offices, **all** of the Orthopedic Offices are appropriately named in this Complaint through the relevant Corporate Defendants described above. Because the Orthopedic Offices share identical illegal wage and hour policies, the Orthopedic Offices and the relevant Corporate Defendants are properly named on the basis of their outstanding liability to the Class members for whom Plaintiffs seek to represent.

19.    Plaintiffs have fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

20.    At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs and Class members were directly essential to the businesses operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

21.    Plaintiffs bring claims for relief as a collective action pursuant to FLSA,29 U.S.C. § 216(b), on behalf of all non-exempt employees, including but not limited to dental assistants, dental hygienists, warehouse associates, orthodontic assistants, receptionists, and other employees with like duties, employed by Defendants in New York State on or after the date that is three years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

22.    At all relevant times, Plaintiffs and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them the proper wages and the proper overtime premium at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek due to a policy of timeshaving and due to a policy of paying new employees at a rate lower than the agreed upon base rate,. The claims of Plaintiffs stated herein are essentially the same as those of other FLSA Collective Plaintiffs. The claims of Plaintiffs stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

23.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

24.     Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure

("FRCP") Rule 23, on behalf of the following class:

> All current and former non-exempt employees, including but not limited to dental
> assistants, dental hygienists, warehouse associates, orthodontic assistants,
> receptionists, and other employees with like duties, employed by Defendants in
> New York State on or after the date that is six (6) years, or the relevant statutory
> period of each state as applicable by law, before the filing of the Complaint in this
> case. (the "Class").

25.     For Class members, Plaintiffs seek relief for unpaid wages, including unpaid

overtime wages, as well as statutory penalties for failure to provide wage notices and accurate

wage statements.

26.     In addition, Plaintiff ISAYEVA seeks to have certified the following "Biweekly

Subclass":

> All current and former non-exempt employees who spent at least 25% of their time
> performing physical labor employed by Defendants in New York State on or after
> the date that is six (6) years before the filing of the Complaint in this case. (the
> "Biweekly SubClass").

27.     Plaintiff ISAYEVA seeks liquidated damages and interest for failure to pay

Biweekly Subclass members on a weekly basis, as required under NYLL § 191.

28.     Plaintiff KAHOLY FERNANDEZ also seeks to certify the following "Paid Time

Off Subclass" (or "PTO Subclass"):

> All former non-exempt employees , including but not limited to dental assistants,
> dental hygienists, warehouse associates, orthodontic assistants, receptionists, and
> other employees with like duties, who (a) were employed by Defendants in New
> York State on or after the date that is six (6) years before the filing of the Complaint
> in this case; and (b)  did not receive the value of their paid time off upon the end of
> their employment relationship with Defendants (the "PTO Subclass").

29.     Plaintiff KAHOLY FERNANDEZ and PTO Subclass members seek relief their

unpaid PTO under New York State's respective wage laws or, in the alternative, under a breach of

contract theory.

30.    To the extent necessary, Plaintiffs will designate further subclasses for each of the States where Defendants have employees.

31.    The Class members and the Subclasses members are readily ascertainable. The number and identity of the Class members and the Subclasses members are determinable from the records of Defendants. The hours assigned and worked, the title of the position held, and rates of pay for each Class member and the Subclasses members are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, the Class members and the Subclasses members' names and addresses are readily available from Defendants. Notice can be provided by means permissible under FRCP 23.

32.    Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All Class members were subject to Defendants' corporate practices of (i) failing to pay wages including overtime, due to time-shaving, (ii) failing to provide Class members with proper wage statements with every payment of wages, and (iii) failing to properly provide wage notices to Class members, at date of hiring.

33.    Biweekly Subclass members were subject to the following violation: impermissibly late payment of wages.

34.    Pursuant to Defendants' employment terms, PTO Subclass members earned paid-time-off ("PTO") over the course of their employment.  Defendants' paid sick leave and/or resignation policy never specified that Plaintiff KAHOLY FERNANDEZ and PTO Subclass members were not entitled to a disbursement of earned PTO upon their separation from Defendants.  In fact, Defendants' PTO policy explicitly states employees are entitled to disbursement of PTO upon termination. Although

Plaintiff KAHOLY FERNANDEZ and PTO Subclass members were entitled to recover compensation for their PTO earned, Plaintiff KAHOLY FERNANDEZ and PTO Subclass members were not compensated for their earned PTO upon their separation.

35.    The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. Additionally, class members total over forty (40) in New York State.  PTO Subclass members also total over forty (40). The Biweekly Subclass members also total over forty (40).

36.    Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs, Class members, and the Subclasses members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

37.    Plaintiffs are able to fairly and adequately protect the interests of the Class and the Subclasses and have no interests antagonistic to the Class or the Subclasses. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation, and have previously represented plaintiffs in wage and hour cases.

38.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the

unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

39.     Defendants and other employers throughout the state violate New York State wage laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

40.     There are questions of law and fact common to the Class and Subclasses which predominate over any questions affecting only individual class members, including:

a) Whether Defendants employed Plaintiffs and the Class members within the meaning of New York State wage laws;

b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiffs and the Class members;

c) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiffs and the Class members for their work;

d) Whether Defendants properly notified Plaintiffs and Class members of their hourly rates and overtime rates;

e) Whether Defendants properly compensated Plaintiffs and Class members the proper overtime compensation at one-and-one-half times their straight time base hourly rates for all hours worked in excess of forty (40) each workweek under New York State wage laws;

f) Whether Defendants required Plaintiffs and the Class members to perform unpaid off-the-clock work;

g) Whether Defendants paid Plaintiffs and Class members their lawful wages in a timely manner;

h) Whether Defendants provided proper wage statements informing all Class members of information required to be provided on wage statements under New York State wage laws;

i) Whether Defendants provided proper wage notice, at date of hiring, to all Class members, per requirements of NYLL;

j)  Whether Defendants provided proper wage statements to all Class members, per requirements of NYLL;

k)  Whether Defendants properly disbursed earned PTO payments to PTO Subclass members in accordance with PTO Subclass members' terms of employment; and

l)  Whether Biweekly Subclass members were workers required to be paid weekly pursuant to NYLL.

## STATEMENT OF FACTS

*Wage Allegations of Plaintiff MICHELLE ISAYEVA:*

41.    On or around January 10, 2021, Plaintiff MICHELLE ISAYEVA began working for Defendants as a Dental Assistant. Plaintiff MICHELLE ISAYEVA is not licensed or certified as a dental assistant, and her position did not require any credential to perform.  Plaintiff MICHELLE ISAYEVA's employment was terminated in or around August 2021.

42.    Throughout her employment with Defendants, Plaintiff MICHELLE ISAYEVA was sent to at least ten (10) different Orthodontist Offices on an as needed basis.  The locations where Plaintiff MICHELLE ISAYEVA performed work include the following:

- 1411 Kings Hwy, Brooklyn, NY 11229;
- 79 Avenue U, Brooklyn, NY 11223;
- 2848 Church Ave #201b, Brooklyn, NY 11226; and
- 2481 Flatbush Ave, Brooklyn, NY 11234.

43.    From the beginning of her employment with Defendants to in or around December 2021, Plaintiff MICHELLE ISAYEVA was scheduled to work, and did work, from 9:00 a.m. to 8:00 p.m., for four (4) days a week and an additional day from 9:00 am to 5:00 pm once a week, totaling fifty-two (52) hours per week.

44.    Throughout Plaintiff MICHELLE ISAYEVA's employment, Plaintiff MICHELLE ISAYEVA was compensated on a bi-weekly basis at a rate of seventeen dollars ($17.00) an hour.

45.     Based on her conversations with, and observations of, her co-workers, Plaintiff ISAYEVA knows that all Defendants' employees were paid biweekly.

46.     As a dental assistant, Plaintiff was required (i) cleaning the office, including the restrooms, (ii) mop the floors, (iii) go to the store to buy supplies, (iv) run personal errands from grocery shopping to babysitting for the office managers, (v) restocking supplies and equipment, (vi) filing, storing, and gathering dental records; (vii) gathering and preparing appropriate tools, i.e. dental instruments, materials and medicines, for use by the dentist during each specific procedure; (viii) keeping the patient's oral operative area clear during dental procedures; (ix) washing instruments and maintaining the sterilization area; (x) performing periodic cleaning and maintenance of dental equipment, instruments and treatment areas on an as needed basis.

47.     Throughout Plaintiff ISAYEVA employment with Defendants and regardless of location worked, Plaintiff ISAYEVA, was not compensated for all hours worked due to Defendants' impermissible policy of forcing Plaintiff ISAYEVA to clock-out for a half-hour lunch, but then not permitting Plaintiff ISAYEVA to take a free and clear lunch break. Plaintiff ISAYEVA was forced to eat at her stations daily and work through lunch despite Defendants' requiring employees to clock-out. Despite being required to clock out for lunch, she would be required by her managers (including but not limited to Nodira Matkarimova and Teona K) to engage in work during her break, depriving her of the time to eat lunch during her supposed lunch break.

48.     Based on her conversations with, and observations of, other employees of Defendants, Plaintiff ISAYEVA knows that her co-workers were also time-shaved in this manner.

49.    About once a week, Plaintiff ISAYEVA would be permitted to clock out for a short, less then 20 minute, rest break. However, she was not compensated for this time even though it is compensable under FLSA and NYLL.

50.    Based on her conversations with, and observations of, other employees of Defendants, Plaintiff ISAYEVA knows that her co-workers were also permitted short rest breaks of under 20 minutes and also received no compensation for these breaks.

51.    As the result of this policy, Plaintiff ISAYEVA would be time-shaved 2.75 hour during each week of her employment by Defendants.

52.    Plaintiff ISAYEVA did not receive a wage notice or accurate wage statements from Defendants.

53.    Based on her conversations with, and observations of, other employees of Defendants, Plaintiff ISAYEVA knows that her co-workers also did not receive wage notices or accurate wage statements from Defendants.

*Wage Allegations of Plaintiff KAHOLY FERNANDEZ:*

54.    On or around March 17, 2022, Plaintiff KAHOLY FERNANDEZ began to work for Defendants as a Treatment Coordinator. Plaintiff KAHOLY FERNANDEZ's employment was terminated on August 8, 2022.

55.    Throughout her employment with Defendants, Plaintiff KAHOLY FERNANDEZ was sent to at least four (4) different Orthodontist Offices on an as needed basis.  The locations where Plaintiff KAHOLY FERNANDEZ performed work include the following:

- A location in Norwalk, Connecticut
- 2848 Church Ave #201b, Brooklyn, NY 11226; and
- 2481 Flatbush Ave, Brooklyn, NY 11234.

56.     From the beginning of her employment with Defendants to in or around December 2021, Plaintiff KAHOLY FERNANDEZ was scheduled to work eight-and-one-half (8.5) hour days six days a week, on one of the following two schedules: (i) 9:30 am to 6:00 pm or (ii) 10:30 am to 7:00 pm.

57.     Throughout Plaintiff KAHOLY FERNANDEZ's employment, Plaintiff KAHOLY FERNANDEZ was compensated on a bi-weekly basis at a rate of seventeen dollars ($17.00) an hour.  For her last month of employment Plaintiff KAHOLY FERNANDEZ was compensated at a rate of twenty dollars ($20.00) an hour.

58.     Throughout Plaintiff KAHOLY FERNANDEZ's employment with Defendants and regardless of location worked, Plaintiff KAHOLY FERNANDEZ was not compensated for all hours worked due to Defendants' impermissible policy of forcing Plaintiff KAHOLY FERNANDEZ to clock-out for a half-hour lunch, but then not permitting Plaintiff KAHOLY FERNANDEZ to take a free and clear lunch break.  Plaintiff KAHOLY FERNANDEZ was forced to eat at her stations daily and work through lunch despite Defendants' requiring employees to clock-out.  Despite being required to clock out for lunch, Plaintiff KAHOLY FERNANDEZ would be required by her managers (including but not limited to Mariana [LNU], Angelina [LNU], and Tamara [LNU]) to engage in work during her break, depriving her of the time to eat lunch during this supposed lunch break.

59.     Based on her conversations with, and observations of, other employees of Defendants, Plaintiff FERNANDEZ knows that her co-workers were also time-shaved in this manner.

60. About once a week, Plaintiff FERNANDEZ would be permitted to clock out for a short, less then 20-minute, rest break. However, she was not compensated for this time even though it is compensable under FLSA and NYLL.

61. Based on her conversations with, and observations of, other employees of Defendants, Plaintiff FERNANDEZ knows that her co-workers were also permitted short rest breaks of under 20 minutes and also received no compensation for these breaks.

62. As the result of this policy, Plaintiff FERNANDEZ would be time-shaved 3.25 hours during each week of her employment by Defendants.

63. Plaintiff FERNANDEZ did not receive a wage notice or accurate wage statements from Defendants.

64. Based on her conversations with, and observations of, other employees of Defendants, Plaintiff FERNANDEZ knows that her co-workers also did not receive wage notices or accurate wage statements from Defendants.

65. Plaintiff FERNANDEZ accumulated unused paid time off ("PTO") during her employment by Defendants, and it was Defendants' officially stated policy to pay employees the value of unused PTO upon the end of their employment by Defendants. However, Defendants refused to pay her out for her unused PTO when she left Defendants' employment. Plaintiff FERNANDEZ was entitled to one hour of PTO for every 40 hours she worked. As Plaintiff FERNANDEZ worked for five months without taking any PTO, Plaintiff FERNANDEZ was entitled to at least 32 hours of PTO at the time of her termination.

*Class-Wide Wage Claims:*

66.     Throughout their employment with Defendants and regardless of location worked, Plaintiffs, FLSA Collective Plaintiffs, and Class members were not compensated for all hours worked due to Defendants' impermissible policy of forcing employees to clock-out for lunch, but then not permitting them to take a free and clear lunch break.  Plaintiffs, FLSA Collective Plaintiffs and Class members were forced to eat at their stations and work through lunch despite Defendants' requiring employees to clock-out.

67.     Defendants knowingly and willfully failed to pay Plaintiffs, FLSA Collective Plaintiffs, and the Class regular and overtime wages for all hours worked due to Defendants' time-shaving practices.

68.     Throughout their employment with Defendants and regardless of location worked, Plaintiffs, FLSA Collective Plaintiffs, and Class members would weekly be permitted to take short rest breaks of under 20 minutes. However, they were never compensated for this time.

69.     Defendants violated the FLSA's "bright line time test" pursuant to 29 C.F.R. 758.18 that breaks of 20 minutes or less must be compensated.  *See Martin v. Waldbaum, Inc.*, 1992 U.S. Dist. LEXIS 16007, *6 (S.D.N.Y. Jan. 5, 2012) ("the Court finds, as a matter of law, that breaks of less than twenty minutes are compensable") (emphasis added); *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 121 (S.D.N.Y. 2011) ("Rest periods of short duration must be counted as hours worked.") (citing 29 C.F.R. § 785.18); *Sec'y United States DOL v. Am. Future Sys.*, 873 F.3d 420, 432 (3d Cir. 2017) ("[T]he government should not be in the business of determining what employees do on short work breaks, much less attempting to evaluate which short breaks merit or do not merit compensation. . . . [E]mployers and employees are best served by the bright line time test currently provided in Section 785.18.") (citation omitted).

70.    Throughout Plaintiff MICHELLE ISAYEVA's employment, Defendants regularly failed to pay Plaintiff MICHELLE ISAYEVA and the Biweekly Subclass their wages within seven (7) days of the end of the week in which Plaintiff MICHELLE ISAYEVA and the Biweekly Subclass earned them, in violation of NYLL § 191(1)(a)(i).[1] Defendants would provide Plaintiff MICHELLE ISAYEVA and the Biweekly Subclass their wages biweekly despite NYLL requiring that employees like Plaintiff MICHELLE ISAYEVA and the Biweekly Subclass be compensated on a weekly basis.  Therefore, Plaintiff MICHELLE ISAYEVA and the Biweekly Subclass are owed liquidated damages equal to the late payment of wages and accrued interest on the delayed payments.

71.    Under New York Labor Law, all 'manual worker(s)' must be paid on a weekly basis.  Pursuant to the New York State Department of Labor, manual workers include non-exempt employees who spend more than twenty-five percent (25%) of their working time performing physical labor.  Here, all employees who worked in New York State were paid bi-weekly regardless of position or duties.  Plaintiff MICHELLE ISAYEVA and the Biweekly Subclass members spent the majority of their day engaged in physical labor. Among other activities, Plaintiff MICHELLE ISAYEVA and the Biweekly Subclass members engaged in the following activities: (i) cleaning the office, including the restrooms, (ii) mop the floors, (iii) go to the store to buy supplies, (iv) run personal errands from grocery shopping to babysitting for the office managers, (v) restocking supplies and equipment, (vi) filing, storing, and gathering dental records; (vii) gathering and preparing appropriate tools, i.e. dental instruments, materials and medicines, for use by the dentist during each specific procedure; (viii) keeping the patient's oral operative area clear during dental procedures; (xi) washing instruments and maintaining the sterilization area;

---

[1] *See Vega v. CM & Assoc. Constr. Mgmt., LLC*, 2019 NY Slip Op 06459, ¶¶ 1-2, 175 A.D.3d 1144, 1145-46, 107 N.Y.S.3d 286, 287-88 (App. Div. 1st Dept.)

(xii) performing periodic cleaning and maintenance of dental equipment, instruments and treatment areas on an as needed basis.

72.     Further, manual workers generally include those employees, like Plaintiff MICHELLE ISAYEVA and the Biweekly Subclass members, whose labor is easily interchangeable with other able-bodied individuals.  As workers earning only slightly above minimum wage, the jobs market itself demonstrates the interchangeability of Plaintiff MICHELLE ISAYEVA and the Biweekly Subclass members.  NYLL §191 was passed to protect individuals in the types of low-wage, interchangeable jobs occupied by Plaintiff MICHELLE ISAYEVA and the Biweekly Subclass. Plaintiff MICHELLE ISAYEVA and the Biweekly Subclass hold positions with Defendants which are easily trained and may be easily replaced by other able-bodied workers. The ease of replacement and the low wages of Plaintiff MICHELLE ISAYEVA and the Biweekly Subclass make them dependent upon their weekly earnings.  This dependance and lack of job security places Plaintiff MICHELLE ISAYEVA and the Biweekly Subclass directly in the category of workers that NYLL intended to protect by ensuring they receive their wages on a weekly basis.

73.     That Plaintiff MICHELLE ISAYEVA and the Biweekly Subclass members were engaged in easily trained, easily replaceable positions is clearly demonstrated by their earnings. At the start of her employment, Plaintiff MICHELLE ISAYEVA earned $17.00 an hour, a figure lower than the average individual employed in New York State as a janitor, pest control worker, tree trimmer, lawn supervisor, or waiter.[2]  Employees in those positions in New York State earned over $19.00 an hour on average.  The jobs market itself demonstrates that Plaintiff MICHELLE ISAYEVA, who worked in New York City for $17.00 an hour, was not employed in a highly

---

[2] https://www.bls.gov/oes/current/oes370000.htm; https://www.bls.gov/oes/current/oes353031.htm#st.

skilled position.  Given the low wages of the Plaintiff MICHELLE ISAYEVA and the Biweekly

Subclass members and realities of the Class's daily work, Biweekly Subclass members must be

afforded the protections provided under NYLL §191.

74.    Due to Defendants' improper, untimely bi-weekly payments, Plaintiff MICHELLE

ISAYEVA would struggle to timely pay her own bills.  Plaintiff MICHELLE ISAYEVA would

be forced to pay rent and credit-card bills late as she waited for her owed compensation to become

available.  Biweekly Subclass members would similarly struggle to timely pay debts due to

Defendants' untimely compensation policies.

75.    Pursuant to Defendants' PTO policies, Plaintiff KAHOLY FERNANDEZ and PTO

Subclass members accrued PTO, which pursuant to Defendants' Company Handbook included

"Paid Sick Leave, PTO, and Paid Time Off[,]" over the course of their employment. *See* **Exhibit**

**E**, Defendants' Handbook.   Further, Defendants maintain the following policy regarding the

payment of earned PTO, "[u]pon termination of employment, all employees will be paid for their

accrued and unused PTO."  Defendants' policy goes on to state this payout is only invalidated if

the employee is terminated for cause, or "if employee voluntarily ends employment without

providing a minimum of a 2-week notice in writing."  Defendants terminated Plaintiffs without

cause.  Consequently,  KAHOLY FERNANDEZ was entitled to receive outstanding PTO

compensation upon their final check.  Defendants have a policy of refusing to provide all defined

PTO to employees upon their termination and PTO Subclass members are, like Plaintiff KAHOLY

FERNANDEZ, owed compensation for this breach of their employee agreement.

76.    Defendants knowingly and willfully failed to provide Plaintiffs and Class members

with wage notices at hiring.

77.    Defendants knowingly and willfully failed to provide Plaintiffs and Class members with proper wage statements as required under NYLL.  The wage statements Defendants did provide failed to accurately reflect the employees' hours worked, due to Defendants' policy of time shaving.

78.    In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that clearly entails a concrete harm to an interest identified by the New York State legislature.  Defendants' failure to provide such notices trivializes the importance of these notices in protecting Plaintiffs' interest in ensuring proper pay.  Despite Defendants' conduct, there is a reason why the New York legislature concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380.  Written notices and wage statements function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails significant harm to the employees' concrete interest in being paid properly and timely.

79.    Here, Defendants' failure goes beyond generating a risk of harm to Plaintiffs and Class members.  Defendants' conduct actually harmed Plaintiffs and Class members.  Defendants' failure to provide paystubs listing all hours and rates of pay, including overtime hours and overtime rates and the failure to provide a wage notice properly listing the rate and frequency Plaintiffs and Class members were entitled to get paid, deprived employees of the ability to contest Defendants' calculations, allowed Defendants to hide their wrong-doings from employees who rely on the accuracy of such statements, and necessitated the current litigation to vindicate Plaintiffs and Class members' rights.

80.     Had the wage statements Defendants provided to Plaintiffs and Class members listed the *actual* number of hours they worked (including off-the-clock hours), Plaintiffs and Class members would have learned of their underpayments sooner and faced no difficulty definitively proving the existence of a discrepancy between their work time and their compensation. The possession of such proof would have either (1) induced Defendants to pay Plaintiffs and Class members all unpaid wages, in the hopes of avoiding litigation or (2) provided Plaintiffs and Class members with a very substantial litigation advantage that they do not presently possess.

81.     This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law.  Moreover, Defendants' failure to provide wage notices allowed Defendants to hide the proper frequency of pay to employees.  Defendants' failure to provide a wage notice to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

82.     Due to Defendants' failure to provide legally mandated notices such as earning statements and wage notices, Defendants were able to hide their wrongdoing from employees, and continue to attempt to hide their wrongdoing necessitating the current litigation.  The failure to provide NYLL notices continues to result in delayed payment of all proper wages owed to Plaintiffs and Class members. Further, given the concrete advantages represented by a fully accurate wage statement, Plaintiffs and Class members were concretely injured when Defendants failed to provide this. This delayed payment caused Plaintiffs to struggle to timely pay bills.  Class members similarly struggle to timely pay debts due to Defendant's continued attempts to hide wrongdoing from employees.

*Plaintiff KAHOLY FERNANDEZ Individual Retaliation Claims:*

83.     Throughout Plaintiff KAHOLY FERNANDEZ's employment, Plaintiff KAHOLY FERNANDEZ was harassed and disrespected by her manager Tamara [LNU].  Tamara's harassing treatment of employees included berating employees, invading employees' personal space in a menacing manner, and threatening to report employees for invented issues,

84.     Approximately three (3) days before Plaintiff KAHOLY FERNANDEZ's employment was terminated, Plaintiff KAHOLY FERNANDEZ raised complaints regarding this treatment to (i) Human Resources, (ii) District Manager Mariana [LNU], and (iii) District Manager Angelia [LNU].

85.     When requesting assistance and intervention from Human Resources and her District Managers, including Mariana [LNU] and Angelia [LNU], regarding Tamara's harassing behavior, Plaintiff KAHOLY FERNANDEZ also raised the issues of underpayments and off-the-clock work to which all employees were subject.

86.     Approximately three (3) days after raising the issue of underpayments and off-the-clock work to Human Resources and her District Managers, Plaintiff KAHOLY FERNANDEZ's employment was terminated.

87.     Defendants unlawfully retaliated against Plaintiff KAHOLY FERNANDEZ for making lawful complaints regarding the underpayment of her and others' wages.

88.     Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs and Class members, in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

89. Plaintiffs reallege and reaver all the foregoing paragraphs of this class and collective action Complaint as if fully set forth herein.

90. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

91. At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of FLSA.

92. At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.

93. At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiffs and FLSA Collective Plaintiffs for all overtime hours worked at the statutory rate of time and one-half of the agreed upon base hourly rate.

94. Defendants failed to compensate Plaintiffs and FLSA Collective Plaintiffs for all hours worked due to time-shaving, including all hours worked in excess of forty (40) each week.

95. Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

96.     Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under FLSA.

97.     As a direct and proximate result of Defendants' willful disregard of FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

98.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime, plus an equal amount as liquidated damages.

99.     Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

**COUNT II**

**<u>VIOLATION OF THE NEW YORK LABOR LAW</u>**

100.    Plaintiffs realleges and reavers all the foregoing paragraphs of this class and collective action Complaint as if fully set forth herein.

101.    At all relevant times, Plaintiffs and Class members were employed by the Defendants within the meaning of the NYLL, §§2 and 651.

102.    Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay them overtime compensation at the rate of not less than one and one-half times the agreed upon regular rate of pay for each hour worked in excess of forty (40) hours each workweek.

103.    Defendants willfully violated the rights of Plaintiffs and Class members, by practicing a policy of time-shaving, resulting in under compensation of Plaintiffs and Class members in violation of NYLL.

104.   Defendants willfully violated Plaintiff MICHELLE ISAYEVA's and Biweekly Subclass members' rights by failing to pay them their wages within seven (7) days of the end of the week in which they were earned, in violation of NYLL § 191(1)(a)(i).

105.   Defendants violated Class members' rights by knowingly and willfully operating their business with a policy of not providing proper wage statements as required by NYLL. Defendants are required to provide accurate and proper information on wage statements issued to employees in accordance with NYLL.

106.   Defendants violated Class members' rights by knowingly and willfully operating their business with a policy of not providing all non-exempt employees with proper wage notices at date of hiring, as required under NYLL.

107.   In addition, Defendants are liable to PTO Subclass members for failing to pay them the cash value of their unused paid time up upon the cessation of their employment by Defendants pursuant to the policy found in Defendants' handbook, which clearly demonstrates the existence of an agreement that departing employees would receive the value of their paid time off. Defendants maintained a policy regarding PTO.  Defendants' handbook defined PTO to include all "Paid Sick Leave, PTO, and Paid Time Off[,]" for all employees. *See* **Exhibit E**, Defendants' Handbook.  Additionally, Defendants' handbook had the following written policy regarding the payment of earned PTO "Upon termination of employment, all employees will be paid for their accrued and unused PTO."  Defendants' policy states the payout is only invalidated if the employee is terminated for cause, or "if employee voluntarily ends employment without providing a minimum of a 2-week notice in writing."

108.   At all times, Defendants maintained a Human Resources policy mandating the payment of accrued PTO upon separation.  Defendants knowingly and willfully operated their

business with a policy of not providing payment of this accrued PTO in violation of the agreement they formed with PTO Subclass members when PTO Subclass members accepted employment with Defendants on the basis of Defendants' paid time off policies.

109.    This failure is actionable not only as a breach of contract but also under NYLL. NYLL 190(1) provides that "[t]he term 'wages' also includes benefits or wage supplements as defined in section one hundred ninety-eight-c of this article, except for the purposes of sections one hundred ninety-one and one hundred ninety-two of this article."

110.    NYLL 198-c(2) defines wages as including "vacation, separation or holiday pay."

111.    Accordingly, the unpaid PTO owed to PTO Subclass members qualifies as unpaid wages under NYLL § 190(1), and Plaintiffs and PTO Subclass members can seek the appropriate relief under NYLL § 663.

112.    While former employees are not always entitled to recover unused PTO as wages, they may do so when there is an agreement to this effect with the former employer:

> The determination as to whether a former employee is entitled to be paid for accrued vacation time is governed by the contract between the parties (see Gennes v Yellow Book of NY, Inc., 23 AD3d 520, 521-522, 806 N.Y.S.2d 646 [2005]; Matter of Glenville Gage Co. v Industrial Bd. of Appeals of State of NY, Dept. of Labor, 70 AD2d 283, 421 N.Y.S.2d 408 [1979]; Bucalo v King O'Rourke Buick Pontiac GMC, 33 Misc 3d 136[A], 939 N.Y.S.2d 739, 2011 NY Slip Op 52031[U] ([App Term, 9th & 10th Jud Dists 2011]). A former employee may also be entitled to recover if she can establish that she reasonably relied on express verbal assurances that she would be paid for unused vacation time (see Garrigan v Incorporated Vil. of Malverne, 12 AD3d 400, 401, 786 N.Y.S.2d 525 [2004]; Gendalia v Gioffre, 191 AD3d 476, 594 N.Y.S.2d 322 [1993]), or if she can establish that the defendant employer had a regular practice of paying its employees upon their termination for accumulated and unused vacation time and that the employee relied upon such practice in accepting or continuing her employment [***5] for the defendant (see Spencer v Christ Church Day Care Ctr., 280 AD2d 817, 817-818, 720 N.Y.S.2d 633 [2001]). The plaintiff bears the burden of proving an entitlement to receive payment in lieu of accrued vacation time (see Grisetti v Super Value, 189 Misc 2d 800, 801, 736 N.Y.S.2d 835 [App Term, 9th & 10th Jud Dists 2001]).

*Steinmetz v Attentive Care, Inc.*, 39 Misc. 3d 148(A), 148A (2d Dep't 2013)

113.    Due to the Defendants' NYLL violations, Plaintiffs and the relevant Class and Subclass members are entitled to recover from Defendants their unpaid wages, unpaid benefits and wage supplements, including overtime, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to NYLL.

## COUNT III

## <u>BREACH OF CONTRACT</u>

114.    Plaintiffs reallege and reaver all the foregoing paragraphs of this class and collective action Complaint as if fully set forth herein.

115.    Defendants maintained a policy regarding PTO.  This policy was maintained in Defendants' handbook, which defined PTO to include all "Paid Sick Leave, PTO, and Paid Time Off[,]" for all employees. *See* **Exhibit E**, Defendants' Handbook.

116.    Here, Defendants had the following written policy regarding the payment of earned PTO "Upon termination of employment, all employees will be paid for their accrued and unused PTO."  Further, Defendants' policy states the payout is only invalidated if the employee is terminated for cause, or "if employee voluntarily ends employment without providing a minimum of a 2-week notice in writing."  Defendants terminated Plaintiff without cause.  Consequently, Plaintiff was entitled to receive outstanding PTO compensation upon her final check.

117.    Defendants' failure to compensate employees PTO in accordance with their implied and written policies is a clear breach of contract creating a cognizable private cause of action accepted by New York courts.

118.    Defendants' written and/or implied paid time off policies required the disbursement of earned PTO to departing employees and/or was silent on the issue.

119.    Defendants failed to provide PTO to the PTO Subclass upon their departure from Defendants' employment

120.    Plaintiffs and PTO Subclass members have at all times performed all conditions, covenants, and promises required with their explicit and/or implicit employment terms and have never been in breach of the same.

121.    By failing to compensate the PTO of Plaintiffs and PTO Subclass members, Defendants failed to provide full earned compensation to Plaintiffs and PTO Subclass members in breach of the terms of their employment.

122.    The elements for a cause of action for breach of contract are: (1) formation of a contract between the parties; (2) performance by one party; (3) failure to perform by another party; and (4) resulting damage.

123.    At the time when Plaintiffs' employment was terminated, Plaintiffs had accrued over hours of uncompensated PTO.  Upon her termination, Defendants failed to provide all owed compensation, including her compensation from her earned PTO.  PTO Subclass members were similarly under compensated by Defendants.

124.    At no point of during the employment with Defendants, were Plaintiffs or PTO Subclass members explicitly informed that they would lose accrued PTO benefits when their employment with Defendants terminated.

125.    As a result of said breach, Plaintiffs and PTO Subclass members owed money damages for Defendants failure to provide all.

126.    Plaintiffs and PTO Subclass members bring their PTO claims under a breach of contract theory as an alternative to their states' respective wage statutes.  They do not seek to recover damages under both these statutes and breach of contract.

## COUNT IV

## <u>RETALIATION UNDER THE FAIR LABOR STANDARDS ACT</u>

127.    Plaintiff KAHOLY FERNANDEZ realleges and reavers by reference all allegations in all the preceding paragraphs as if fully set forth herein.

128.    Defendants retaliated against Plaintiff KAHOLY FERNANDEZ by terminating her employment after she complained to Defendants about not properly paying all wages owed.

129.    At all relevant times Plaintiff KAHOLY FERNANDEZ was an employee of Defendants within the meaning of FLSA, and was a person covered by and intended to benefit from the provisions of FLSA.

130.    Section 215(a)(3) of FLSA provides that it is a violation for any person to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or caused to be instituted any proceeding under or related to this Act."

131.    As alleged herein, Plaintiff KAHOLY FERNANDEZ's complaints to Defendants stem from their failure to pay all wages due. Defendants were previously sued as a result of such complaints from employees.

132.    In response to Plaintiff KAHOLY FERNANDEZ's complaints regarding Defendants' pay practices, Defendants fired Plaintiff KAHOLY FERNANDEZ in violation of Section 215(a)(3).

133.    This retaliatory termination was in willful disregard of the provisions of FLSA.

134.    Plaintiff KAHOLY FERNANDEZ suffered mental distress and her future employment was compromised as a result of Defendants' retaliatory actions.

135.    Due to Defendants' retaliation, Plaintiff KAHOLY FERNANDEZ is entitled to recover from Defendants compensatory damages (including back wages), punitive damages, costs, attorneys' fees, and all other penalties the Court deems appropriate.

136.    As a direct and proximate result of Defendants' willful disregard of FLSA, Plaintiff KAHOLY FERNANDEZ seeks judgment in an amount to be determined at trial for the above mentioned damages as well as an award of liquidated damages, interest, attorney's fees, and costs, as provided for under FLSA.

**COUNT V**

**<u>RETALIATION UNDER THE NEW YORK LABOR LAW</u>**

137.    Plaintiff KAHOLY FERNANDEZ realleges and reavers by reference all allegations in all the preceding paragraphs as if fully set forth herein.

138.    At all relevant times, Plaintiff KAHOLY FERNANDEZ was an employee of Defendants within the meaning of NYLL, and was a person covered by and intended to benefit from the provisions of NYLL.

139.    Defendants willfully violated NYLL by retaliating against Plaintiff KAHOLY FERNANDEZ by firing her shortly after she raised complaints regarding her wages.

140.    Defendants' actions constitute a violation of Sections 215 of NYLL. In relevant part, NYLL § 215(1)(a) states:

> No employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the employer has engaged in conduct that the employee, <u>reasonably and in good faith, believes violates any provision of this chapter</u>, or any order issued by the commissioner. . . . (emphasis added).

141.    As alleged herein, Plaintiff KAHOLY FERNANDEZ complained to Defendants and her co-workers about Defendants' unlawful compensation practices.

142.    In response to such complaints, Defendants fired Plaintiff KAHOLY FERNANDEZ in violation of Section 215(a).

143.    This retaliatory termination was in willful disregard of the provisions of NYLL.

144.    Plaintiff KAHOLY FERNANDEZ suffered mental distress and his employment was compromised as a result of Defendants' retaliatory actions.

145.    Due to Defendants' retaliation under the NYLL, Plaintiff KAHOLY FERNANDEZ is entitled to recover from Defendants compensatory damages (including back wages), punitive damages, costs, attorneys' fees, and all other penalties the Court deems appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully requests that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and New York State wage laws;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.    An award of unpaid regular and overtime compensation resulting from Defendants' policy of time-shaving, due under FLSA and New York State wage laws;

d. An award of all applicable liquidated or punitive damages under the FLSA and the state wage laws of New York;

e. An award of statutory penalties to Class members as a result of Defendants failure to comply with NYLL wage notice and wage statement requirements;

f. An award for compensation proportionate to the paid sick leave Plaintiff and PTO Subclass members accrued during her employment with Defendants;

g. An award of liquidated damages equal to the late payment of wages and accrued interest on the delayed payments for members of the Biweekly Subclass.

h. An award of damages, costs, and attorneys' fees due to Defendants' retaliation of Plaintiff KAHOLY FERNANDEZ under the FLSA and NYLL;

i. An award of pre-judgment and post-judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

j. Designation of Plaintiffs as a Representative of the FLSA Collective Plaintiffs;

k. Designation of this action as a Class Action pursuant to FRCP 23;

l. Designation of both or either Plaintiffs as Representatives of the Class and any Subclasses; and

m. Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.


Dated: March 30, 2023

Respectfully submitted,
By: ___*/s/ C.K. Lee*_____
        C.K. Lee, Esq.

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs and the Class*