UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHELLE ISAYEVA and KAHOLY FERNANDEZ, *on behalf of themselves, FLSA Collective Plaintiff and the Class*,

Plaintiffs,

-v.-

DIAMOND BRACES, *an unincorporated entity, association, or affiliation*, ORTHOCLUB, P.C. *d/b/a* DIAMOND BRACES, JOHN DOE CORPORATIONS 1-100 *d/b/a* DIAMOND BRACES, and OLEG DRUT,

Defendants.

22 Civ. 4575 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

Plaintiffs Michelle Isayeva and Kaholy Fernandez, on behalf of themselves and other hourly employees of the orthodontic practice Diamond Braces, bring this class and collective action against Defendants Diamond Braces, Orthoclub P.C., *d/b/a* Diamond Braces, Oleg Drut, and John Doe Corporations 1-100 *d/b/a* Diamond Braces (together, "Diamond Braces" or "Defendants"), asserting wage-and-hour claims under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201-219, and the New York Labor Law (the "NYLL"), N.Y. Lab. Law §§ 190-199-a, 650-665.  In particular, Plaintiffs allege that Defendants violated the overtime compensation provisions of the FLSA and the NYLL, as well as the NYLL's provisions regarding timely payment of wages, wage notices, and wage statements.  Fernandez separately alleges that Defendants terminated her in retaliation for raising complaints regarding Defendants' compensation practices, also in violation of the FLSA and the

NYLL, and that Defendants violated the NYLL by failing to pay her for her unused paid time off ("PTO") at the time of the termination of her employment.

In the motion to dismiss now before the Court, Defendants have launched a volley of arguments that both attack the sufficiency of the various FLSA and NYLL claims in the Second Amended Complaint (the "SAC") and more broadly call into question the Court's jurisdiction to hear Plaintiffs' various claims brought under the NYLL.  For the reasons set forth below, the Court denies Defendants' motion to dismiss, with one limited exception.

## BACKGROUND[1]

### A.   Factual Background

Diamond Braces is an orthodontic practice that operates more than 40 offices throughout the New York metropolitan area.  (SAC ¶¶ 9-11).  From on or about March 17, 2022, until August 8, 2022, Fernandez was employed as a Treatment Coordinator, working at various Diamond Braces locations and compensated on an hourly basis.  (*Id.* ¶¶ 54-57) .  Likewise, from on or about January 10, 2021, until in or around August 2021, Isayeva was employed as a Dental Assistant, also working at various Diamond Braces locations and compensated on an hourly basis.  (*Id.* ¶¶ 41-44).  Both Fernandez and Isayeva were paid on a bi-weekly schedule at a rate of $17 an hour.  (*Id.* ¶¶ 44, 57).  In

---

[1]     This Opinion draws its facts primarily from Plaintiffs' Second Amended Complaint ("SAC" (Dkt. #45)), the well-pleaded allegations of which are taken as true for purposes of this motion.  *See Morrison* v. *Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 679 (2009).

For ease of reference, the Court refers to Defendants' memorandum of law in support of their motion to dismiss as "Def. Br." (Dkt. #51); to Plaintiffs' response in opposition as "Pl. Opp." (Dkt. #58); and to Defendants' reply brief as "Def. Reply" (Dkt. #71).

her last month of employment, Fernandez was paid at a rate of $20 an hour. (*Id.* ¶ 57).

Plaintiffs allege that Defendants' compensation policies for hourly workers violated federal and state wage-and-hour laws in several ways.  *First*, Plaintiffs claim that Defendants engaged in "time-shaving" with respect to certain breaks.  Specifically, Plaintiffs allege that employees were required to "clock out" for lunch breaks but also required to eat at their workstations and perform work during those periods, thereby not affording them bona fide meal breaks.  (SAC ¶¶ 47-48, 58-59).  Plaintiffs further contend that Defendants maintained a similar practice with respect to short rest breaks, providing employees with a weekly break lasting less than twenty minutes, but requiring employees to clock out for such breaks, and therefore not compensating them for that time.  (*Id.* ¶¶ 49-50, 60-61).  Because of these time-shaving practices, Fernandez and Isayeva maintain that they were not adequately compensated for their time, in the amount of roughly 3.25 hours per week for Fernandez and 2.75 hours per week for Isayeva.  (*Id.* ¶¶ 51, 62).

*Second*, Plaintiffs allege that Defendants failed to provide accurate wage notices and wage statements, as required by the NYLL, and that these deficiencies obfuscated Defendants' impermissible time-shaving and untimely payment practices, allowing both problems to continue, to Plaintiffs' financial detriment.  (SAC ¶¶ 52, 63).  Isayeva also maintains that she was a "manual worker," within the meaning of the NYLL, and should have been compensated on a weekly basis as required by the statute.  (*Id.* ¶¶ 70-74).

Finally, Fernandez alleges that she was terminated three days after raising these "issues of underpayments and off-the-clock work to which all employees were subject," in a complaint made to Defendants' Human Resources Department and two other District Managers arising out of her alleged mistreatment by her manager.  (SAC ¶ 85; *see id.* ¶¶ 83-88).

## B.   Procedural History

The path leading to the instant motion has been circuitous.  The action was initiated on June 2, 2022, with the filing of a complaint asserting FLSA and NYLL wage-and-hour claims against Defendants by then-Plaintiff Sama Aliyeva, a Dental Assistant employed by Defendants from on or about February 15, 2021, through in or about January 2022, on behalf of herself and a putative collective and class of hourly workers employed by Defendants. (Dkt. #1).  After receiving a brief extension, Defendants answered the Complaint on August 10, 2022.  (Dkt. #13, 14).  On September 22, 2022, the parties requested a stay of the action, including an adjournment of the initial pretrial conference, pending the parties' completion of class-wide mediation with a private, third-party mediator, which request the Court granted the following day.  (Dkt. #16, 17).

On December 30, 2022, the parties submitted a joint letter reporting that while mediation had been held, Defendants indicated that they would not be proceeding with a settlement.  (Dkt. #20).  Thereafter, on January 13, 2023, the parties filed a joint status update, reflecting Aliyeva's intent to amend the complaint to include claims for improper deductions of breaks lasting twenty

minutes or less, and Defendants' intention to file a motion to dismiss the amended complaint on various grounds. (Dkt. #22). In light of Defendants' contemplated motion practice, the Court scheduled an initial pretrial conference, which was duly held on February 3, 2023, and at which conference the parties informed the Court that they had reached a class settlement. (Dkt. #25; February 3, 2023 Minute Entry).

Several events occurred following that conference, giving rise to the current posture of the case. On February 10, 2023, Aliyeva filed her First Amended Complaint (the "FAC"), and the parties submitted a joint proposed briefing schedule for Aliyeva's anticipated motion to enforce the parties' class settlement agreement, which schedule the Court endorsed accordingly. (Dkt. #28, 29). On February 28, 2023, Fernandez and Isayeva (*i.e.*, the current Plaintiffs in the case) entered the action by filing consents to become party plaintiffs under the FLSA. (Dkt. #30, 31). That same day, Aliyeva filed a notice of acceptance of a Rule 68 offer of judgment, indicating her intent to exit the action. (Dkt. #32). To provide further explanation, Plaintiffs' counsel — who represented Aliyeva, Fernandez, and Isayeva — filed an additional letter indicating that Plaintiffs were seeking leave to amend the FAC further to reflect Fernandez's and Isayeva's opt-in status, and then to enforce the settlement agreement between the parties as negotiated at the mediation. (Dkt. #34).

Given these developments, the Court ordered the parties to provide a joint letter on March 3, 2023, regarding the status of the motion to enforce the class settlement and Defendants' views on Plaintiffs' request for leave to

amend. (Dkt. #35). In lieu of this joint submission, however, Defendants filed a separate letter maintaining that the case had become moot on February 28, 2023, when Aliyeva accepted Defendants' Rule 68 offer of judgment, such that Plaintiffs' notices of consent to sue under the FLSA must be vacated. (Dkt. #38). In that letter, Defendants alleged that Plaintiffs' counsel had engaged in deceitful conduct by inducing Defendants to resolve the case under false pretenses. (*Id.*). In particular, Defendants maintained that Plaintiffs' counsel entered into a verbal agreement to resolve the matter with respect to Aliyeva, without indicating to Defendants that Plaintiffs' counsel had separate notices of consent to sue under the FLSA for Fernandez and Isayeva that "[counsel] kept in his back pocket … in an attempt to keep this case alive." (*Id.*). Defendants sought not only disqualification of Plaintiffs' counsel, but also an evidentiary hearing to determine if Aliyeva, Fernandez, and Isayeva "were complicit in this deceitful conduct," and vacatur of Aliyeva's Rule 68 offer. (*Id.*).

Per the Court's order, Plaintiffs' counsel filed a response letter on March 8, 2023. (Dkt. #40). In that letter, Plaintiffs' counsel vigorously disputed Defendants' version of events, both asserting that Defendants' letter rested on multiple misstatements of fact and accusing defense counsel of engaging misconduct of its own. (*Id.*). Plaintiffs' counsel maintained that Defendants were, in fact, aware of the possibility of additional plaintiffs since on or about August 26, 2022, and therefore could not claim unfair surprise; counsel further asserted that the action was not moot, as Plaintiffs filed their notices of consent to sue (*id.* (citing Dkt. #30, 31)), *before* Aliyeva's acceptance

of her Rule 68 offer (*id.* (citing Dkt. #32, 33)), notwithstanding the fact that both sets of documents were filed on the same day.

By lengthy endorsement on March 9, 2023, the Court found that the case was not moot, given the prior identification of Plaintiffs as potential opt-in parties to the case.  (Dkt. #41 at 6 ("It is well accepted in the FLSA context that a case is not mooted simply because a named plaintiff accepts a Rule 68 offer where other plaintiffs have opted in to the FLSA collective action." (collecting cases))).  This was true, even considering the fact that the opt-in notices and Rule 68 notices were filed on the same day.  (*Id.* (citing *Velasquez* v. *Digit. Page, Inc.*, 842 F. Supp. 2d 486, 488 (E.D.N.Y. 2012) (finding that FLSA action was not moot, where the opt-in plaintiff filed his consent to join the collective action on the same day that defendants made their Rule 68 offer purportedly mooting the case)).  For the same reasons, the Court denied Defendants' other requests for relief, including disqualification of Plaintiffs' counsel, the holding of an evidentiary hearing, and the vacatur of Aliyeva's Rule 68 offer.  (*Id.*).  The Court further found that, upon consideration of the parties' letters and submissions thereto, "nothing in Defendants' letter suggests that Plaintiffs' counsel in fact intentionally deceived Defendants to resolve this case under false pretenses by, for example, representing that the Rule 68 offer would vitiate other potential plaintiffs' claims."  (*Id.*).  Accordingly, the Court ordered the parties to jointly file a follow-up letter, stating their position on the filing of an amended complaint, as well as other next steps in the case.  (*Id.*).

The parties remained at loggerheads in their joint submission, filed on
March 15, 2023, with Plaintiffs seeking to file their proposed Second Amended
Complaint (the "SAC") and proceed to discovery, and Defendants opposing the
filing of the putative amended complaint and alternatively seeking its
dismissal. (Dkt. #42). The next day, the Court entered judgment in favor of
Aliyeva, pursuant to Defendants' Rule 68 offer, and also set a conference to
resolve the parties' considerable disagreements and to determine an effective
sequence for motion practice and discovery. (Dkt. #43, 44). The parties
attended that conference on March 23, 2023, at which the Court granted
Plaintiffs leave to file the SAC and solicited a briefing schedule for Defendants'
motion to dismiss. (Dkt. #43; March 23, 2023 Minute Entry). Plaintiffs then
filed the SAC, the operative pleading in this matter, on March 30, 2023, and
Defendants filed their motion to dismiss, pursuant to the parties' joint
schedule, on May 12, 2023. (Dkt. #45, 50-53 (Motion to Dismiss and
accompanying papers)). In light of the potentially dispositive motion, the Court
stayed discovery at Defendants' request on May 12, 2023. (Dkt. #54, 55).

After receiving a brief extension, on June 16, 2023, Plaintiffs filed their
response in opposition to Defendants' motion to dismiss. (Dkt. #58). On
June 29, 2023, Plaintiffs filed a motion for conditional collective certification,
which motion the Court denied without prejudice on June 30, 2023, given the
pending motion to dismiss. (Dkt. #59-65). In a similar vein, Plaintiffs filed,
and the Court denied as premature, a letter requesting equitable tolling of
potential opt-in plaintiffs' statutes of limitation. (Dkt. #69, 70).

Defendants filed their reply in support of dismissal on July 7, 2023, at which point briefing on the motion to dismiss was complete. (Dkt. #71, 72). Thereafter, on August 29 and 31, 2023, respectively, Plaintiffs and Defendants filed dueling notices of supplemental authority. (Dkt. #75, 76).[2]

## DISCUSSION

Defendants' arguments in favor of dismissal implicate both jurisdictional and substantive considerations. Accordingly, the Court's analysis proceeds as follows: First, the Court begins by addressing Defendants' arguments with respect to Fernandez's overtime and retaliation claims under the FLSA, as well as her analogous claims under the NYLL.[3] Next, the Court considers whether to retain supplemental jurisdiction over the standalone NYLL claims brought by both Fernandez and Isayeva. Finally, the Court considers Defendants' arguments as to the sufficiency of the standalone NYLL claims, in light of its decision to retain supplemental jurisdiction over those claims.

---

[2]    On January 18, 2024, Defendants filed an additional request to file a new motion to dismiss Plaintiffs' NYLL § 191 claim on grounds that new state appellate precedent foreclosed any private right of action under that provision of the statute, which request Plaintiffs strongly opposed in a letter filed on January 23, 2024. (Dkt. #77, 78). Defendants' request is presumptively barred by Rule 12(g)(2), which provides that, under limited circumstances, "a party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). Defendants concede that the issue "was not raised in Defendants' pending Motion to Dismiss" (Dkt. #77), and do not address whether their request falls within the limited exceptions to Rule 12(g)(2) that are "provided in Rule 12(h)(2) or (3)," thereby falling short of their burden to demonstrate their entitlement to brief the issue. Fed. R. Civ. P. 12(g)(2).

[3]    As discussed below, Isayeva concedes her FLSA claims, and therefore consideration of her NYLL claims is appropriate only if and after the Court confirms its subject matter jurisdiction over the action and its decision to exercise supplemental jurisdiction over her claims.

**A.      Applicable Law**

**1.      Motions to Dismiss Under Rule 12(b)(6)**

Under Rule 12(b)(6), a defendant may seek dismissal of a plaintiff's

action for "failure to state a claim upon which relief can be granted."  Fed. R.

Civ. P. 12(b)(6).  When considering a motion to dismiss under Rule 12(b)(6), a

court must "draw all reasonable inferences in Plaintiff[s'] favor, 'assume all

well-pleaded factual allegations to be true, and determine whether they

plausibly give rise to an entitlement to relief.'"  *Faber* v. *Metro. Life Ins. Co.*, 648

F.3d 98, 104 (2d Cir. 2011) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d

82, 88 (2d Cir. 2009)); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).

A plaintiff is entitled to relief if the complaint contains "enough facts to state a

claim to relief that is plausible on its face."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S.

544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir.

2007) ("While *Twombly* does not require heightened fact pleading of specifics, it

does require enough facts to 'nudge [plaintiff's] claims across the line from

conceivable to plausible.'" (quoting *Twombly*, 550 U.S. at 570)).  Moreover,

"[w]here a complaint pleads facts that are 'merely consistent with' a defendant's

liability, it 'stops short of the line between possibility and plausibility of

entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at

557).

Pertinent to the instant case, the Second Circuit, in *Herrera* v. *Comme*

*des Garcons, Ltd.*, recently "addressed the standard for pleading a plausible

FLSA overtime claim," as previously clarified by "three decisions issued in

10

2013 — *Lundy*, *Nakahata*, and *Dejesus* — … [each] affirm[ing] the dismissal of a complaint for failure to state a claim under the FLSA." 84 F.4th 110, 114 (2d Cir. 2023) (citing *Lundy* v. *Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013); *Nakahata* v. *N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013); *Dejesus* v. *HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013)). As noted in *Herrera*, "[t]he straightforward lesson [courts] draw from these three [prior] decisions is that plaintiffs must plead FLSA overtime claims with 'specificity.'" *Id.* at 115 (quoting *Nakahata*, 723 F.3d at 200). Still, *Herrera* cautioned courts against "misappl[ying] the standard established in *Nakahata*, *Lundy*[,] and *Dejesus*[,] and impos[ing] an unduly high pleading bar." *Id.* And to that end, *Herrera* clarified that "[s]o long as the complaint adequately alleges that [plaintiffs] each worked more than forty hours each week they were employed … that is enough to state a claim under the FLSA and defeat a motion to dismiss." *Id.* at 112.

When making this evaluation pursuant to "a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F.* v. *Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also United States ex rel. Foreman* v. *AECOM*, 19 F.4th 85, 106-07 (2d Cir. 2021) (describing materials extraneous to the pleadings that courts may consider on a motion to dismiss). While Rule 12(b)(6) permits the district court, under certain circumstances, to convert its

11

consideration of a Rule 12(b)(6) motion to a motion for summary judgment

under Rule 56 and consider evidence outside the scope of the pleadings, "[a]ll

parties must be given a reasonable opportunity to present all the material that

is pertinent to the motion." *Sahu* v. *Union Carbide Corp.*, 548 F.3d 59, 67 (2d

Cir. 2008) (quoting Fed. R. Civ. P. 12(d)).  "Ordinarily, this means that a district

court 'must give notice to the parties *before* converting a motion to dismiss

pursuant to Rule 12(b)(6) to one for summary judgment and considering

matters outside the pleading.'"  *Id.* (quoting *Gurary* v. *Winehouse*, 190 F.3d 37,

43 (2d Cir. 1999)).

### 2.      Compensation Requirements Under the FLSA and the NYLL

"The FLSA and the NYLL both 'guarantee[ ] compensation for all work ...

engaged in by [covered] employees.'"  *Salinas* v. *Starjem Rest. Corp.*, 123 F.

Supp. 3d 442, 472 (S.D.N.Y. 2015) (quoting *Kuebel* v. *Black & Decker Inc.*, 643

F.3d 352, 359 (2d Cir. 2011)).  "To establish liability on a claim for

underpayment of wages, 'a plaintiff must prove that [she] performed work for

which [she] was not properly compensated, and that the employer had actual

or constructive knowledge of that work.'"  *Id.* (quoting *Kuebel*, 643 F.3d at 361).

Where a plaintiff brings claims under both the FLSA and the NYLL, she "may

not receive a 'double recovery' of back wages[.]"  *Hernandez* v. *Jrpac Inc.*, No. 14

Civ. 4176 (PAE), 2016 WL 3248493, at *31 (S.D.N.Y. June 9, 2016) (quoting

*Gen. Tel. Co. of the Nw., Inc.* v. *EEOC*, 446 U.S. 318, 333 (1980)); *cf. Rana* v.

*Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (per curiam) ("We therefore interpret

the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct.").

Both the FLSA and the NYLL also require employers to pay overtime. The requirement under both statutes is the same:  Once an employee works 40 hours in a week, she must be paid "one and one-half times [her] regular rate" for all excess hours.  *Dejesus*, 726 F.3d at 88 (quoting 29 U.S.C. § 207(a)(1)) (FLSA); *see also Salustio* v. *106 Columbia Deli Corp.*, 264 F. Supp. 3d 540, 553 (S.D.N.Y. 2017) (citing N.Y. Comp. Codes R. & Regs. tit. 12 §§ 142-2.2, 146-1.4) (NYLL).

While the FLSA does not provide a cause of action for recovery of unpaid wages by employees who have worked fewer than 40 hours in a week, the NYLL does.  In particular, the NYLL permits "an employee [who] has not worked 40 hours in a given week" to bring a "gap-time claim ... seek[ing] recovery of unpaid time worked."  *See Nakahata*, 723 F.3d at 201-02 (stating that the "FLSA does not provide a cause of action for unpaid gap time," but that "*Lundy* acknowledged, without deciding, that a gap-time claim would be consistent with the language of NYLL § 663(1)").

### 3.     Retaliation Claims Under the FLSA and the NYLL

Pursuant to Section 215(a)(3) of the FLSA, it is unlawful for any employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter."  29 U.S.C. § 215(a)(3); *see also Greathouse* v. *JHS Sec. Inc.*, 784 F.3d 105, 115 (2d Cir.

13

2015).  As with the FLSA, "the NYLL prohibits retaliation against employees who make certain employment-related complaints." *Perdomo* v. *113-117 Realty, LLC*, No. 18 Civ. 9860 (VB), 2019 WL 6998621, at *4 (S.D.N.Y. Dec. 20, 2019) (alteration adopted and internal quotation marks omitted) (citing *Flick* v. *Am. Fin. Res., Inc.*, 907 F. Supp. 2d 274, 279 (E.D.N.Y. 2012)).  In particular, Section 215(a)(1) of the NYLL prohibits retaliation against any employee who "has made a complaint to his or her employer, or to ... any other person, that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision" of the NYLL.  NYLL § 215(1)(a).

Given the "significant[] overlap" in "[t]he pleading requirements for retaliation claims under [] the FLSA and NYLL," courts analyze both statutes under the same standards for the purposes of a motion to dismiss.  *Rosenbaum* v. *Meir*, 658 F. Supp. 3d 140, 149-50 (E.D.N.Y. 2023) (citation omitted).  In particular, courts analyze both FLSA and NYLL retaliation claims "under the three-step burden-shifting analysis established in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802-03 (1973)." *Velazquez* v. *Yoh Servs., LLC*, 803 F. App'x 515, 517 (2d Cir. 2020) (summary order).  "Hence, the plaintiff must first establish a *prima facie* case of retaliation by showing: '[i] participation in protected activity known to the defendant ... ; [ii] an employment action disadvantaging the plaintiff; and [iii] a causal connection between the protected activity and the adverse employment action.'" *Id.* (quoting *Mullins* v. *City of New York*, 626 F.3d 47, 53 (2d Cir. 2010)).  At the pleading stage, however, "a temporary presumption of discriminatory motivation is created under the first

prong of the *McDonnell Douglas* analysis, [and] a plaintiff need only give plausible support to a minimal inference of discriminatory motivation" to defeat a motion to dismiss.  *Vega* v. *Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (internal quotation marks omitted).

## B.   Fernandez Has Adequately Alleged Unpaid Overtime Claims Under the FLSA and the NYLL

Defendants first maintain that Plaintiffs' wage-and-hour claims predicated on allegations of time-shaving in connection with Plaintiffs' encumbered lunch breaks and uncompensated short rest breaks must be dismissed because Plaintiffs have failed to plead their claims with sufficient specificity.  (Def. Br. 6 (arguing that Plaintiffs' claims rest on "conclusory and threadbare allegations" that must be dismissed)).

As a threshold matter, Isayeva concedes her claims under the FLSA, recognizing that Defendants' records demonstrate that she did not work over 40 hours in a week.  (Pl. Opp. 8-9).  *Accord Nakahata*, 723 F.3d at 201 ("[T]he FLSA does not provide a cause of action for unpaid gap time. ... [T]herefore, the FLSA is unavailing where ... hours do not rise above the overtime threshold."). Still, Isayeva maintains that she has viable gap-time claims under the NYLL arising out of the same time-shaving policies, the sufficiency of which claims the Court addresses after determining, *see infra*, that it will retain supplemental jurisdiction over Plaintiffs' NYLL claims.  (Pl. Opp. 8-9).

As to Fernandez, for the reasons set forth below, the Court finds that Fernandez has adequately alleged claims under the FLSA and the NYLL, the former giving the Court subject matter jurisdiction to hear this case.

### 1. Fernandez's Time-Shaving Claims Are Alleged with Sufficient Specificity

In a case asserting a violation of the FLSA's overtime provisions, "a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy*, 711 F.3d at 114.[4]  Turning to the facts, Fernandez has specifically alleged that she worked a minimum of 40 hours in a given workweek, as well as 11 hours of overtime, 3.25 hours of which Fernandez maintains were uncompensated by Defendants. (*See* SAC ¶¶ 56-62).  Next, Fernandez has plausibly identified the practice implemented by Defendants that was largely responsible for that 3.25-hour overage:  Fernandez has specifically alleged that "[d]espite being required to clock out for lunch, [she] would be required by her managers … to engage in work during her break, depriving her of the time to eat lunch during [her] supposed lunch break." (*Id.* ¶ 58).  Fernandez further represents that she "was forced to eat at her stations daily and work through lunch despite Defendants[] requiring employees to clock-out." (*Id.*).  Finally, Fernandez claims that she "would be permitted to clock out for a short, less than 20-minute rest break," but was not compensated for that time.  (*Id.* ¶ 60).  "Accepting [these] allegation[s] as true and drawing all reasonable inferences in favor of [Fernandez]," the Court finds that Fernandez has plausibly alleged that she

---

[4]     A plaintiff must also establish that "[she] was an employee who was eligible for overtime (*i.e.*, not exempt from the Act's overtime pay requirements)," and that the employer is covered by the FLSA.  *Solis* v. *SCA Rest. Corp.*, 938 F. Supp. 2d 380, 394 (E.D.N.Y. 2013) (alteration adopted).  Here, Fernandez has alleged, and Defendants do not dispute, that she was an overtime-eligible employee, and that Defendants are covered by the Act, thereby satisfying both requirements.  (*See* SAC ¶¶ 9-18, 89-94; *see generally* Def. Br.).

worked uncompensated time in excess of 40 hours each week, given her recitation of both the specific time periods worked and the specific practices responsible for those overages. *Herrera*, 84 F.4th at 116; *see also Brain* v. *The Execu-Search Grp., LLC*, No. 22 Civ. 8219 (MKV), 2024 WL 838085, at *4 (S.D.N.Y. Feb. 28, 2024) ("Although a plaintiff is not required to estimate [her] overtime to state an FLSA claim, the Court finds that [Plaintiff's] 'approximation of overtime hours worked … help[s] draw [her] claim closer to plausibility.'" (quoting *Nakahata*, 723 F.3d at 201 n.10 (internal quotation marks omitted))).  Given these allegations, denial of Defendants' motion to dismiss is appropriate, as under *Herrera*, "[n]othing more is required" to state a claim under the FLSA.  84 F.4th at 115.

Indeed, *Herrera* expressly considered the question of specificity required to allege meal-time violations, and cautioned courts against taking "too crabbed a reading of the [c]omplaint."  84 F.4th at 116.  In doing so, *Herrera* identified the standard, set by 29 C.F.R. § 785.19(a), that "[l]unch breaks count towards the forty-hour total unless employees … are 'completely relieved from duty,'" and expressly held "[t]hat standard is not met if the employee is required to be on-call to handle whatever work arises during the lunch break." *Id.*  Fernandez's allegations, taken as true and evaluated in her favor, would establish that she was, at a minimum, required to be on-call during her lunch break and therefore was not completely relieved of duty.  (SAC ¶ 58).

While Defendants are correct that Fernandez has not delineated the specific tasks that she was required to perform during her lunch hour (Def.

Br. 6), such considerations are immaterial at the pleading stage, as "[t]he regulation … does not require employees to quantify how many minutes were spent during any given lunch break actually attending to [work] in order to demonstrate that their lunch break was not a 'bona fide meal period.'" *Herrera*, 84 F.4th at 116 (alteration adopted) (quoting 29 C.F.R. § 785.19(a)).  It is sufficient that Fernandez has alleged that she was required to perform work during breaks, alongside specific allegations indicating that she was not compensated for 3.25 hours each week; whether or not her allegations are borne out by the facts is a question that must be answered in discovery.  (SAC ¶¶ 58, 62).[5]  Accordingly, the Court finds that Fernandez has adequately alleged that she could not take free and clear meal breaks.

A similar conclusion can be drawn with respect to Fernandez's uncompensated short rest breaks.  On this subject, Defendants maintain that Fernandez's allegations fail as a matter of law, because Fernandez "[does] not allege [that she] performed any work during such breaks," and therefore has not demonstrated that those breaks should be counted as compensable time. (Def. Br. 8).  In so arguing, Defendants fail to contend meaningfully with the established principle that "[r]est periods of short duration, running from 5

---

[5]    For this reason, the *Gregory* case on which Defendants rely is inapposite.  (*See* Def. Br. 6 (citing *Gregory* v. *Stewart's Shops Corp.*, No. 14 Civ. 33 (TJM), 2015 WL 893058, at *5 (N.D.N.Y. Mar. 2, 2015))).  In that case, the court expressly distinguished allegations of time-shaving in connection with sporadic events taking place during breaks, which allegations are insufficient to state a claim under the FLSA, from those allegations "of off-the-books work on a regular basis and that [were] tied to specific, identifiable events," such as Fernandez's lunch break, that are "sufficient 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* at *4 (quoting *Iqbal*, 556 U.S. at 678).

18

minutes to about 20 minutes … are customarily paid for as working time,"
regardless of the activity an employee was actually performing during that
period.  *Gamero* v. *Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 499 (S.D.N.Y.
2017) (quoting 29 C.F.R. § 785.18 (advising that such short rest breaks "must
be counted as hours worked")).  That is, Defendants conflate the concept of
compensable short rest breaks with non-compensable bona fide meal periods,
suggesting that Fernandez's "failure to allege enough facts other than the
length of the Short Breaks" leaves open the possibility that such short breaks
could be non-compensable meal periods.  (Def. Reply 2 n.1; *see also* Def. Br. 7-
8).  Defendants are technically correct that some short rest periods may be
considered non-compensable bona fide meal periods, given the recognition that
bona fide meal periods lasting for "[a] shorter period [than 30 minutes] may be
long enough under special conditions."  29 C.F.R. § 785.19(a).  Here, however,
Fernandez's allegations are insufficient to support a finding that her short rest
breaks were actually bona fide meal periods, and therefore dismissal on that
basis is inappropriate.

Indeed, as other courts have noted, it is the short length of the break
that is significant, as these periods of time reflect the general understanding
that "breaks of twenty minutes or less are insufficient to allow for anything
other than the kind of activity (or inactivity) that, by definition, primarily
benefits the employer."  *Sec'y U.S. Dep't of Lab.* v. *Am. Future Sys., Inc.*, 873
F.3d 420, 429 (3d Cir. 2017).  Accordingly, the Court finds that Fernandez's
allegation as to the length of her short rest break, coupled with her allegation

that she regularly worked 40 hours per week in addition to that short break, survives a motion to dismiss.  (SAC ¶¶ 60-62).

*Stewart*, the exemplar case cited by Defendants for this point, does not counsel a different outcome.  (Def. Br. 7-8 (citing *Stewart* v. *Hudson Hall LLC*, No. 20 Civ. 885 (PGG) (SLC), 2021 U.S. Dist. LEXIS 73173 (S.D.N.Y. Apr. 14, 2021))).  In that case, the plaintiff sought to amend his complaint, including by adding the "single conclusory allegation that, '[a]t all times relevant to this action, Defendants had a policy to not compensate [p]laintiff … for any and all breaks lasting 20 minutes or less.'"  *Stewart*, 2021 U.S. Dist. LEXIS 73173, at *22.  The court in *Stewart* found first that the plaintiff had failed to establish entitlement to amend under both Federal Rules of Civil Procedure 16(b) and 15, and only reached the question of futility as to the short rest break claim as an alternative ground for dismissal, at the tail end of its opinion.  *Id.* at *20 ("Having found that the Motion fails to satisfy the requirements of Rule 15 [and Rule 16(b)] … the Court need not reach the additional question of whether those amendments would be futile.").  And in evaluating futility, the court relied on *Lundy*, finding plaintiff's allegation to be too speculative, given the possibility that such short rest breaks could also qualify as non-compensable meal breaks.  *Stewart*, 2021 U.S. Dist. LEXIS 73173, at *22 (citing *Lundy*, 711 F.3d at 114).  As clarified by *Herrera*, however, such claims pass muster in this case, as Fernandez's allegations, construed in her favor, implicate only short rest breaks that do not constitute bona fide meal periods, especially given the lack of any indication that Fernandez was eating on her break.  *See Herrera*, 84

F.4th at 115 (cautioning district courts from "misapply[ing] the standard established in *Nakahata*, *Lundy*[,] and *Dejesus*[,] and impos[ing] an unduly high pleading bar").

Nor is the Court persuaded by Defendants' suggestion that even if Fernandez had viable short rest break claims under the FLSA, such short rest breaks are not cognizable under the NYLL.  (*See* Def. Br. 8 ("Concerning the NYLL, an employer's failure to pay for breaks that last less than twenty (20) minutes does not result in a cognizable claim.")).  To support their position, Defendants rely on a quote from *Stewart* stating simply that "failure to compensate some of the members of [a] putative class for recorded breaks of 20 minutes or less does not violate New York law."  (*Id.* (quoting *Stewart*, 2021 U.S. Dist. LEXIS 73173, at *23)).  As Defendants would have it, this single sentence provides bedrock authority for their assertion that "the NYLL does not recognize this type of [short break] claim."  (Def. Reply 2 n.1 (citing *Stewart*, 2021 U.S. Dist. LEXIS 73173, at *23)).

A closer examination of *Stewart*, however, reveals how Defendants' arguments come up short.  Most significantly, the passage in *Stewart* to which Defendants quote is in fact a direct quote from *Perez* v. *Wells Fargo & Co.*, in which opinion a district court in the Northern District of California denied a motion for class certification brought under Federal Rule of Civil Procedure 23 in a multi-state case for violations of the FLSA.  *See Perez* v. *Wells Fargo & Co.*, No. 14 Civ. 989 (PJH), 2016 WL 4180190, at *11 (N.D. Cal. Aug. 8, 2016).  In conducting its predominance analysis, the court in *Perez* observed that the

21

factual allegations of certain putative class members supported findings that their short rest breaks were either bona fide meal periods or were non-compensable breaks under the Americans with Disabilities Act, 42 U.S.C. §§ 12181-12189 (the "ADA"). *Perez*, 2016 WL 4180190, at *11. Thus, the court found the predominance requirement was not satisfied, because the fact that "the failure to compensate some members of the putative class [*i.e.*, those taking split meal breaks or ADA-related breaks] for recorded breaks of 20 minutes or less does not violate New York law," would require "individualized inquiries into the circumstances of some if not all of the class members." *Id.* Nowhere in *Perez*, however, did the court reach the conclusion that claims for short rest breaks are not cognizable under the NYLL, rendering both *Perez* and *Stewart* of no use to Defendants. Altogether, therefore, Defendants have provided no cases to support their proposition that Fernandez's claims of an uncompensated short rest break are so implausible that they cannot survive a motion to dismiss.

Because the Court concludes that Fernandez's FLSA overtime claim survives, "[her] NYLL overtime claim necessarily survives," given the incorporation of the FLSA and its attendant regulations into the statutory framework of the NYLL. *Martinez* v. *Triumph Constr. Corp.,* No. 21 Civ. 4137 (JPO), 2022 WL 861847, at *4 (S.D.N.Y. Mar. 22, 2022) (citing *Nam* v. *Ichiba Inc.*, No. 19 Civ. 1222 (KAM), 2021 WL 878743, at *6 (E.D.N.Y. Mar. 9, 2021) (noting that "[t]he same [FLSA] standard applies to stating an overtime claim

under the NYLL")).  Accordingly, the Court denies Defendants' motion to dismiss Fernandez's FLSA and NYLL claims for unpaid overtime.

## C.   Fernandez Has Plausibly Stated a Retaliation Claim

In addition to her claims for unpaid overtime in violation of the FLSA and the NYLL, Fernandez also alleges that Defendants violated both statutes by terminating her in retaliation for having lodged complaints with Defendants regarding their allegedly unlawful compensation practices.  For their part, Defendants seek dismissal of Fernandez's retaliation claims on two bases. First, Defendants mount a facial challenge to the allegations of the SAC, maintaining that Fernandez fails to establish a *prima facie* case, insofar as her recitation of the facts leading up to her termination is insufficiently specific to indicate that she was complaining of FLSA or NYLL violations and asserting rights protected by those statutes.  (Def. Br. 16-17).  Next, Defendants request that the Court broaden its scope of review to consider certain employment records not incorporated in the SAC, thereby converting the Court's consideration of Defendants' motion into one for summary judgment.  (*Id.* at 18-19).  For the reasons set forth below, the Court finds that Defendants' arguments fail to justify dismissal of Fernandez's claims of retaliation at this stage.

To state a *prima facie* claim of retaliation under the FLSA and the NYLL, the plaintiff must "show[]: [i] participation in protected activity known to the defendant ... ; [ii] an employment action disadvantaging the plaintiff; and [iii] a causal connection between the protected activity and the adverse employment

action." *Velazquez*, 803 F. App'x at 517 (internal quotation marks omitted).  At

the motion to dismiss stage, the format of these complaints is immaterial, as

both written and oral complaints may suffice to support claims under the FLSA

and the NYLL.  *See Greathouse*, 784 F.3d at 107 ("FLSA's anti-retaliation

provision 'includes oral as well as written complaints.'" (*quoting Kasten* v. *Saint*

*Gobain Performance Plastics Corp.*, 563 U.S. 1, 4 (2011))).

Taking the allegations of the SAC as true, as Defendants concede must

be done, the Court finds that Fernandez has provided sufficient detail to

establish the necessary elements of her *prima facie* case.  First, Fernandez

plausibly alleges that she engaged in a protected activity by raising complaints

with Defendants' Human Resources Department, as well as two district

managers named Mariana and Angelina, regarding her mistreatment by her

manager, Tamara.  (SAC ¶¶ 83-84).  As relevant here, Fernandez alleged that

she complained to those individuals both of Tamara's interpersonal

misconduct, *e.g.*, harassing, berating, and threatening employees, as well as of

the separate "issues of underpayments and off-the-clock-work to which all

employees were subject."  (*Id.* ¶ 85).  Drawing all inferences in favor of

Fernandez, these allegations are sufficiently specific to support a plausible

inference that she made "an assertion of rights protected by the [FLSA] and a

call for their protection."  *Kassman* v. *KPMG LLP*, 925 F. Supp. 2d 453, 472

(S.D.N.Y. 2013) (quoting *Kasten*, 563 U.S. at 14).  The same is true under the

NYLL, which provides that while "[a]n employee need not cite to a specific

statute … her 'complaint to the employer [must] be of a colorable violation of

the statute.'"  *Id.* at 473 (quoting *Castagna* v. *Luceno*, No. 09 Civ. 9332 (CS),
2011 WL 1584593, at *12 (S.D.N.Y. Apr. 26, 2011)).

Fernandez's subsequent termination, approximately three days after
lodging her complaint, plainly qualifies as an adverse employment action under
both the FLSA and the NYLL, thereby satisfying the second element of her
*prima facie* case.  (SAC ¶ 86).  Finally, the short passage of time supports an
inference, drawn in Fernandez's favor, that her complaint of underpayments
and off-the-clock work was causally linked to her termination, meeting the final
element of her *prima facie* case.  *Cf. Mullins*, 626 F.3d at 53 ("[A] causal
connection between an adverse action and a plaintiff's protected activity may
be established … 'by showing that the protected activity was closely followed in
time by the adverse action,'" even where the adverse action was the mere
"application of pre-existing disciplinary policies to a plaintiff." (quoting
*Manoharan* v. *Colum. Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593
(2d Cir. 1988))).

Under these circumstances, "a temporary presumption of discriminatory
motivation is created under the first prong of the *McDonnell Douglas* analysis,"
and dismissal of Fernandez's claims under the FLSA and its broader NYLL
analogue is unwarranted.  *Vega*, 801 F.3d at 84 (internal quotation marks
omitted); *Perdomo*, 2019 WL 6998621, at *5 ("Because the Court has already
determined plaintiff adequately alleged a claim for retaliation under the FLSA,
plaintiff's NYLL retaliation claim also survives defendants' motion to dismiss.").

Defendants are similarly unavailing in their request that the Court convert their motion on this issue to one for summary judgment and consider exhibits, appended to their motion to dismiss, setting forth their position on the circumstances surrounding Fernandez's termination. (*See* Def. Br. 5, 18-19 (citing (Dkt. #53 (Declaration of Kathryn Rodriguez-Roginsky in Support of Defendants' Motion to Dismiss ("Rodriguez-Roginsky Decl.")), Ex. E, F, G, H, and I))). It is well-established that a district court "must give notice to the parties before converting a motion to dismiss pursuant to Rule 12(b)(6) into one for summary judgment and considering matters outside the pleading." *Gurary*, 190 F.3d at 43. Upon review of Defendants' submissions in advance of their motion to dismiss, however, it is clear that no such notice was requested in connection with the motion, and therefore no such notice was provided to Plaintiffs by the Court.

At best, Defendants made passing reference to their desire that the Court consider materials outside the pleadings in ruling on their motion to dismiss, but never formally expressed their intention to move for summary judgment on this issue. (*See, e.g.*, Dkt. #42 at 7 n.2 (asserting that "the Court may consider [Defendants'] outside evidence on a motion to dismiss")). While Defendants' memorandum of law in support of its motion to dismiss references the summary judgment standard and the possibility of converting the motion, it does so without specifically delineating the claims on which summary judgment was being sought. (Def. Br. 5). In such a circumstance, where "the supporting memoranda and evidence can fairly be read to seek only dismissal

under Rule 12(b)(6) on some counts and summary judgment on others," the
Second Circuit has expressly held that "[a party's] motion papers provide[]
insufficient notice" of the possibility of conversion to a motion for summary
judgment.  *Sahu*, 548 F.3d at 67.  Accordingly, the Court, in its discretion,
declines to convert the instant motion.  *See Kouakou* v. *Fideliscare N.Y.*, 920
F. Supp. 2d 391, 396 (S.D.N.Y. 2012) (observing that a district court has
"complete discretion" in determining whether to convert a motion to dismiss
into a motion for summary judgment).  The Court therefore finds that
Fernandez has adequately alleged claims for retaliation under the FLSA and
the NYLL, and denies Defendants' motion to dismiss those claims.

## D.   The Court Will Retain Supplemental Jurisdiction Over the Remaining NYLL Claims

Having denied Defendants' motion to dismiss Fernandez's claims of
unpaid overtime and retaliation under the FLSA and the NYLL, the Court next
considers the remaining claims at issue arising exclusively under the NYLL.  As
noted above, the Court's ability to consider these claims turns on the
antecedent question of supplemental jurisdiction.  And for the reasons set forth
below, the Court answers this question in the affirmative, finding that an
exercise of supplemental jurisdiction over Plaintiffs' NYLL claims is appropriate
at this stage in the litigation.

### 1.    Supplemental Jurisdiction Under 28 U.S.C. § 1367

"[I]n any civil action of which the district courts have original
jurisdiction, the district courts shall have supplemental jurisdiction over all
other claims that are so related to claims in the action within such original

jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a); *see generally Montefiore Med. Ctr.* v. *Teamsters Local*, 642 F.3d 321, 332 (2d Cir. 2011).  To be related, the "federal claim and state claim must stem from the same 'common nucleus of operative fact'; in other words, they must be such that the plaintiff 'would ordinarily be expected to try them all in one judicial proceeding.'"  *Montefiore Med. Ctr.*, 642 F.3d at 332 (quoting *United Mine Workers of Am.* v. *Gibbs*, 383 U.S. 715, 725 (1966)).

That said, supplemental jurisdiction is not mandatory, and courts should, under certain circumstances, "decline to exercise supplemental jurisdiction over a claim."  28 U.S.C. § 1367(c).  These circumstances include instances where "the claim raises a novel or complex issue of State law," *id.* § 1367(c)(1); "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction," *id.* § 1367(c)(2); "the district court has dismissed all claims over which it has original jurisdiction," *id.* § 1367(c)(3); or "exceptional circumstances" exist such that "there are other compelling reasons for declining jurisdiction," *id.* § 1367(c)(4).  Should a court find that any of these categories is implicated, it must "balance the values of judicial economy, convenience, fairness, and comity" in determining whether to exercise jurisdiction.  *Klein & Co. Futures, Inc.* v. *Bd. of Trade of City of N.Y.*, 464 F.3d 255, 262 (2d Cir. 2006) (citing *Carnegie-Mellon Univ.* v. *Cohill*, 484 U.S. 343, 350 (1988)).  Ultimately, the decision whether to exercise

supplemental jurisdiction is entirely within the court's "discretion[ ] and [is] not a litigant's right."  *Id.* at 263.

### 2.   Defendants Have Not Established That the Court's Exercise of Supplemental Jurisdiction Would Be Inappropriate in This Case

Defendants ask the Court to decline to exercise supplemental jurisdiction over the remaining claims for two reasons.  First, Defendants maintain that supplemental jurisdiction cannot exist over two specific NYLL claims — Isayeva's claim for untimely payment in violation of NYLL § 191 (*see, e.g.*, SAC ¶ 104), and Fernandez's claim for unpaid PTO in violation of NYLL § 190 (*see, e.g.*, *id.* ¶ 111) — because those claims do not arise from the same common nucleus of operative fact as do Fernandez's FLSA claims.  (*See* Def. Br. 19-22).  In the alternative, Defendants entreat the Court to, in its discretion, decline to exercise supplemental jurisdiction over all of Plaintiffs' state law claims, including those under NYLL §§ 190 and 191.  (*See id.* at 22-24).  The Court addresses each argument in turn, beginning with Defendants' hard-edged jurisdictional argument.

### a.   Plaintiffs' NYLL Claims Derive From the Same Common Nucleus of Operative Fact as Fernandez's FLSA Claims

As noted above, for a claim to fall within the scope of a court's supplemental jurisdiction, it must be "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  Claims "form part of the same case or controversy" when they "derive from a common nucleus of operative fact."  *City of Chicago* v. *Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997) (quoting *Gibbs*, 383 U.S. at 725).

29

In the wage-and-hour context, "[c]ourts commonly find the common nucleus test satisfied where … a non-FLSA plaintiff's NYLL claims 'involve the same issues of hours and payments for plaintiffs who were employed in the same jobs, doing the same work, during periods that overlap with many of the FLSA plaintiffs.'" *Fallon* v. *18 Greenwich Ave., LLC*, No. 19 Civ. 9579 (MKV), 2021 WL 1105066, at *8 (S.D.N.Y. Mar. 23, 2021) (quoting *Chen* v. *2425 Broadway Chao Rest.*, No. 16 Civ. 5735 (GHW), 2017 WL 2600051, at *5 (S.D.N.Y. June 15, 2015)).

Such is the case here. While Fernandez's and Isayeva's job titles were different, both individuals were employed by the same entity, worked at the same (or similar) locations, and have alleged that they were subject to the same proscribed policies and practices with respect to the payment of their wages. Put simply, whether both Plaintiffs were paid their wages on time, paid all the wages to which they were entitled, or even paid their wages at all rolls up to the same common nucleus of operative fact that arises from Defendants' compensation policies and practices. *See Shahriar* v. *Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (finding that, where plaintiffs asserted both FLSA and NYLL claims, the requisite common nucleus of operative fact was present so long as both claims "arise out of the same compensation policies and practices"). Accordingly, Isayeva's untimely payment claim falls within the same common nucleus of operative fact as Fernandez's FLSA claims, and therefore is within the Court's supplemental jurisdiction.

30

Furthermore, the authority identified by Defendants is not to the contrary.  (*See* Def. Br. 20 (citing *Dervisevic* v. *Wolfgang's Steakhouse, Inc.*, No. 19 Civ. 814 (VEC), 2019 WL 6251197 (S.D.N.Y. Nov. 22, 2019); *Musa* v. *Badero*, No. 14 Civ. 3600 (LDW) (GRB), 2015 U.S. Dist. LEXIS 177024 (E.D.N.Y. Aug. 20, 2015))).  In both *Dervisevic* and *Musa*, the court found that the wage-and-hour allegations giving rise to FLSA claims also supported supplemental jurisdiction over the NYLL claims, and only declined to exercise supplemental jurisdiction over tag-along workplace discrimination claims brought under the New York State Human Rights Law, N.Y. Exec. Law. §§ 290 to 301, and the New York City Human Rights Law, N.Y.C. Admin Code §§ 8-101 to 8-134.  *See Dervisevic*, 2019 WL 6251197, at *3-4; *Musa*, 2015 U.S. Dist. LEXIS 177024, at *12-16.  Both courts did so in accordance with the well-settled practice that, "[w]here … a plaintiff's FLSA claim constitutes the sole predicate for original subject matter jurisdiction, district courts in this Circuit routinely dismiss, on jurisdictional grounds, state and local discrimination … claims, as insufficiently related to the FLSA claim."  *Brito* v. *ATA Freight Line, Ltd.*, No. 20 Civ. 3132 (EK) (RLM), 2021 WL 7830146, at *4 (E.D.N.Y. Aug. 24, 2021) (collecting cases).

Defendants are likewise unavailing in their passing attempt to recast Fernandez's PTO claim as a simple breach of contract action unrelated to Plaintiffs' suite of NYLL claims.  Most significantly, regardless of the specific cause of action invoked by Fernandez, her PTO claim arises from the same common nucleus of operative fact as does her FLSA claim; both claims

implicate the same employment records, as well as consideration of the same

employment paperwork, including Fernandez's employment agreement,

Defendants' payroll policies, and the relevant employee manuals.  *See*

*Chaluisan* v. *Simsmetal East LLC*, 698 F. Supp. 2d 397, 402 (S.D.N.Y. 2010)

(finding plaintiff's claims for nonpayment of vested vacation pay arose out of

the same common nucleus of operative fact as did his FLSA claims, given

"consideration of these claims [would] require examination of the same

employment records called for by his FLSA claim" (citations omitted));[6] *Patel* v.

*Baluchi's Indian Restaurant*, No. 08 Civ. 9985 (RJS), 2009 WL 2358620, at *6

(S.D.N.Y. July 30, 2009) (observing that the discovery necessary to evaluate

plaintiff's FLSA claims, namely consideration of plaintiff's "job title, hours, and

wages … [was] similarly at the heart of [plaintiff's] breach of contract claim,

which alleges that [plaintiff] worked more hours for less money than provided

for by the terms of his contract with Defendants").  Accordingly, the Court finds

that both Isayeva's untimely payment claim and Fernandez's' unpaid PTO

claim fall within the Court's supplemental jurisdiction.

---

[6]     Notably, *Chaluisan* also expressly distinguished *Lyon*, the sole case relied upon by
Defendants in their arguments regarding Fernandez's PTO claim.  *See Chaluisan* v.
*Simsmetal East LLC*, 698 F. Supp. 2d 397, 402 (S.D.N.Y. 2010) (observing, in part, that
"*Lyon*'s tort and contract claims [] raised issues far afield from [plaintiff's] FLSA
claim …, requir[ing] evidence that was completely unrelated to the sole issue raised by
[*Lyon*'s] FLSA claim — *i.e.*, the number of hours she worked in a given week" (citing
*Lyon* v. *Whisman*, 45 F.3d 758, 762-63 (3d Cir. 1995))).  The Court declines to adopt a
different approach, and further notes that the *Lyon* court, by its own terms, emphasized
the narrowness of its holding, "observ[ing] that, like unhappy families, no two cases of
supplemental jurisdiction are exactly alike."  *Id.* at 760.

### b. Defendants Fail to Show That Declination of Jurisdiction Is Appropriate Under 28 U.S.C. § 1367

The Court similarly declines to accept Defendants' fallback request; that the "Court should otherwise decline to exercise supplemental jurisdiction over all claims that arise under New York state law." (Def. Br. 22). Here, Defendants' argument is predicated almost entirely on their incorrect position, discussed above, that Fernandez's FLSA claims should be dismissed, leaving only NYLL claims in the action. (Def. Br. 23). Beyond this argument, and a perfunctory discussion of the factors of "judicial economy, convenience, fairness, and comity" (*id.*), Defendants fail to address in any meaningful way the statutory framework of 28 U.S.C. § 1367, or the Second Circuit's interpretation of the statute to require that, "once it is determined that a supplemental claim is related to the claim within the court's original jurisdiction such that they form the same case or controversy, supplemental jurisdiction over the related claim is mandatory," absent a finding that any of the enumerated categories of subsection 1367(c) applies. *Catzin* v. *Thank You & Good Luck Corp.*, 899 F.3d 77, 85 (2d Cir. 2018) (internal quotation marks omitted) (quoting *Itar-Tass Russian News Agency* v. *Russian Kurier, Inc.*, 140 F.3d 442, 447 (2d Cir. 1998)); *see also Shahriar*, 659 F.3d at 245 ("[W]here section 1367(a) is satisfied, the discretion to decline supplemental jurisdiction is available *only if* founded upon an enumerated category of subsection 1367(c)."). [7]

---

[7]    Read generously, Defendants appear to invoke Section 1367(c)'s predominance exemption for the first time in their reply brief. (*See* Def. Reply 8 n.13 (citing 28 U.S.C.

What is more, in pressing their predominance argument Defendants rely primarily on two cases, *Melgar* and *Chun Lan Guan*, neither of which is to the contrary of the Court's decision to exercise supplemental jurisdiction in this case.  (*See* Def. Reply 9-10 (first citing *Melgar* v. *Pie Chatach 1776 LLC*, No. 23 Civ. 917 (BMC), 2023 WL 2868299 (E.D.N.Y. Apr. 10, 2023)), and then citing *Chun Lan Guan* v. *Long Island Bus. Inst., Inc.*, No. 15 Civ. 2215 (CBA) (VMS), 2019 WL 3798058 (E.D.N.Y. Aug. 13, 2019))).  While the court in *Melgar* expressed its "disinclin[ation] to exercise its supplemental jurisdiction," it did not ultimately dismiss those claims for lack of supplemental jurisdiction.  2023 WL 2868299, at *1.  Rather, the court simply "ordered [the plaintiff] to show cause why the [NYLL] claims should not be dismissed pursuant to 28 U.S.C. § 1367(c)."  *Id.*  Should it become apparent, as the facts of this case are more fully developed, that a similar treatment is necessary, Defendants may request that the Court implement a similar approach.  On the basis of the pleadings alone, however, such an analysis would be speculative.  *See Catzin*, 899 F.3d at 86 (cautioning courts from undertaking a "speculative … application of the § 1367(c)[] factors" where "the record does not afford [the court] an adequate basis for examining" the sufficiency of the parties' arguments).  Next, in *Chun Lan Guan*, the court declined to exercise supplemental jurisdiction where the plaintiff "ha[d] no remaining FLSA claims and her NYLL claims would differ

---

§ 1367(c)(2))).  But such an argument is too little, too late.  *See Fed. Trade Comm'n* v. *Roomster Corp.*, 654 F. Supp. 3d 244, 262 n.12 (S.D.N.Y. 2023) ("The court will disregard this argument because 'it is well settled in the Second Circuit that a party may not raise an argument for the first time in [its] reply brief.'" (quoting *Anghel* v. *Sebelius*, 912 F. Supp. 2d 4, 14 (E.D.N.Y. 2012))).

from those of the named [p]laintiffs." 2019 WL 3798058, at *4. Not so here, where, as discussed above, the NYLL claims, including those brought by Isayeva, arise from the same common nucleus of operative fact as do the FLSA claims pressed by Fernandez. Accordingly, Defendants have not met their burden to establish that any of the statutory exemptions of 28 U.S.C. § 1367(c) applies, and the Court will retain supplemental jurisdiction over each of the remaining NYLL claims.

**E.      Plaintiffs Have Adequately Alleged Claims Under the New York Labor Law**

Finally, the Court considers Defendants' arguments regarding the sufficiency of Plaintiffs' remaining NYLL claims, beginning with Defendants' general position that neither Plaintiff has standing to proceed with her claims under NYLL § 195, and then addressing Defendants' specific objections to Isayeva's gap-time claim and Fernandez's unpaid PTO claim.

**1.      Plaintiffs Have Standing to Pursue Certain Wage Theft Protection Act Claims**

Defendants argue that Plaintiffs lack standing to bring their claims for violations of the Wage Theft Protection Act (the "WTPA"), codified at NYLL § 195. In particular, Defendants attempt to characterize Plaintiffs' claims as seeking redress for simple statutory violations arising from Defendants' alleged failure to disseminate accurate wage notices and wage statements. (Def. Br. 10-13). This argument is unsurprising, as it "has been consistently raised in wage and hour cases since *TransUnion* was decided in 2021." *Lipstein* v. *20X Hosp. LLC*, No. 22 Civ. 4812 (JLR), 2023 WL 6124048, at *8 (S.D.N.Y.

Sept. 19, 2023).  Still, while the issue is often presented, the Second Circuit has not yet weighed in on the particular topic, and "[c]ourts within this Circuit, and even within this District, have come to differing conclusions."  *Id.* (collecting cases).

In this case, as set forth below, the Court finds that both Plaintiffs make out a concrete and particularized injury arising out of their allegations that they were not furnished the statutorily required wage statements, pursuant to NYLL § 195(3), and that Isayeva has alleged a concrete and particularized injury in connection with her allegation that she was misclassified in her statutorily required wage notice, pursuant to NYLL § 195(1).  Fernandez, however, has no standing to pursue her NYLL § 195(1) claim, given that Defendants' records indicate that she was provided with her wage notice, and therefore suffered no injury under the statute.

      **a.**     **Applicable Law**

      **i.**     **The Wage Theft Prevention Act**

The WTPA establishes statutory notice and record-keeping requirements under the NYLL.  In particular, NYLL § 195(1) requires employers to give their employees, at the time of hiring, written notice containing the employee's rate of pay, allowances, and various other information relating to the computation of plaintiff's pay at the time of hiring.  Thereafter, NYLL § 195(3) requires employers to provide, for each pay period, a wage statement showing how that pay was computed, including deductions.

### ii.     Motions to Dismiss Under Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss a claim for "lack of subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1); *see also Daly* v. *Citigroup Inc.*, 939 F.3d 415, 425 (2d Cir. 2019) ("A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." (internal quotation marks omitted) (citing *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  To bring a case or controversy within the subject matter jurisdiction of federal courts, a plaintiff must have standing under Article III of the Constitution, which requires a "personal stake in the case."  *TransUnion LLC* v. *Ramirez*, 594 U.S. 413, 423 (2021) (internal quotation marks and citation omitted).

The Second Circuit has explained that "[a] Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based."  *Katz* v. *Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017) (quoting *Carter* v. *HealthPort Techs.*, LLC, 822 F.3d 47, 56 (2d Cir. 2016)).  "When the Rule 12(b)(1) motion is facial, *i.e.,* based solely on the allegations of the ... complaint and exhibits attached to it (collectively the 'Pleading'), the plaintiff has no evidentiary burden."  *Carter*, 822 F.3d at 56.  In that case, a court must determine whether the complaint and the exhibits incorporated thereto, accepted as true and construed in a plaintiff's favor, "plausibly suggest that the plaintiff has standing to sue."  *Id.* (internal quotation marks omitted and alteration adopted).  "Alternatively, a defendant is permitted to make a fact-

based Rule 12(b)(1) motion, [by] proffering evidence beyond the Pleading." *Id.*
at 57 (citing *Amidax Trading Grp.* v. *S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir.
2011)).  Where such evidence "contradict[s] plausible allegations that are
themselves sufficient to show standing," a plaintiff must "come forward with
evidence of [her] own to controvert that presented by the defendant." *Id.* (citing
*Exch. Nat. Bank of Chi.* v. *Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir.
1976)).  Where the extrinsic evidence presented by the defendant "is material
and controverted," the Court may make findings of fact in aid of its decision as
to standing.  *Id.*

    With the instant motion, Defendants mount both facial and fact-based
challenges to the Court's subject matter jurisdiction.  In particular, Defendants'
standing arguments with respect to NYLL § 195(3), the wage statement
provision of the WTPA, are "based solely on the allegations of the complaint or
the complaint and exhibits attached to it," and therefore constitute a facial
challenge.  *Carter*, 822 F.3d at 56.  Defendants' position with respect to NYLL
§ 195(1), the wage notice provision of the WTPA, is fact-based, relying on
exhibits annexed to Defendants' motion to dismiss that Defendants maintain
are the wage notices provided to each Plaintiff at the time of hire.  (*See*
Rodriguez-Roginsky Decl. ¶¶ 6-8, *id.*, Ex. C, D).

### iii.    Constitutional Standing

    Article III standing requires a plaintiff to show "[i] an injury in fact, [ii] a
causal connection between that injury and the conduct at issue, and [iii] a
likelihood that the injury will be redressed by a favorable decision." *Maddox* v.

*Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 62 (2d Cir. 2021) (quoting *Lujan*

v. *Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks

omitted)).  Each element of standing "must be supported in the same way as

any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the

manner and degree of evidence required at the successive stages of the

litigation." *Fac.* v. *N.Y.U.*, 11 F.4th 68, 76 (2d Cir. 2021) (internal quotation

marks omitted) (quoting *Lujan*, 504 U.S. at 561).  Defendants' motion

addresses only the first element — the existence of a cognizable injury in

fact — and thus the Court focuses its analysis accordingly.  (Def. Br. 6-10)

        "To demonstrate injury in fact, a plaintiff must show the invasion of a

[i] legally protected interest that is [ii] concrete and [iii] particularized and

[iv] actual or imminent, not conjectural or hypothetical." *Maddox*, 19 F.4th at

62 (quoting *Strubel* v. *Comenity Bank*, 842 F.3d 181, 188 (2d Cir. 2016)).  In

*TransUnion*, the Supreme Court expounded on Article III's requirement that a

"plaintiff's injury in fact be 'concrete' — that is, 'real, and not abstract.'" 594

U.S. at 424 (quoting *Spokeo, Inc.* v. *Robins*, 578 U.S. 330, 340 (2016)).

Tangible harms, including "monetary harms," are among those that "readily

qualify as concrete injuries under Article III." *Id.* at 425.

        With particular respect to injuries arising out of a defendant's violation of

a statute, the Supreme Court explained that courts may not assume that the

existence of a statutory prohibition or obligation automatically elevates that

prohibition or obligation to a harm that is concrete under Article III.  *See*

*TransUnion*, 594 U.S. at 424-26.  "For standing purposes, therefore, an

important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's [statutory] violation ... , and (ii) a plaintiff's suffering concrete harm because of the defendant's [statutory] violation." *Id.* at 426-27.  "Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* (emphasis omitted); *see also Harty* v. *W. Point Realty, Inc.*, 28 F.4th 435, 443 (2d Cir. 2022) ("[A] plaintiff has standing to bring a claim for monetary damages following a statutory violation only when [she] can show a current or past harm beyond the statutory violation itself.").

> **b.**   **Plaintiffs Suffered Concrete and Particularized Injuries in Connection with Their Failures to Receive Wage Statements**

"The WTPA was enacted to further protect an employee's concrete interest in being paid what he or she is owed under the NYLL." *Bueno* v. *Buzinover*, No. 22 Civ. 2216 (PAE) (KHP), 2023 WL 2387113, at *3 (S.D.N.Y. Mar. 7, 2023) (alteration adopted and internal quotation marks omitted) (quoting *Imbarrato* v. *Banta Mgmt. Servs., Inc.*, No. 18 Civ. 5422 (NSR), 2020 WL 1330744, at *8 (S.D.N.Y. Mar. 20, 2020)).  "The written notices mandated under the WTPA serve 'as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves.'" *Id.* (quoting *Imbarrato*, 2020 WL 1330744, at *9)).  These injuries can rise above mere technical violations, when "[d]enying an employee such notices ... impinge[s] on an employee's interests not only in being paid

what is owed, but also in being able to advocate for the receipt of proper pay."
*Id.*

Here, both Plaintiffs have advanced allegations consistent with that
theory.  As concerns Defendants' wage statements, pursuant to § 195(3),
Plaintiffs allege injury arising out of Defendants' inaccurate reporting of the
hours worked by Plaintiffs, which reporting obfuscated the fact of Defendants'
alleged time-shaving and hindered Plaintiffs' ability, at the time they were paid,
to discover their underpayment and advocate for themselves.  (SAC ¶¶ 78-82).
*See Lipstein*, 2023 WL 6124048, at *10 ("The delay in compensation that
results when someone lacks the full information needed to advocate for
appropriate wages deals an injury that is distinct from any underpayment
itself.").  What is more, Plaintiffs plausibly establish that this obfuscation not
only hindered Plaintiffs from realizing their rights at the time of payment, but
also injured Plaintiffs by enabling the actual underpayment of their wages,
necessitating this action.  *See Mateer* v. *Peloton Interactive, Inc.*, No. 22 Civ. 740
(LGS), 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022) ("In contrast to
technical violations of the WTPA that have been dismissed for lack of standing
in some cases, the allegations in the [complaint] went beyond asserting a bare
statutory violation and sufficiently allege[d] a concrete harm," namely "that [the
defendant's] violation resulted in the underpayment of wages." (internal
quotation marks and citation omitted)).  Accordingly, these specific injuries,
"are of a different class of harm from those alleged in *TransUnion* and *Maddox*,"
given that they implicate the broader issue of a plaintiff's nonpayment or

41

underpayment of wages, rather than plaintiff's technical statutory entitlement
to receive notices on any given cadence.  *Lin* v. *Bund Dumpling House Inc.*,
No. 22 Civ. 6989 (EK) (RML), 2023 WL 7688886, at *8 (E.D.N.Y. Sept. 26, 2023)
(finding standing supported by plaintiff's allegations that defendants' failure to
provide wage notices and wage statements, contributed in part to "plaintiff [not
being] paid the wages he earned").

The same is true with respect to Isayeva's arguments concerning her
failure to receive an accurate wage notice at the start of her employment, as
required by § 195(1).  For the purposes of the instant motion, Defendants do
not dispute Isayeva's allegations that she was misclassified and should have
been paid weekly, and that Defendants' untimely bi-weekly payment caused
her specific financial injury, including "be[ing] forced to pay rent and credit-
card bills late as she waited for her owed compensation to become available."
(SAC ¶ 74; *see also id.* ¶¶ 44, 70-74).  Even assuming that Isayeva received the
wage notice provided by Defendants, that notice would have given Isayeva the
mistaken impression that she was not entitled to weekly compensation,
hindering her ability to seek payment on the schedule to which she was
allegedly entitled.  (*See* Rodriguez-Roginsky Decl., Ex. C).  Accordingly, the
Court declines to dismiss Isayeva's wage notice claim under NYLL § 195(1).

Defendants' provision of Fernandez's wage notice, on the other hand,
renders implausible any allegations by Fernandez that she was injured by her
failure to receive said notice.  In particular, Defendants' proffered evidence
"reveal[s] the existence of factual problems in the assertion of jurisdiction,"

requiring Fernandez to "come forward with evidence of [her] own to controvert that presented by [Defendants]." *Carter*, 822 F.3d at 57 (internal quotation marks and citation omitted). Fernandez has not done so, however, and instead merely asserts that the evidence does not establish that Fernandez actually received the wage notices. (Pl. Opp. 10 n.1 ("Defendants argue that they did provide Plaintiffs with wage notices, along with what they claim is proof of electronic acknowledgement. But the [Rodriguez-Roginsky] declaration does not explain how this is actually proven.")). However, a screenshot from Defendants' human resources system presumptively indicates that Fernandez signed the "NY Notice and Acknowledgement of Pay Rate and Payday" on March 10, 2022, and the notice, itself, accurately depicts her pay rate and pay schedule. (*See* Rodriguez-Roginsky Decl., Ex. D). Accordingly, Fernandez failed to allege a concrete injury, and her wage notice claim under NYLL § 195(1) must be dismissed without prejudice.

### 2. Isayeva Has Adequately Alleged a NYLL Gap-Time Claim

As noted above, Isayeva concedes that, based on Defendants' records that she worked fewer than 40 hours weekly, she cannot maintain a FLSA claim. (Pl. Opp. 8). Even so, Isayeva maintains that she has viable NYLL claims for unpaid time worked, arising out of her allegations of time-shaving in connection with her lunch breaks and short rest break. (*Id.* at 8-9). This is correct, as "the NYLL does recognize [g]ap [t]ime [c]laims and provides for full recovery of all straight-time wages owed." *Lundy*, 711 F.3d at 118; *see also Nakahata*, 723 F.3d at 202 (recognizing that "[p]laintiffs may ... have a gap-

time claim pursuant to the NYLL," where they might not otherwise have a claim under the FLSA (citing *Lundy*, 711 F.3d at 115-17)).  Thus, to the extent that Isayeva "has adequately pled that [she] worked compensable time for which [she was] not properly paid, [she has] a statutory right under the NYLL to recover straight-time wages for those hours."  *Lundy*, 711 F.3d at 118.

As the NYLL incorporates the FLSA into its statutory framework, and courts apply the same pleading standard for both statutes, including the degree of specificity needed to state a claim, the Second Circuit's guidance in *Herrera* is just as relevant to the Court's evaluation of Isayeva's claims.  *See, e.g.*, *Werst* v. *Sarar USA Inc.*, No. 17 Civ. 2181 (VSB), 2018 WL 1399343, at *5-7 (S.D.N.Y. Mar. 16, 2018) (applying FLSA pleading standard to plaintiffs' gap-time claims (citing *Nakahata*, 732 F.3d at 202)); *Amponin* v. *Olayan Am. Corp.*, No. 14 Civ. 2008 (TPG), 2015 WL 1190080, at *2 (S.D.N.Y. Mar. 16, 2015) (noting that "[t]he NYLL adopts [the FLSA] standard," and observing that the applicable "pleading standard — and the degree of specificity needed to state an overtime claim under the FLSA and NYLL — has been addressed by the Second Circuit" in a single series of cases most recently clarified by *Herrera*); *Lopez-Serrano* v. *Rockmore*, 132 F. Supp. 3d 390, 403 (E.D.N.Y. 2015) (describing the NYLL's pleading standard as "analytically identical to its federal law counterpart under the FLSA").

Isayeva brings similar allegations to those levied by Fernandez, maintaining that she was also subject to "Defendants' impermissible policy of forcing [her] to clock-out for a half-hour lunch, but then [was] not permit[ed] …

44

to take a free and clear break." (SAC ¶ 47). Like Fernandez, "Isayeva was forced to eat at her stations daily … [and was] required by her managers … to engage in work during her break, depriving her of the time to eat lunch." (*Id.*). Under *Herrera*, these allegations pass muster, as the "standard [set by the NYLL] is not met if the employee is required to be on-call to handle whatever work arises during the lunch break." *Gao* v. *Savour Sichuan Inc.*, No. 19 Civ. 2515 (JPC), 2024 WL 664718, at *20 (S.D.N.Y. Feb. 16, 2024) (quoting *Herrera*, 84 F.4th at 116); *see also Herrera*, 84 F.4th at 116 (stating that employees need not "quantify how many minutes were spent during any given lunch break actually attending to [work] in order to demonstrate that their lunch break was not a *bona fide* meal period" (alteration adopted and internal quotation marks omitted)). The same is true with respect to Isayeva's short rest break, where she was permitted to clock out for a less than 20-minute break, but was not compensated for this time. (SAC ¶ 49). Accordingly, Isayeva has plausibly alleged that she was time-shaved 2.75 hours during each week of her employment by Defendants, and has therefore stated a viable gap-time claim under the NYLL.

### 3. Fernandez Has Adequately Alleged Claims for Nonpayment of Unused PTO

Finally, Defendants take aim at Fernandez's claims for unpaid wages arising out of Defendants' failure to compensate her for her PTO accrued by the time of her termination. Defendants raise two substantive arguments in favor of dismissal; first asserting that there was no contractual agreement between Fernandez and Defendants that entitled her to a payout upon termination, and

next suggesting that Fernandez's termination for cause would have precluded any theoretical entitlement Fernandez had to that payout.  (Def. Br. 13-15).[8] At this stage of the litigation, the Court must disagree.

Under the NYLL, employees are "entitle[d] to receive payment for accrued, unused paid time off upon termination of employment," where such an entitlement is established "by the terms of the employer's publicized policy." *Kolesnikow* v. *Hudson Valley Hosp. Ctr.*, 622 F. Supp. 2d 98, 120 (S.D.N.Y. 2009) (citing *Gennes* v. *Yellow Book of N.Y., Inc.*, 806 N.Y.S.2d 646, 648 (2d Dep't 2005) (holding that in an action to recover vacation pay under the NYLL, "[t]he primary and dispositive issue ... is whether there was any basis for the accrual of vacation benefits," and looking to employer's policy for terms of accrual)).  Included in the universe of publicized policies are "[p]ersonnel handbooks and manuals[, which] qualify as valid contracts under New York law and typically govern the right of an at-will employee to receive vacation benefits and PTO."  *Drummond* v. *Akselrad*, No. 23 Civ. 179 (LJL), 2023 WL 3173780, at *5 (S.D.N.Y. May 1, 2023) (collecting cases).

---

[8]     Defendants also argue that the PTO claims must be dismissed because "Fernandez pleads her class-wide PTO claim pursuant to NYLL § 198-c[, which statute] is a criminal statute that does not afford employees with a private right of action."  (Def. Br. 13). Defendants are incorrect, as Fernandez's claim is in fact brought under the provisions of the NYLL establishing a private right of action recover unpaid wages, and her allegations simply incorporate the NYLL's acknowledgment that vacation pay may qualify as wages, in support of her claims.  (*See* SAC ¶ 111 ("[T]he unpaid PTO ... qualifies as unpaid wages under NYLL § 190(1), and [Fernandez] and PTO Subclass members can seek the appropriate relief under NYLL § 663.")).  *See Coley* v. *Vannguard Urb. Improvement Ass'n, Inc.*, No. 12 Civ. 5565 (PKC) (RER), 2018 WL 1513628, at *7 (E.D.N.Y. Mar. 27, 2018), *as amended* (Mar. 29, 2018) ("Plaintiffs may recover vacation pay under § 198 of the NY, because vacation pay is covered under the definition of 'wages.'" (citing NYLL §§ 190, 198-c)).

Turning to the facts, Defendants' employee handbook, incorporated into the SAC, provides that:

> Upon termination of employment, all employees will be paid for their accrued and unused PTO.  In addition, employees discharged for gross misconduct or dishonesty as determined by the sole discretion of the Company may not receive payment for unused PTO regardless of the length of employment with the Company.  This policy is invalidated if employee voluntarily ends employment without providing a minimum of a 2-week notice in writing.

(SAC ¶ 107; *id.*, Ex. E at 59).  On its face, therefore, the employee handbook expressly contemplates a scenario under which Fernandez would be entitled to her accrued and unused PTO at the time of her termination, thereby establishing her right to recover that time under either the NYLL or through a breach of contract action.

Defendants, in their attempt to draw attention away from the provision, call attention to a separate excerpt, stating:  "This handbook does not create a contract of employment between the Company and its employees."  (Def. Br. 13 (quoting SAC, Ex. E at 8)).  Even accepting that argument, such a provision simply clarifies that the Handbook did not alter Fernandez's status as an at-will employee, but does not operate to nullify, as a blanket matter, the enforceability of all other provisions of the Handbook.  (Pl. Opp. 16).

Next, the Court need not reach Defendants' arguments that Fernandez was not entitled to a payout on account of her termination for cause, as Defendants' allegations of fact are inappropriate for consideration at the motion to dismiss stage.  Rather, Fernandez is entitled to seek discovery on the

circumstances of her termination, to determine if there is any "genuine factual dispute as to whether, pursuant to [Defendants'] policies, [Fernandez] forfeited her right to accrued, unused pay upon termination of employment." *Kolesnikow*, 622 F. Supp. 2d at 120 (internal quotation marks omitted) (citing *Mahoney* v. *Olean Gen. Hosp.*, 716 N.Y.S.2d 174, 175 (4th Dep't 2000)).  The Court therefore finds that Fernandez may continue with her claims for unpaid PTO.

## CONCLUSION

For the reasons enumerated herein, Defendants' motion to dismiss is DENIED, except as to Plaintiff Isayeva's claims under the FLSA and Plaintiff Isayeva's wage notice claim under NYLL § 195(1).  The Clerk of Court is directed to terminate the pending motion at docket entry 50.  The parties are hereby ORDERED to submit a joint letter addressing next steps in this case on or before **April 1, 2024**.

SO ORDERED.

Dated:   March 11, 2024
         New York, New York

_____
    KATHERINE POLK FAILLA
    United States District Judge

48