UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHELLE ISAYEVA and KAHOLY FERNANDEZ, *on behalf of themselves, FLSA Collective Plaintiff and the Class*,

Plaintiffs,

-v.-

DIAMOND BRACES, *an unincorporated entity, association, or affiliation*, ORTHOCLUB, P.C. *d/b/a* DIAMOND BRACES, JOHN DOE CORPORATIONS 1-100 *d/b/a* DIAMOND BRACES, and OLEG DRUT,

Defendants.

---

22 Civ. 4575 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:[1]

Plaintiffs Michelle Isayeva and Kaholy Fernandez, on behalf of themselves and other hourly employees of the orthodontic practice Diamond Braces, bring this class and collective action against Defendants Diamond Braces, Orthoclub P.C. *d/b/a* Diamond Braces, Oleg Drut, and John Doe Corporations 1-100 *d/b/a* Diamond Braces (together, "Diamond Braces" or "Defendants"), asserting wage-and-hour claims under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201-219, and the New York Labor Law (the "NYLL"), N.Y. Lab. Law §§ 190-199-a, 650-665.  In brief, Plaintiffs allege that Defendants failed to pay proper wages under both statutes because Defendants engaged in the unlawful practice of time-shaving.  Plaintiffs also allege that Defendants violated the NYLL's provisions regarding timely payment of wages, wage

---

[1] Samantha Stern, a rising second-year student at the New York University School of Law, provided substantial assistance in the research and drafting of this Opinion.

notices, and wage statements. Plaintiff Fernandez separately alleges that she was improperly terminated in retaliation for raising complaints regarding Defendants' compensation practices, and that Defendants failed to pay her for unused paid time off at the time of her termination.

Before the Court now is Plaintiffs' motion for conditional certification of a collective action under Section 216(b) of the FLSA. Relatedly, Plaintiffs move for an order (i) approving the distribution of the proposed notice (the "Proposed Notice"), including a "Consent to Sue" form (the "Proposed Consent Form"), to all covered employees; (ii) permitting the consent form to be returnable to Plaintiffs' counsel instead of the Clerk of Court; (iii) compelling Defendants to produce names, social security numbers, titles, compensation rates, dates of employment, last known mailing addresses, email addresses, and known telephone numbers of all covered employees; (iv) directing the opt-in notice period to begin six years prior to the filing of the Complaint; (v) approving the posting of the notice and consent form in Defendants' places of business where covered employees are employed during regular business hours; and (vi) ordering that the statute of limitations of potential opt-in plaintiffs' claims be tolled from the date of the filing of Plaintiffs' complaint until such time as Plaintiffs are able to send notice to all covered employees. For the reasons set forth in this Opinion, the Court grants Plaintiffs' motion for conditional collective certification in part; grants in part and denies in part Plaintiffs' discovery requests; approves in large measure Plaintiffs' Proposed Notice; and denies without prejudice Plaintiffs' motion for equitable tolling.

## BACKGROUND[2]

The Court assumes familiarity with the factual and procedural histories of this litigation and incorporates by reference the facts set forth in this Court's March 11, 2024 Opinion and Order resolving Defendants' motion to dismiss ("MTD Op." (Dkt. #82)), and its December 9, 2024 oral decision resolving Plaintiffs' motion to enforce the purported settlement agreement ("MTE Op." (Dkt. #105)).

### A.    Factual Background[3]

Diamond Braces is an orthodontic practice that operates more than 40 offices throughout the New York metropolitan area.  (SAC ¶¶ 9-11).  From on or about March 17, 2022, until August 8, 2022, Fernandez was employed as a

---

[2]    This Opinion draws its facts primarily from Plaintiffs' Second Amended Complaint ("SAC" (Dkt. #45)), the operative pleading in this matter.  The Court also relies, as appropriate, on the Declarations of C.K. Lee ("Lee Decl." (Dkt. #85) and "Lee Second Decl." (Dkt. #127)), Kaholy Fernandez ("Fernandez Decl." (Dkt. #86)), Michelle Isayeva ("Isayeva Decl." (Dkt. #87)), and Sama Aliyeva ("Aliyeva Decl." (Dkt. #88)), all of which were submitted in connection with Plaintiffs' motion for conditional certification, as well as certain of the exhibits attached thereto ("[Name] Decl., Ex. [ ]").

For ease of reference, the Court refers to Plaintiffs' memorandum of law in support of their motion for conditional certification as "Pl. Br." (Dkt. #84), to Defendants' memorandum of law in opposition to Plaintiffs' motion as "Def. Opp." (Dkt. #123), and to Plaintiffs' reply memorandum of law as "Pl. Reply" (Dkt. #126).

[3]    Plaintiffs bear the burden on a Section 216(b) motion for conditional certification. Accordingly, the Court focuses primarily on Plaintiffs' account of the facts at this stage of the litigation.  *See Myers* v. *Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (describing the "modest factual showing" needed for conditional certification).  The Court "grant[s] the plaintiff the benefit of the doubt given the posture of this motion." *Williams* v. *Movage Inc.*, No. 17 Civ. 2628 (KPF), 2018 WL 1940435, at *1 n.2 (S.D.N.Y. Apr. 24, 2018) (quoting *Mendoza* v. *Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629 (KPF), 2013 WL 5211839, at *1 n.1 (S.D.N.Y. Sept. 16, 2013)).  By contrast, the Court cannot and does not consider the factual assertions contained in Defendants' opposition brief.  *See Escobar* v. *Motorino E. Vill. Inc.*, No. 14 Civ. 6760 (KPF), 2015 WL 4726871, at *3 (S.D.N.Y. Aug. 10, 2015); *accord Lee* v. *Nails & Spa Together, Inc.*, No. 24 Civ. 2549 (AT) (HJR), 2025 WL 1063393, at *3 (S.D.N.Y. Apr. 9, 2025); *Bhumithanarn* v. *22 Noodle Market Corp.*, No. 14 Civ. 2625 (RJS), 2015 WL 4240985, at *4 (S.D.N.Y. July 13, 2015).

Treatment Coordinator, working at various Diamond Braces locations and compensated on an hourly basis. (*Id.* ¶¶ 54-57). Likewise, from on or about January 10, 2021, until in or around August 2021, Isayeva was employed as a Dental Assistant, also working at various Diamond Braces locations and compensated on an hourly basis. (*Id.* ¶¶ 41-44). Both Fernandez and Isayeva were paid on a bi-weekly schedule at a rate of $17 an hour. (*Id.* ¶¶ 44, 57). In her last month of employment, Fernandez was paid at a rate of $20 an hour. (*Id.* ¶ 57).

Plaintiffs allege that Defendants' compensation policies for hourly workers violated federal and New York labor laws in several ways.[4] *First*, Plaintiffs claim that Defendants engaged in "time-shaving" with respect to certain breaks. Specifically, Plaintiffs allege that employees were required to "clock out" for lunch breaks but also required to eat at their workstations and perform work during those periods, thereby not affording them bona fide meal breaks. (SAC ¶¶ 47-48, 58-59). Plaintiffs further contend that Defendants maintained a similar practice with respect to short rest breaks, providing employees with a weekly break lasting less than twenty minutes, but requiring employees to clock out for such breaks, and therefore not compensating them for that time. (*Id.* ¶¶ 49-50, 60-61). Because of these time-shaving practices, Fernandez and Isayeva maintain that they were not adequately compensated

---

[4]    In briefing on Defendants' motion to dismiss, Isayeva conceded her claims under the FLSA, recognizing that Defendants' records demonstrate that she did not work over 40 hours in a week. (MTD Op. 15). Accordingly, she now only proceeds with her NYLL claims. Fernandez proceeds with both FLSA and NYLL claims.

for their time, in the amount of roughly 3.25 hours per week for Fernandez and 2.75 hours per week for Isayeva.  (*Id.* ¶¶ 51, 62).

*Second*, Plaintiffs allege that Defendants failed to provide accurate wage notices and wage statements, as required by the NYLL, and that these deficiencies obfuscated Defendants' impermissible time-shaving and untimely payment practices, allowing both problems to continue, to Plaintiffs' financial detriment.  (SAC ¶¶ 52, 63).[5]  Isayeva also maintains that she was a "manual worker," within the meaning of the NYLL, and should have been compensated on a weekly basis as required by the statute.  (*Id.* ¶¶ 70-74).

Finally, Fernandez alleges that she was terminated three days after raising these "issues of underpayments and off-the-clock work to which all employees were subject," in a complaint made to Defendants' Human Resources Department and two other District Managers arising out of her alleged mistreatment by her manager.  (SAC ¶ 85; *see id.* ¶¶ 83-88).

## B.    Procedural Background

This Court has previously — and accurately — described the procedural history of this case as "circuitous."  (MTD Op. 4).  Because that procedural history has been thoroughly described in this Court's prior opinions (*see* MTD Op. 4-9; MTE Op. 6:7-10:18), the Court picks up in this Opinion where the prior opinions left off.

---

[5]      The Court previously dismissed Fernandez's claim under NYLL § 195(1), after determining that she had no standing to pursue such a claim.  (MTD Op. 36).

On March 11, 2024, the Court issued an Opinion and Order denying in large measure Defendants' motion to dismiss the SAC. (*See generally* MTD Op.). Thereafter, on December 9, 2024, the Court issued an oral decision denying Plaintiffs' motion to compel enforcement of a purported class settlement, finding that Plaintiffs had (i) abandoned their right to pursue this course and (ii) failed to establish that the parties' unsigned term sheet constituted an enforceable settlement agreement. (*See generally* MTE Op.). The case then proceeded on parallel tracks. On December 26, 2024, Defendants, by letter motion, expressed their desire to seek sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. (Dkt. #108). Defendants averred that Plaintiffs had "epitom[ized ...] bad faith" by filing a motion to enforce a class settlement "knowing that there were no such grounds for it to be enforced[.]" (*Id.* at 3). Plaintiffs vehemently rejected the allegations as "procedurally and substantively meritless." (Dkt. #111 at 1). After the Court scheduled a pre-motion conference to address these allegations (Dkt. #118), the parties informed the Court that they had resolved the disputes without judicial intervention and requested an adjournment of the pre-motion conference, which request the Court granted. (Dkt. #120, 121). Nevertheless, Defendants expressed their desire to seek sanctions yet again on February 21, 2025. (Dkt. #124). The Court held a pre-motion conference on March 11, 2025. (March 11, 2025 Minute Entry). By letter dated March 24, 2025, Defendants informed the Court that they had ultimately decided not to pursue sanctions. (Dkt. #132).

In the meantime, on January 17, 2025, Plaintiffs, by letter to the Court, renewed the instant motion for collective certification (which had been denied without prejudice in light of Defendants' motion to dismiss and Plaintiffs' motion to enforce the purported settlement, *see* Dkt. #65, 98) and expressed their continued reliance on their March 2024 briefing (Dkt. #115 (renewal letter); Dkt. #83-88 (moving papers)). Defendants submitted their opposition to Plaintiffs' motion for collective certification on February 21, 2025. (Dkt. #123). Plaintiffs submitted their reply on February 28, 2025, at which time the motion was fully briefed. (Dkt. #126-127).

## DISCUSSION

### A.    Applicable Law

#### 1.    The Fair Labor Standards Act

The FLSA permits an aggrieved employee to bring a "collective" action against her employer for unlawful employment practices. Specifically, the statute authorizes "any one or more employees[,] for and [on] behalf of h[er]self or themselves and other employees similarly situated," to bring a lawsuit against her employer. 29 U.S.C. § 216(b).

Unlike class actions brought under Rule 23 of the Federal Rules of Civil Procedure, FLSA collective actions need not satisfy the standards of numerosity, typicality, commonality, or representativeness for the purposes of certification. *Compare Young* v. *Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (noting that "no showing of numerosity, typicality, commonality and representativeness need be made" in a collective action (quoting *Foster* v.

*Food Emporium*, No. 99 Civ. 3860 (CM), 2000 WL 1737858, at *1 (S.D.N.Y.

Apr. 26, 2000))), *with Wilner* v. *OSI Collection Servs., Inc.*, 198 F.R.D. 393, 396

(S.D.N.Y. 2001) (requiring showing of "numerosity, commonality, typicality, and

adequacy of representation" in a class action); *cf.* Fed. R. Civ. P. 23(a).  Also

unlike Rule 23 class actions, in which putative class members must

affirmatively "opt-out" to avoid being bound by the judgment, in collective

actions, "only potential plaintiffs who 'opt in' by filing written consents to join

the collective action can be 'bound by the judgment or benefit from it.'"

*Mendoza*, 2013 WL 5211839, at *2 (quoting *Gjurovich* v. *Emmanuel's*

*Marketplace, Inc.*, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003)) (internal

quotation marks omitted).

 Finally, a court presiding over a collective action is tasked with

approving, at its discretion, a plaintiff's proposed procedures for "noti[fying] ...

potential plaintiffs of the pendency of the action and of their opportunity to opt-

in as represented plaintiffs."  *Myers*, 624 F.3d at 554 (internal quotation marks

omitted).

### 2. Certifying a FLSA Collective Action

 "While the [FLSA] does not prescribe any procedures for approval of

collective actions, section 216(b) has long been construed to grant authority to

a district court to mandate that notice be given to potential plaintiffs informing

them of the option to join the suit."  *Contrera* v. *Langer*, 278 F. Supp. 3d 702,

712 (S.D.N.Y. 2017) (citing *Hoffman-La Roche Inc.* v. *Sperling*, 493 U.S. 165,

169 (1989)).  "Orders authorizing notice are sometimes referred to as orders

'certifying' a collective action, even though the FLSA does not contain a certification mechanism." *Id.* (citing *Myers*, 624 F.3d at 555 n.10). District courts have discretion "'to implement [§ 216(b)] ... by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs.'" *Geng* v. *Shu Han Ju Rest. II Corp.*, No. 18 Civ. 12220 (PAE) (RWL), 2019 WL 4493429, at *5 (S.D.N.Y. Sept. 9, 2019) (quoting *Myers*, 624 F.3d at 554) (internal quotation marks omitted).

In the Second Circuit, the certification of an FLSA collective action proceeds in two steps. *Myers*, 624 F.3d at 554-55; *accord Scott* v. *Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 515 (2d Cir. 2020). The first step ("conditional certification") requires the district court to determine whether a plaintiff is "similarly situated" with other potential plaintiffs, such that those putative plaintiffs should receive notice of the pending action and an opportunity to join it. *Myers*, 624 F.3d at 555. Named and opt-in "plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Scott*, 954 F.3d at 516. A plaintiff's burden at this stage is low; to establish that she is "similarly situated" with other potential plaintiffs, she need only "make a modest factual showing that [she] and others together were victims of a common policy or plan that violated the law." *Glatt* v. *Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016); *see also Myers*, 624 F.3d at 555 ("[T]he purpose of this first stage is merely to determine *whether* similarly situated plaintiffs do in fact exist." (internal quotation marks omitted));

*McGlone* v. *Cont. Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012)

("Because minimal evidence is available at this stage, this determination is

made using a 'relatively lenient evidentiary standard.'" (quoting *Mentor* v.

*Imperial Parking Sys., Inc.*, 246 F.R.D. 178, 181 (S.D.N.Y. 2007))); *Hoffmann* v.

*Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) ("The burden on plaintiffs

is not a stringent one, and the Court need only reach a preliminary

determination that potential plaintiffs are similarly situated." (internal

quotation marks omitted)).

    Where a plaintiff's allegations involve employees at multiple business

locations, "even where it is clear that multiple business locations share

common ownership and management, plaintiffs must adduce enough evidence

to support an inference of a common … policy across all locations before a

multi-location collective may be certified." *Peralta* v. *CB Hosp. & Events, LLC*,

No. 22 Civ. 10805 (GHW) (BCM), 2024 WL 916523, at *5 (S.D.N.Y. Mar. 4,

2024). "In this Circuit, courts have regularly found named plaintiffs to be

similarly situated to employees at locations where they did not work[.]"

*Hamadou* v. *Hess Corp.*, 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013); *see also*

*Rosario* v. *Valentine Ave. Disc. Store, Co.,* 828 F. Supp. 2d 508, 516-17

(E.D.N.Y. 2011) (collecting cases).

    To establish the requisite "modest factual showing," a plaintiff may

"rely[ ] on [her] own pleadings, affidavits, [and] declarations, or the affidavits

and declarations of other potential class members." *Hallissey* v. *Am. Online,*

*Inc.*, No. 99 Civ. 3785 (KTD), 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008);

*see also Weng* v. *Kung Fu Little Steamed Buns Ramen Inc.*, No. 17 Civ. 273 (LAP), 2018 WL 1737726, at *4 (S.D.N.Y. Mar. 26, 2018) ("For [p]laintiffs [seeking collective action certification] to meet their burden, they are obligated to provide some probative information regarding similarly situated employees such as their names, their duties and their hours worked." (internal quotation marks omitted)).  "[C]ourts in this circuit have routinely granted conditional collective certification based solely on the personal observations of one plaintiff's affidavit."  *Hernandez* v. *Bare Burger Dio Inc.*, No. 12 Civ. 7794 (RWS), 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013).

Although "[p]laintiffs' burden at this stage is low ... it is not non-existent, and they cannot rely only upon unsupported assertions."  *Mark* v. *Gawker Media LLC*, No. 13 Civ. 4347 (AJN), 2014 WL 4058417, at *2 (S.D.N.Y. Aug. 15, 2014) (internal quotation marks omitted).  In other words, "certification is not automatic," *Taveras* v. *D & J Real Est. Mgmt. II, LLC*, 324 F.R.D. 39, 41 (S.D.N.Y. 2018), and a plaintiff must put forth more than just "unsupported assertions" to warrant conditional certification, *Myers*, 624 F.3d at 555 (quoting *Dybach* v. *State of Fla. Dep't of Corrs.*, 942 F.2d 1562, 1567 (11th Cir. 1991)); *see also Taveras*, 324 F.R.D. at 41 ("Although a plaintiff's factual showing is modest, it cannot be satisfied by unsupported assertions or conclusory allegations.").  Indeed, courts have declined to conditionally certify proposed collectives based on "plaintiffs' mere belief that the policies are the same at ... other [locations.]" *Rojas* v. *Kalesmeno Corp.*, No. 17 Civ. 164 (JCF), 2017 WL 3085340, at *5 (S.D.N.Y. July 19, 2017); *see also Adam* v. *Bloomberg*

*L.P.*, No. 21 Civ. 4775 (JLR) (JLC), 2023 WL 3814252, at *5 (S.D.N.Y. June 5, 2023) (denying conditional collective certification motion where plaintiffs failed to identify individuals who "potentially [had] the same duties and raise[d] the same claims"), *report and recommendation adopted*, No. 21 Civ. 4775 (JLR), 2024 WL 4457708 (S.D.N.Y. Oct. 10, 2024); *Hickmon* v. *Fun & Fit LLC*, No. 20 Civ. 10270 (RA) (JLC), 2021 WL 3578296, at *5-6 (S.D.N.Y. Aug. 13, 2021) (denying motion where plaintiffs failed to "identify any potentially similarly situated employees by name," did not "disclose how many employees [plaintiffs] conversed with," and "provide[d] no information regarding the timing or circumstances of any of these conversations").

Finally, courts "need not [at the conditional certification stage] evaluate the underlying merits of a plaintiff's claims[.]" *Damassia* v. *Duane Reade, Inc.*, No. 04 Civ. 8819 (GEL), 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006); *see also Hoffmann*, 982 F. Supp. at 262. That is, at the first step of the collective certification inquiry, courts should avoid "'resolv[ing] factual disputes, decid[ing] substantive issues going to the ultimate merits [of the case], or mak[ing] credibility determinations.'" *Cunningham* v. *Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010) (quoting *Lynch* v. *United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)). That is why courts cannot rely on affidavits or records submitted by FLSA defendants. *See Cohen* v. *Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 330 (S.D.N.Y. 2010) (declining to "wade into a thicket of competing factual assertions at [the] preliminary stage" of conditional certification).

The second stage of collective action certification occurs *after* the court-authorized notice is sent, putative plaintiffs have had the opportunity to opt into the collective action, and discovery has closed.  *See, e.g.*, *McGlone*, 49 F. Supp. 3d at 366-67.  This second step involves a "more stringent factual determination," *Lynch*, 491 F. Supp. 2d at 368, and requires the court, "on a fuller record," to "determin[e] whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs," *Myers*, 624 F.3d at 555.  If the court determines that the opt-in plaintiffs are not in fact similarly situated, any collective that was conditionally certified at the first stage of the process may be "de-certified" and "opt-in plaintiffs' claims ... dismissed without prejudice." *Id.*

### 3.    Defining the "Employer"

Under the "single integrated enterprise" or "single entity" test, to determine when "distinct but closely affiliated entities should be treated as a single employer for FLSA purposes," courts consider the "[i] interrelation of operations, [ii] centralized control of labor relations, [iii] common management, and [iv] common ownership or financial control."  *Juarez* v. *449 Rest., Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014) (citing *Perez* v. *Westchester Foreign Autos, Inc.*, No. 11 Civ. 6091 (ER), 2013 WL 749497, at *7 (S.D.N.Y. Feb. 28, 2013)); *see also Murray* v. *Miner*, 74 F.3d 402, 404 (2d Cir. 1996) (listing the four factors); *Flores* v. *201 W. 103 Corp.*, 256 F. Supp. 3d 433, 442 (S.D.N.Y. 2017) ("[F]acts that go to the existence of a single, integrated enterprise include ... the use of the same employees at multiple locations ... use of the

same central payroll office ... and the distribution of common employee guidelines and procedures across different businesses." (internal quotation marks omitted)); *see generally Jackson* v. *Total Relocation Servs., LLC*, No. 23 Civ. 4118 (KPF), 2024 WL 4850814, at *6 n.3 (S.D.N.Y. Nov. 21, 2024) (discussing the distinction between "single entity" doctrine of employment and "economic reality" theory of employment).  In the end, the focus of this analysis is whether the plaintiff has sufficiently alleged that the employees in the proposed collective are subject to a uniform policy or practice.  *See, e.g.*, *Trinidad* v. *Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 557-60 (S.D.N.Y. 2013).

**B.    Analysis**

**1.    The Court Conditionally Certifies a Collective Action**

Because Plaintiffs request only conditional certification at this juncture, the Court need only make a preliminary determination as to whether "similarly situated" potential plaintiffs exist.  *See Myers*, 624 F.3d at 555.  Plaintiffs seek conditional certification of a collective of "all non-exempt employees[ ] (including but not limited to dental assistants, dental hygienists, orthodontic assistants, receptionists) employed by Defendants on or after the date that is six (6) years before filling of the Complaint[.]"  (Pl. Br. 1).  Defendants oppose conditional certification on two principal bases.  *First*, Defendants argue that Plaintiffs rely on "conclusory and anecdotal evidence" and thus fail "to establish a common unlawful policy applicable to all employees[.]"  (Def. Opp. 1).  *Second*, Defendants maintain that "significant individualized

inquiries" are necessary to determine whether employees were in fact subject to a common policy and whether such policy "even if true, run[s] afoul of the FLSA." (*Id.*). For the reasons that follow, the Court finds that conditional certification of the Proposed Collective is warranted, but limits the scope of the Proposed Collective to (i) only those positions as to which Plaintiffs have provided sufficient evidence and (ii) a narrower time period.

> **a.    Plaintiff Has Met the Low Burden of Establishing a Common Policy or Plan That Violates the FLSA**

Defendants first argue that Plaintiffs fail to meet their modest burden of establishing "a common policy or plan that *violates* the FLSA." (Def. Opp. 5 (emphasis in original)). The Court disagrees.

Plaintiffs have proffered sufficient evidence to support conditional certification. Once again, the Court notes that Plaintiffs' burden at this stage is low. *See Glatt*, 811 F.3d at 540. Even so, however, Plaintiffs cannot rely solely on "unsupported assertions," *Myers*, 624 F.3d at 555 (quoting *Dybach*, 942 F.2d at 1567), or "conclusory allegations," *Sanchez* v. *JMP Ventures, L.L.C.*, No. 13 Civ. 7264 (KBF), 2014 WL 465542, at *1 (S.D.N.Y. Jan. 27, 2014), in support of their motion for conditional certification. Instead, Plaintiffs must show sufficient "evidence to support an inference of a common … policy across all locations." *Peralta*, 2024 WL 916523, at *5. Plaintiffs have met this burden by providing affidavits and documentary evidence to substantiate their claims.

Plaintiffs rely on three affidavits — one from each of the two current Plaintiffs and one from former Plaintiff Aliyeva. (*See generally* Fernandez Decl.; Isayeva Decl.; Aliyeva Decl.). While courts have recognized that even a single

employee affidavit may be a sufficient basis for conditional certification, *see Hernandez*, 2013 WL 3199292, at *3 ("Indeed, courts in this circuit have routinely granted conditional collective certification based solely on the personal observations of one plaintiff's affidavit."), courts routinely find that two or three such affidavits provide the corroboration necessary to conditionally certify a collective action, *see Son* v. *Hand Hosp.*, 768 F. Supp. 3d 526, 543 (S.D.N.Y. 2025) (finding that plaintiffs' three affidavits, read together, "provide enough substance and corroboration of each other" to meet the modest burden for conditional certification, even if "[s]ome of the statements in some of the declarations are indeed conclusory"); *see also Tueros* v. *Urb. Health Plan, Inc.*, No. 21 Civ. 4525 (JMF) (RWL), 2022 WL 2752070, at *10-11 (S.D.N.Y. July 14, 2022) (conditionally certifying a collective where three employees provided testimony corroborating each other, indicating that they were subject to the same policies and practice); *Colon* v. *Major Perry St. Corp.*, No. 12 Civ. 3788 (JPO), 2013 WL 3328223, at *6 (S.D.N.Y. July 2, 2013) ("[I]t is beyond dispute that courts regularly determine that two or three declarations corroborating each other constitute a sufficient amount of evidence to conditionally certify a collective action under the FLSA.").

Indeed, the three declarations provided here establish that Defendants had a common practice of not compensating employees for lunch breaks, which employees were often required to work through, and for short breaks that were under twenty minutes. Specifically, Fernandez asserts that she was required to remain at the office during her lunch break, despite being required

to clock out, and that her meal breaks were "regularly interrupted." (Fernandez Decl. ¶ 6 ("I would often be required to take my lunch to the front to cover the front area and assist people.")).  Additionally, "[b]eyond observing employees clock out, then work through lunch, at every location where [she] worked," Fernandez claims to have discussed this practice with two coworkers, Ayesha and Kimberly, "around July 2022." (*Id.* ¶¶ 8, 10).  Fernandez also names three managers who allegedly required this practice, and contends that they "each worked and oversaw multiple locations[.]" (*Id.* ¶ 7).  Similarly, Isayeva names four different managers who she alleges directed her "to eat at [her] station daily and work through lunch despite Defendants' requiring employees to clock-out." (Isayeva Decl. ¶ 13).  In addition to conversations with three other employees, Isayeva asserts she had frequent conversations with Aliyeva "when riding on the Q or B train back home" about how they "could not take the meal breaks that [they] were required to clock out for." (*Id.* ¶¶ 10, 11).  While Aliyeva's affidavit does not mention these specific conversations, her account corroborates Defendants' practice of requiring uncompensated working lunch breaks.  (Aliyeva Decl. ¶ 9 ("[T]here were occasions when I was interrupted from my lunch, but Defendants would still deduct a full thirty minutes.  They would do this even if I clocked in-and-out for less than thirty minutes.")).  As with Fernandez, Isayeva and Aliyeva attest that they personally experienced this practice at each location they worked and understood that such practices occurred at all of Defendants' locations. (Isayeva Decl. ¶ 10; Aliyeva Decl. ¶ 10).  Altogether, the affidavits name at least

seven additional non-managerial employees from various locations who partook in discussions regarding Defendants' unlawful practices.  (Fernandez Decl. ¶ 10; Isayeva ¶ 10; Aliyeva Decl. ¶ 15).

On their own, these affidavits would be sufficient to satisfy Plaintiffs' modest burden to establish that putative plaintiffs were subject to a common policy in violation of the FLSA.  *See, e.g., Sanchez* v. *Clipper Realty, Inc.*, No. 21 Civ. 8502 (KPF), 2024 WL 3159821, at *8 (S.D.N.Y. June 25, 2024) (finding that the affidavits of plaintiff and three coworkers contain "substantially similar factual details concerning Defendants' alleged time-shaving practices" and thus were "sufficient to satisfy [p]laintiff's modest burden" at the conditional certification stage); *Campos* v. *Lenmar Rest. Inc.*, No. 18 Civ. 12359 (KPF), 2019 WL 6210814, at *4 (S.D.N.Y. Nov. 21, 2019) (granting conditional certification where plaintiff provided details of conversations with coworkers about "not being able to take the entirety of their lunch break" and "never being paid [their] full hourly wages" (internal citations omitted)); *Islam* v. *LX Ave. Bagels, Inc.*, No. 18 Civ. 4895 (RA) (RWL), 2019 WL 5198667, at *6 (S.D.N.Y. Sept. 30, 2019) (granting conditional certification where plaintiffs "name[d] or otherwise identif[ied] specific employees that were subject to the same unlawful compensation policies" (internal quotation marks omitted)); *Iriarte* v. *Café 71, Inc.*, No. 15 Civ. 3217 (CM), 2015 WL 8900875, at *4 (S.D.N.Y. Dec. 11, 2015) (granting conditional certification where plaintiff declared that he had "personal knowledge" of his employer withholding overtime wages from employees based

on observations and conversations with coworkers).  However, Plaintiffs provide additional information that further corroborates their allegations.

In addition to the affidavits, Plaintiffs present an analysis of the employment records for a sample of 133 out of the 847 non-exempt employees, each of whom is a putative class member (approximately a 15% sample).  (Pl. Br. 7; Lee Decl., Ex. J).[6]  This sample encompasses 18 non-exempt positions from 39 of Defendants' 44 locations.  (*Id.*).  Plaintiffs allege that the records reveal that 91 employees from the sample (approximately 70%) had been subjected to Defendants' policy of not compensating employees for short breaks.  (*Id.*).  Defendants attempt to undermine this analysis by claiming this constitutes an admission by Plaintiffs that 30% of the employees in the sample "were not victims of this scheme."  (Def. Opp. 7 (emphasis omitted)).  Not so. Plaintiffs explicitly state that the remaining 30% of sampled employees had no short breaks at all in their time records, and there is no reason to believe they would have been compensated for short breaks had they taken them.  (Pl. Br. 7, n.1).  More fundamentally, however, "the purpose of this first stage is merely to determine *whether* similarly situated plaintiffs do in fact exist," *Myers*, 624 F.3d at 555 (internal quotation marks omitted)), and not whether

---

6    The list of employees that formed the basis of this analysis was produced by Defendants, as part of the parties' initial evaluation of this matter, and was exchanged to facilitate the parties' private mediation.  (Lee Decl. ¶ 12; Def. Opp. 5 n.1).  The list revealed the names of approximately 847 non-exempt employees who are putative class members, and Plaintiffs received the sampling of records for 133 of these employees. (Lee Decl. ¶ 12).  While Defendants initially contested Plaintiffs' utilization of this evidence for the purposes of this motion, arguing that such evidence was produced for "settlement purposes only" (Def. Opp. 5 n.1), Defendants later "reconsidered their position" and agreed the "production of sampling provided for mediation purposes can be utilized for pre-class certification discovery purposes."  (Dkt. #134, 138).

*all* employees are similarly situated. *See Rojas*, 2017 WL 3085340, at *4 ("[T]he plaintiff need not show that all proposed collective action members held identical jobs or were subject to identical treatment; rather, certification is appropriate 'where all putative class members are employees of the same [ ] enterprise and allege the same types of FLSA violations.'" (quoting *Fasanelli* v. *Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 322 (S.D.N.Y. 2007))).

Defendants further attempt to undermine Plaintiffs' evidence by contending that Plaintiffs' allegations of time-shaving, even if true, do not necessarily demonstrate a policy that violates the FLSA, because potential opt-in plaintiffs would not have a FLSA claim unless they had worked overtime. (Def. Opp. 6 (citing *Cromwell* v. *N.Y.C. Health* & *Hosps. Corp.*, 983 F. Supp. 2d 269, 271 (S.D.N.Y. 2013))). While it is true that the FLSA is inapplicable to those who have not worked overtime, this line of argument fails for two reasons. *First*, it is essentially a factual dispute regarding the individual differences in hours employees worked. *See Gillett* v. *Zara USA, Inc.,* No. 20 Civ. 3734 (KPF), 2021 WL 1731836, at *6 (S.D.N.Y. May 3, 2021). On a motion for conditional certification, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Bhumithanarn*, 2015 WL 4240985, at *3 (quoting *Lynch*, 491 F. Supp. 2d at 36). "Therefore, Defendants' fact-based argument that the putative class is overbroad because it may include some hourly workers who did not in fact work overtime hours is inappropriate at this stage of the litigation." *Gillett,* 2021 WL 1731836, at *6. *Second,* in their reply, Plaintiffs

supplement their analysis by providing additional information as to whether the uncompensated short break occurred in a week in which the employee worked overtime.  (*See generally* Lee Second Decl., Ex. L).  Such evidence is sufficient to demonstrate that "similarly situated plaintiffs do in fact exist[.]" *Myers*, 624 F.3d at 555 (internal quotation marks omitted).

Lastly, the Court rejects Defendants' argument that "significant individualized inquiries" are necessary to "resolve liability and damages" in this case.  (Def. Opp. 10-11).  Such an argument misconstrues the scope of the inquiry at this stage of litigation, where Plaintiffs need only show their positions are similar to those of putative class members.  *See Jackson* v. *Bloomberg, L.P.,* 298 F.R.D. 152, 161 (S.D.N.Y. 2014) ("Plaintiff need only demonstrate that her position is similar to that of putative class members, not identical, and Bloomberg cannot defeat this showing by arguing that individual issues may predominate over common ones."); *Francis* v. *A&E Stores, Inc.*, No. 06 Civ. 1638 (CS) (GAY), 2008 WL 4619858, at *3 n.3 (S.D.N.Y. Oct. 16, 2008) ("[Cases] denying conditional certification where fact-specific inquiry might be required[ ] seem to be against the weight of authority in undertaking that analysis at the first stage of the certification process, rather than evaluating at the decertification stage whether the need for individual analysis makes a collective action inappropriate.").  Accordingly, the Court will not deny conditional certification on this basis.

b.     **The Court Limits the Scope of the Proposed Collective**

In addition to contesting the threshold issue of whether there is a common policy or plan, Defendants assert that even if the Court were inclined to grant certification, the collective should be limited.  (Def. Opp. 11). Defendants ask the Court to "at most certify a collective of individuals who were employed at locations and in positions for whom [Plaintiffs] have established [ ] any non-speculative violations of the FLSA overtime provisions," or, alternatively, to limit the class to "individuals who worked overtime when accounting for unpaid break time."  (*Id.* at 11-12).  As discussed *supra* at 20, however, "Defendants' fact-based argument that the putative class is overbroad because it may include some hourly workers who did not in fact work overtime hours is inappropriate at this stage of the litigation."  *Gillett,* 2021 WL 1731836, at *6.  The Court can and does, however, consider limitations to the scope of the collective based on job title and location worked.

i.     **Job Title**

"A FLSA collective may cover individuals with multiple job functions, 'provided that [the employees] are subject to a common unlawful policy or practice.'"  *Gomez* v. *Kitchenette 123 Inc.*, No. 16 Civ. 3302 (AJN), 2017 WL 4326071, at *5 (S.D.N.Y. Sept. 5, 2017) (quoting *Zaldivar* v. *JMJ Caterers, Inc.*, 166 F. Supp. 3d 310, 323 (E.D.N.Y. 2016)) (alteration in original).  Where a plaintiff fails to provide sufficient details that such common unlawful policy or practice affected employees in certain job functions or roles, courts will limit the collective to only those job functions as to which the plaintiff has satisfied

her evidentiary burden.  *See, e.g.*, *id.* (conditionally certifying collective of delivery persons, but not all tipped employees, because "the assertions in the affidavit that go beyond delivery persons [were] insufficiently detailed to justify certification of a broader collective").

Here, Plaintiffs have met their evidentiary burden as to the 15 positions for which they found uncompensated short breaks in Defendants' employment records: dental assistant, marketing personnel, treatment coordinator, assistant office manager, head assistant, clinical assistant, billing specialist, lab technician, administrative assistant, client relations representative, HR assistant, marketing assistant, warehouse associate, flyer distributor, and business development representative.  (Pl. Br. 7; Lee Decl., Ex. J).  Plaintiffs' affidavits further support these findings as to five particular positions: treatment coordinator (*see generally* Fernandez Decl.); dental assistant (*see generally* Isayeva Decl.; Aliyeva Decl.); assistant (Isayeva Decl. ¶¶ 5, 10; Aliyeva Decl. ¶¶ 6a, 7-8); clinical assistant (Isayeva Decl. ¶¶ 5, 10; Aliyeva Decl. ¶¶ 6b, 7-8); and head assistant (Aliyeva Decl. ¶¶ 6a, 7-8).

However, to the extent Plaintiffs seek a collective of *all* non-exempt employees, that is, beyond the 15 positions listed above, Plaintiffs do not provide any evidence to support such a request.  *See Zhao* v. *Surge Priv. Equity LLC*, No. 22 Civ. 7314 (KPF), 2023 WL 3477591, at *6 (S.D.N.Y. May 16, 2023). Accordingly, the Court will only conditionally certify a collective of all employees for the positions listed above, for which Plaintiffs have provided information substantiating that employees in such positions were subject to a

common unlawful policy. *See, e.g., id.* (conditionally certifying a collective of positions in which plaintiff provided evidence "substantiating that workers in such positions were subject to a common unlawful compensation policy"); *Clipper Realty,* 2024 WL 3159821, at *9 (conditionally certifying a collective of porters, handymen, concierges, and repairmen who worked at certain locations as those were "the only types of employees to which [p]laintiff has shown himself to be 'similarly situated' with respect to the alleged FLSA violations"); *Zhang* v. *Hiro Sushi at Ollie's Inc.*, No. 17 Civ. 7066 (DF), 2019 WL 699179, at *11 (S.D.N.Y. Feb. 5, 2019) ("[T]o the extent [p]laintiffs seek to define the FLSA collective as including 'all non-exempt employees' ... or, indeed, any job titles other than delivery workers, oil woks, water woks, and fry woks, [p]laintiffs' motion for conditional certification is denied.").

### ii.    Location

As to location worked, Plaintiffs provide sufficient evidence substantiating their claim that Defendants' alleged FLSA violations extended to all of Defendants' locations. *First,* Plaintiffs submit evidence of uncompensated short breaks at every location for which they had received employment records. (Pl. Br. 7-8; Lee Decl., Ex. J).[7] *Second,* Plaintiffs contend that all of Defendants' locations share the same timekeeping and payroll system. (Pl. Br. 2; Lee Decl., Ex. A; Fernandez Decl. ¶ 15; Isayeva Decl. ¶ 15; Aliyeva Decl. ¶ 16). In fact, employees would, at times, allegedly "clock-in at one location in

---

[7]    Plaintiffs report that the records they received from Defendants covered 39 out of Defendants' 44 locations. (Pl. Br. 7; Lee Decl., Ex. J).

the morning and clock-out at another location in the evening without issue[.]"
(Aliyeva Decl. ¶ 16).  *Third,* Plaintiffs assert they and other employees were not
assigned to one specific location, but instead moved locations as needed.
(Isayeva Decl. ¶ 3 ("I also learned during my employment that Defendants
employees all interchanged between Defendants' locations, even the dentists.");
Fernandez Decl. ¶ 2 ("I and other employees were constantly being asked to
cover at various locations.  We would also be transferred between locations, so
our main location of employment was always in flux."); Aliyeva ¶ 2 ("I would
often see and hear of employees being transferred internally between
Defendants' locations.  I was constantly asked to work from various
locations.")).  Indeed, Plaintiff Isayeva avers she worked in at least ten of
Defendants' locations throughout her employment.  (Pl. Br. 2; Isayeva Decl.
¶ 3).  In sum, Plaintiffs provide adequate evidence to support a collective
spanning all of Defendants' locations.  *See, e.g., Garcia* v. *Chipotle Mexican Grill,
Inc.*, No. 16 Civ. 601 (ER), 2016 WL 6561302, at *8 (S.D.N.Y. Nov. 4, 2016)
(finding that plaintiff provided sufficient evidence for citywide certification
despite the fact that plaintiff only worked at five Chipotle locations); *Hamadou*,
915 F. Supp. 2d at 662 ("In this Circuit, courts have regularly found named
plaintiffs to be similarly situated to employees at locations where they did not
work, provided that the plaintiffs demonstrate that they were all subject to the
same allegedly unlawful policy or practice." (citing *Rosario* v. *Valentine Ave.
Disc. Store, Co.*, 828 F. Supp. 2d 508, 516-17 (E.D.N.Y. 2011))).

### c.    The Court Considers Defendants to Be a Single Employer for Purposes of Conditional Certification

Defendants wisely do not dispute that they are a single employer for purposes of collective certification.  While Defendants do not contest this point, the Court briefly notes that the evidence submitted by Plaintiffs supports such a finding.

As discussed, to determine whether "distinct but closely affiliated entities should be treated as a single employer for FLSA purposes," courts consider the "[i] interrelation of operations, [ii] centralized control of labor relations, [iii] common management, and [iv] common ownership or financial control." *Juarez*, 29 F. Supp. 3d at 367.  These factors are "viewed under the totality of the circumstances," and can include allegations that the entities share staff, pay employees from one of the multiple entities, advertise collectively, and "are ultimately controlled by [someone] who direct[s] the behind-the-scenes of all ... companies."  *Perez Perez* v. *Escobar Constr., Inc.*, No. 23-1240, 2024 WL 3594325, at *4 (2d Cir. July 31, 2024) (summary order) (internal quotation marks omitted).  It is Plaintiffs' burden — albeit one subject to a low evidentiary bar — to provide probative information as to whether Defendants are a single integrated employer.  *Total Relocation Servs.*, 2024 WL 4850814, at *7.

Plaintiff has sufficiently alleged that Defendants are a single integrated employer for the purposes of collective certification.  Plaintiffs allege, and Defendants do not dispute, that all of Defendants' orthodontic offices are jointly owned and managed by Defendant Drut.  (Pl. Br. 2; Lee Decl., Ex. B).  Plaintiffs

further allege, and Defendants again do not dispute, that all of Defendants'
orthodontic offices share a common payroll and timekeeping system (Pl. Br. 2;
Lee Decl., Ex. A); a human resources department (Pl. Br. 2; Lee Decl., Ex. C); a
corporate handbook (Pl. Br. 2; Lee Decl., Ex. D); a corporate compliance hotline
(Pl. Br. 2; Lee Decl., Ex. E); and advertisements (Pl. Br. 2; Lee Decl., Ex. H, I).
Such evidence, when "viewed under the totality of the circumstances," *Perez*
*Perez*, 2024 WL 3594325, at *4, supports a finding that Defendants operate as
a single employer.

In light of the above, the Court will conditionally certify a modified
collective, consisting of:

> All employees who held the following non-exempt
> positions: dental assistant, marketing personnel,
> treatment coordinator, assistant office manager, head
> assistant, clinical assistant, billing specialist, lab
> technician, administrative assistant, client relations
> representative, HR assistant, marketing assistant,
> warehouse associate, flyer distributor, and business
> development representative, at any of Defendants'
> locations for the period June 2, 2019, through June 2,
> 2022.

### 2. The Court Orders Discovery in Aid of the Notice to Potential Collective Members

Having found that conditional certification is warranted, the Court next
considers the remainder of Plaintiffs' motion.  Plaintiffs seek production of
"names, social security numbers, titles, compensation rates, dates of
employment, last known mailing addresses, email addresses, and all known
telephone numbers of all Covered Employees" within 10 days of an order.  (Dkt.
#83-1).  The Court has already ordered the production of names, phone

numbers, home addresses, and email addresses "for all current and former employees, employed across Defendants' forty-four locations, during the alleged class period," by June 13, 2025.  (Dkt. #135 at 4).  As such, the Court finds the remainder of information Plaintiffs seek — namely, titles, compensation rates, and dates of employment — is warranted, with the exception of social security numbers.  *See, e.g.*, *Clipper Realty,* 2024 WL 3159821, at *11 (ordering the production of similar information).

   The Court declines to require the production of social security numbers, even though it recognizes that courts have deemed the production of such information appropriate in certain circumstances.  *See, e.g.*, *Patton* v. *Thomson Corp.*, 364 F. Supp. 2d 263, 268 (E.D.N.Y. 2005).  The Court finds that the greater weight of authority counsels against authorizing the collection of such sensitive information, especially "in the first instance and without a showing that the information is necessary."  *Zaldivar*, 166 F. Supp. 3d at 326-27 (collecting cases denying the production of social security numbers); *see also Clipper Realty*, 2024 WL 3159821, at *11 ("The Court agrees with [d]efendants that [p]laintiff's request for social security numbers is, at this stage in the collective certification process, 'inappropriate, or at the very least, premature.'" (internal citation omitted)).  If Plaintiffs are unable to contact some potential opt-in plaintiffs with the other information they receive from Defendants, Plaintiffs may renew their request for social security numbers.

   Accordingly, the Court orders Defendants to supplement their previously-ordered production with potential opt-in plaintiffs' titles, compensation rates,

and dates of employment within 14 days of this Opinion.  *See Campos*, 2019
WL 6210814, at *6 (explaining that the "common amount of time given [for pre-
certification discovery] is 14 days" (collecting cases)).[8]

### 3.    The Court Orders Modified Notice to Potential Collective Members

The Court next discusses the scope and substance of the notice that will
be provided to putative members of the collective, based on Plaintiffs' Proposed
Notice and Proposed Consent Form.  (Lee Decl., Ex. K).  Broadly speaking,
Plaintiffs' Proposed Notice requests: (i) an opt-in period of six years (Pl. Br. 24);
(ii) permission to distribute notice by mail, email, and text message (*id.* at 23);
and (iii) return of the opt-in forms to Plaintiffs' counsel, rather than the Clerk of
Court (*id.* at 24-25).  Defendants contest both the temporal scope and the
content of the Proposed Notice, as well as the method of return for opt-in
forms.  (Def. Opp. 14-19).  In the remainder of this section, the Court discusses
the temporal scope of the notice, the form and method of its distribution and
return, and its contents.

### a.    The Temporal Scope of the Notice and Opt-In Periods

The Court first addresses the appropriate temporal scope of the notice
period, which corresponds to the time that an employee had to be employed by
a particular defendant-employer to be eligible to receive notice of the collective.
The Court next turns to the appropriate time frame for the opt-in period, which

---

[8]    While the Court recognizes that the previously produced information spanned the
proposed class period of six years, based on the Court's analysis of the appropriate
temporal scope of the notice, Plaintiffs are only entitled to the above-mentioned
supplemental information for employees who worked for Defendants within three years
prior to the filing of the Complaint in this case.  *See infra* at 30-32.

corresponds to the time that a potential collective member has to join the collective after notice has been sent.

### i.    The Notice Period

Plaintiffs seek a notice period of six years prior to the filing of this action and requests that the FLSA statute of limitations be tolled from the filing of this action until Plaintiffs are able to send notice to all potential opt-in plaintiffs. (Pl. Br. 24, 25). Defendants counter that a notice period of three years from the date of the notice is more appropriate, as the FLSA has a maximum three-year statute of limitations, and object to Plaintiffs' request for equitable tolling. (Def. Opp. 16, 19). Defendants ask, in the alternative, that the Court limit the notice period to three years prior to the filing of this action. (*Id.* at 17). In their reply brief, Plaintiffs seemingly concede that Defendants' proposed alternative is standard practice. (Pl. Reply 8 ("Permitting notice for three (3) year period from the Complaint filing date is proper in an FLSA action[.]")). The Court agrees with the parties that the notice period should be limited to three years prior to the filing of this action, and denies without prejudice to renew Plaintiffs' request for equitable tolling.

The FLSA's statute of limitations for willful violations of its overtime provisions is three years. *Whiteside* v. *Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021); *Glass* v. *A.K. Allen Co., Inc.*, No. 10 Civ. 804 (ADS) (ETB), 2010 WL 11632764, at *2 (E.D.N.Y. Oct. 21, 2010). For non-willful violations of the FLSA's overtime provisions, the statute of limitations is two years. (*Id.*). Accordingly, in FLSA cases, courts frequently set a notice period spanning the

three years preceding the filing of the complaint.  *See, e.g.*, *Clipper Realty*, 2024 WL 3159821, at *11-12; *Zhao*, 2023 WL 3477591, at *7.

In the Second Circuit, some courts have allowed six-year notice periods "in conditionally certified FLSA collective actions which also involve NYLL claims," on account of the NYLL's six-year statute of limitations.  *Franze* v. *Bimbo Foods Bakeries Distrib., LLC*, No. 17 Civ. 3556 (NSR) (JCM), 2019 WL 1417125, at *4 (S.D.N.Y. Mar. 29, 2019) (collecting cases).  However, "when the motion before the court seeks certification under the FLSA rather than under Federal Rule[ ] of Civil Procedure Rule 23 in connection with NYLL claims," the more common practice is "to use a three-year rather than six-year notice period[.]"  *Id.* (collecting cases).  This is because, as courts have recognized, authorizing a six-year notice period for a putative collective with FLSA-only claims may promote confusion as to which claims are valid under their respective statutes of limitations, should counsel later move for class certification of NYLL claims.  *See, e.g.*, *Bhumithanarn*, 2015 WL 4240985, at *5.

Because the motion before the Court is only for conditional certification of a collective under the FLSA, and because the Court cannot be assured at this stage that counsel will later seek certification of an NYLL class, much less be successful in doing so under Rule 23, the Court does not find a six-year notice period to be appropriate.  The Court additionally does not find a two-year notice period appropriate, as Plaintiff alleges willful conduct on the part of Defendants. (*See, e.g.*, Pl. Br. 5, 12).  "At the conditional certification stage, allegations of willful conduct are sufficient to apply the three-year statute of

limitations for purposes of certifying the class." *Jie Zhang* v. *Wen Mei, Inc.*, No. 14 Civ. 1647 (JS) (SIL), 2015 WL 6442545, at *5 (E.D.N.Y. Oct. 23, 2015); *see also Patton*, 364 F. Supp. 2d at 268 n.2 (finding plaintiff's allegation of willful violation of FLSA justified a three-year notice period); *see generally Whiteside*, 995 F.3d at 319 (discussing pleading requirements for willfulness). Accordingly, the Court authorizes notice to be sent to the putative collective members for the three years prior to the filing of the Complaint on June 2, 2022.

Having determined that the appropriate notice period is the three years prior to the filing of the Complaint, the Court turns to the related issue of equitable tolling. Plaintiffs request that the FLSA statute of limitations be tolled from the filing of the Complaint until Plaintiffs are able to send notice to potential opt-in plaintiffs. (Pl. Br. 25). They argue it is essential "to avoid the prejudice to actual or potential opt-in plaintiffs due to the extraordinary circumstances it takes for a motion for certification to be moved for and decided." (*Id.*). Plaintiffs also contend that equitable tolling is particularly important here because "this matter has been stayed for the majority of its pendency" due to the mediation and subsequent motion practice. (*Id.*). The Court disagrees.

"Because equitable tolling issues often arise as to individual opt-in plaintiffs …, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained

at a later date." *Yap* v. *Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 565 (S.D.N.Y. 2015) (internal quotation marks omitted) (quoting *Gaspar* v. *Pers. Touch Moving, Inc.*, No. 13 Civ. 8187 (AJN), 2014 WL 4593944, at *7 (S.D.N.Y. Sept. 15, 2014)); *see also Douglas* v. *Anthem Prods., LLC*, No. 18 Civ. 5789 (VEC), 2019 WL 78988, at *5 (S.D.N.Y. Jan. 2, 2019) ("Whether tolling is appropriate [for potential members of the FLSA collective action] is best addressed on an individual basis").  Accordingly, the Court finds that Plaintiffs' request for equitable tolling is premature, as "'it is not yet clear whether or not any potential plaintiffs will be barred from this action due to a delay in notice.'" *Mendoza*, 2013 WL 5211839, at *10 (quoting *Whitehorn* v. *Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011)); *see also Total Relocation Servs.*, 2024 WL 4850814, at *12 (finding it was premature to equitably toll the statute of limitations at this stage in the proceedings); *Cooke*, 722 F. Supp. 3d at 147 (same).  The Court will "consider an application from any opt-in plaintiff based on an individualized showing that tolling is appropriate."  *Yuefeng Shi* v. *TL & CG Inc.*, No. 19 Civ. 8502 (SN), 2020 WL 4586359, at *6 (S.D.N.Y. Aug. 18, 2020); *see also Zhao*, 2023 WL 3477591, at *8; *Ramirez* v. *Liberty One Grp. LLC*, No. 22 Civ. 5892 (KPF), 2023 WL 4541129, at *11 (S.D.N.Y. July 14, 2023); *Katz* v. *Equinox Holdings, Inc.*, No. 20 Civ. 9856 (VEC), 2022 WL 2952143, at *3-4 (S.D.N.Y. July 26, 2022) (each adopting a similar approach).

### ii.     The Opt-In Period

Plaintiffs' Proposed Notice and Proposed Consent Form include a ninety-day opt-in period.  (Lee Decl., Ex. K).  Defendants oppose this time limit and instead propose a sixty-day opt-in period, arguing that Plaintiffs fail to explain why a ninety-day opt-in period is necessary.  (Def. Opp. 15).  The Court agrees with Defendants; courts in this Circuit routinely limit the opt-in period to sixty days unless a plaintiff can demonstrate why a longer period is necessary.  *See Clipper Realty*, 2024 WL 3159821, at *13 (noting that courts in this Circuit routinely limit the opt-in period to sixty days); *see also Escano* v. *N&A Produce and Grocery Corp.*, No. 14 Civ. 4239 (PAC), 2015 WL 1069384, at *3 (S.D.N.Y. Mar. 11, 2015) (ordering a sixty-day opt-in period when plaintiff "[did] not explain why [plaintiff's requested ninety-day opt-in] period is necessary").  Accordingly, Plaintiffs' opt-in period is limited to sixty days.

### b.     The Form and Method of Distribution

Plaintiffs request that the Court permit them to distribute the notice by mail, email, and text messages.  (Pl. Br. 23).  Defendants do not oppose these forms and methods of distribution.  (Def. Opp. 14).  The Court thus approves the sending of the notice by mail, email, and text messages, each of which is a standard method of notice distribution in this Circuit.  *See, e.g.*, *Ramirez*, 2023 WL 4541129, at *12 (approving sending notice by mail, email, and text messages); *Zhao*, 2023 WL 3477591, at *8 (same); *Geng*, 2019 WL 4493429, at *20 (same).  The Court also grants Plaintiffs' request that the notice and consent forms be posted in employee common areas at Defendants' places of

business.  (*See* Dkt. #83-1).  While the parties do not mention this in their briefs, courts "generally allow notice to be posted in employee common areas, even when potential opt-in plaintiffs will also receive notice by mail."  *Geng*, 2019 WL 4493429, at *20.

### c.    The Content of the Notice

When assessing whether a proposed notice is appropriate, courts consider "the overarching policies of the collective suit provisions and whether the proposed notice provides accurate and timely notice concerning the pendency of the collective action, so that [an individual receiving the notice] can make an informed decision about whether to participate."  *Ting Qiu Qiu* v. *Shanghai Cuisine, Inc.*, No. 18 Civ. 5448 (ER), 2019 WL 6002371, at *4 (S.D.N.Y. Nov. 14, 2019) (quoting *Delaney* v. *Geisha NYC, LLC*, 261 F.R.D. 55, 59 (S.D.N.Y. 2009)) (internal quotation marks omitted) (alteration in original).  A notice must include, at a minimum:

> the purpose of the notice, the nature of the lawsuit, the proposed class composition, the legal effect of joining the lawsuit, the fact that the court has not taken any position regarding the merits of the lawsuit, how to join the lawsuit, the purely voluntary nature of the decision and the legal effect of not joining the lawsuit, the prohibition against retaliation, and the relevant contact information for any inquiries.

*Hernandez* v. *City of New York*, No. 16 Civ. 3445 (RA), 2017 WL 2829816, at *7 (S.D.N.Y. June 29, 2017) (quoting *Bloomberg*, 298 F.R.D. at 169-70).

Beyond their previously discussed objections to the temporal scope of the collective and opt-in period, *see supra* 30, 34, Defendants assert that the notice "improperly includes reference to NYLL claims."  (Def. Opp. 14).  Defendants

argue that it is necessary to strike references to NYLL claims because "many individuals in the putative Rule 23 class are time-barred from pursuing FLSA claims." (*Id.* at 15). The Court finds this reasoning unpersuasive. There are only two references to the NYLL in the Proposed Notice. (Lee Decl., Ex. K). The first explicitly notifies putative plaintiffs that the notice itself solely relates to FLSA collective action claims and not to NYLL class action claims. (*Id.*). The second reference merely states the statute of limitations for FLSA and NYLL claims should a plaintiff wish to proceed on their own and not as part of the collective. (*Id.*). The Court does not find these references to be improper. *See Ramirez*, 2023 WL 4541129, at *11 (finding similar references in a proposed notice "serve to clarify ... the distinction between the two statutes[ ]").

Defendants next argue that potential opt-in plaintiffs "should be notified of their obligation to preserve evidence relevant to their claims." (Def. Opp. 15). The Court agrees and, indeed, has granted similar requests in the past. *See Clipper Realty*, 2024 WL 3159821, at *14. Accordingly, Plaintiffs are instructed to amend their Proposed Notice to include such a notification.

Lastly, the Court grants Defendants' request that the notice include defense counsel's contact information and Plaintiffs are instructed to amend the Proposed Notice accordingly. Such a practice is common in this Circuit, as defense counsel is a source from whom potential plaintiffs could obtain information. *See Norris* v. *ProCORE LLC*, No. 21 Civ. 7014 (BMC), 2022 WL 1205143, at *6 (E.D.N.Y. Apr. 22, 2022) ("Inclusion of a defendant's identity and contact information is common in this [Circuit.]"); *Slamna* v. *API Rest.*

36

*Corp.*, No. 12 Civ. 757 (RWS), 2013 WL 3340290, at *5 (S.D.N.Y. July 2, 2013)

("Courts in this Circuit have generally concluded that such [contact]

information is appropriate for inclusion in a notice of collective action"); *Bah* v.

*Shoe Mania, Inc.*, No. 08 Civ. 9380 (LTS) (AJP), 2009 WL 1357223, at *4

(S.D.N.Y. May 13, 2009) ("The notice must also include the contact information

of counsel for Defendants as one source from whom potential plaintiffs could

obtain information.").

### d.    The Return of Opt-In Forms

Despite recognizing of the unusual nature of their request, and with no

legal precedent offered in support, Plaintiffs seek to make the consent forms

returnable to Plaintiffs' counsel instead of the Clerk of Court.  (*See* Pl. Br. 24

(recognizing that it is the "Court's general position that consent forms should

be sent to the Clerk of the Court")).  The Court denies this request.  An opt-in

plaintiff's FLSA action is deemed to be commenced on "the subsequent date on

which such written consent is filed in the court in which the action was

commenced."  29 U.S.C. § 256.  The Court finds no reason to depart from this

typical practice.  *See Mikityuk* v. *Cision US Inc.*, No. 21 Civ. 510 (LJL), 2021 WL

1750370, at *10-11 (S.D.N.Y. May 4, 2021) (observing that the Court's general

practice of making consent forms returnable to the Clerk "has the virtue of

setting a certain, recognizable, and verifiable date from which the measure the

limitations period for a specific plaintiff" and "protects the plaintiff's

autonomy"); *Gomez* v. *Terri Vegetarian LLC*, No. 17 Civ. 213 (JMF), 2017 WL

2628880, at *3 (S.D.N.Y. June 16, 2017) ("To avoid disputes over timeliness,

potential opt-in plaintiffs shall be required to send their consent forms directly to the Clerk of Court rather than to Plaintiff's counsel.").

In view of the foregoing, the Court generally approves of Plaintiffs' Proposed Notice, albeit with a few modifications. Consistent with this Opinion, the notice must be modified to (i) ensure only employees who held the previously listed positions, *see supra* 27, within three years prior to filing of the Complaint are included in the collective; (ii) include an opt-in period of sixty days; (iii) advise potential opt-in plaintiffs of their obligation to preserve relevant evidence; (iv) include defense counsel's contact information; and (v) be returnable to the Clerk of Court, and not Plaintiffs' counsel.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion for conditional certification of a collective and for Court facilitation of notice is GRANTED IN PART. The Court grants Plaintiffs' motion for conditional certification of a collective of dental assistants, marketing personnel, treatment coordinators, assistant office managers, head assistants, clinical assistants, billing specialists, lab technicians, administrative assistants, client relations representatives, HR assistants, marketing assistants, warehouse associates, flyer distributors, and business development representatives employed by Defendants at any of Defendants' locations within the three years prior to the filing of the Complaint in this action on June 2, 2022. The Court DENIES without prejudice Plaintiffs' request for equitable tolling of the statute of limitations.

The Court GRANTS Plaintiffs' motion to distribute the notice to this putative collection with the modifications outlined in this Opinion. Plaintiffs are directed to submit a revised proposed notice, consistent with this Opinion, for the Court's approval on or before **July 21, 2025**. Upon the Court's approval of the revised notice, notice may be issued consistent with its terms and this Court's orders. The Court DENIES Plaintiffs' request that the consent forms be returnable to Plaintiffs' counsel instead of the Clerk of Court.

Finally, the Court DENIES Plaintiffs' motion for production of social security numbers, but otherwise GRANTS Plaintiffs' motion for production of covered employees' titles, compensation rates, and dates of employment within 14 days of this Opinion.

SO ORDERED.

Dated:    July 10, 2025
          New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge